```
 1  ELISE STASSART, PRO SE                              FILED
 2  21951 BEAR CREEK WAY
                                                   2008 MAR 19  A 10: 20
 3  LOS GATOS, CA 95033
                                                   RICHARD W. WIEKING
 4                                                       CLERK
                                                   U.S. DISTRICT COURT
 5  IN THE UNITED STATES DISTRICT COURT            NO. DIST. OF CA. S.J.

 6  FOR THE NORTHERN DISTRICT OF CA

 7

 8  ISAIAH JOSEPH WINTERS              )  Case No.:
 9  [A MINOR CHILD], BY                )    C08 01511 PVT
10  PHILIPPE & ELISE STASSART, LEGAL GUARDIANS)  COMPLAINT FOR PRELIMINARY AND PERMANENT
11  ET AL,                             )  INJUNCTIONS, DECLARATORY RELIEF AND
12  21951 BEAR CREEK WAY               )  DAMAGES
13  LOS GATOS, CA 95033                )
14  PLANTIFFS                          )
15  Vs.                                )
16  LAKESIDE JOINT SCHOOL DISTRICT     )
17  19621 BLACK ROAD                   )
18  LOS GATOS, CA 95033
19  DEFENDANT
20  _____

21                          COMPLAINT
22  COMES NOW the plaintiff(s), Philippe and Elise Stassart with their minor child, Isaiah
23  Joseph Winters, appearing pro se, and for a complaint against the defendant[s] above
24  named, state, allege, and aver as follows:
25
26  Lakeside Joint School District denied minor, Isaiah Joseph Winters, access to an
27  appropriate, free public education by refusing to fund his education within his home
28  high school district.
```

[Summary of pleading] - 1

## JURISDICTION

1. This Court has subject matter jurisdiction under 28 U.S.C. sections 1331 and 1343.

2. This action is commenced pursuant to 2201 and 2202 and 42 U.S.C., section 1983.

Plaintiffs Philippe and Elise Stassart are, and at all times herein mentioned was, residents of Santa Cruz County, California, and the legal guardians of plaintiff Isaiah Joseph Winters.

Plaintiff Isaiah Joseph Winters is, and at all times herein mentioned was, a resident of Santa Cruz County, California, and a pupil duly enrolled in the Lakeside Joint School District.

Defendant Lakeside Joint School District is, and at all times herein mentioned was, a school district duly organized and existing under the laws of the State of California.

## BACKGROUND

Lakeside Joint School District consists of a single elementary school. This school district has a charter to service kindergarten through eighth grades. However, for the past twenty years, the school district has only provided instruction and educational services for kindergarten through fifth grades. Up until five years ago, sixth through eighth grade Lakeside students were provided access to Fisher Middle School, which is in the Los Gatos Union School District (LGUSD). The LGUSD allowed these students to attend at no additional cost to Lakeside because they were a revenue-limited or state aid district. This allowed LGUSD to collect revenue from the state based on student attendance. In 2003, LGUSD became a Basic Aid district, which meant their revenue was no longer tied to student attendance. For Basic Aid school districts, the state gives the school 100% of its share of the property tax collected in the district. As a result, LGUSD would no longer accept Lakeside students unless

1  the Lakeside District paid for their education.

3  LGUSD is still willing to accept Lakeside students, but not without funding from the
4  Lakeside Joint School District.

6  Lakeside Joint School District decided to seek another solution.  In 2005, the
7  district contracted with the Campbell Union School District for educational services
8  for their 6th through 8th grade students.  Campbell Union School District is a revenue-
9  limited or state aid district.  This meant that Lakeside Joint School District, which
10 is a Basic Aid district, could continue to collect 100% of its share of the property
11 tax collected in the district without having to contribute towards the education of
12 the 6th through 8th grade students in their district.

14 There are three school districts that feed into the Los Gatos-Saratoga Union High
15 School District.  These districts are Lakeside, Loma Prieta and LGUSD.  The Campbell
16 Union School District does not feed into the home high school district of the
17 plaintiffs.

19 **GENERAL ALLEGATIONS**
20 Plaintiffs allege that the Lakeside Joint School District has violated their civil
21 rights by entering into a contract with a school district outside of their home high
22 school district in order to avoid funding the education of the children within their
23 district.

25 Plaintiffs purchased their home in December 1989.  Since then, they have continuously
26 paid property taxes, a portion of which fund Lakeside Joint School District and a
27 portion of which fund the Los Gatos-Saratoga Union High School District.  Like many

home buyers, they selected their home based on the school districts. At the time of purchase, they were informed that students attended Lakeside, then Fisher Middle School, then Los Gatos High School. This is the path that their two older biological children followed.

Plaintiffs do not argue with the need for parcel taxes to support public education. However, they assert that Lakeside's contract with a school outside of their home school district for the purposes of avoiding paying for the educational services for students violates their civil rights under the Fourteenth Amendment, Section I.

Plaintiffs further argue that by requiring students to attend a school outside of their neighborhood, Lakeside is violating their right to equal opportunity in education. The Supreme Court has observed that "all things being equal, with no history of discrimination, it might well be desirable to assign pupils to schools nearest their homes." *Swann v.Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 28, 91, S. Ct. 1267; 28 L. Ed.2d 554 (1971)*. Students forced to attend a school outside of their home high school district are at a serious disadvantage, both socially and scholastically, when they return back to their home district for the purposes of attending Los Gatos High School.

"With continuity, children and their families are able to form meaningful relationships and learn to anticipate the rules and expectations of an unfamiliar setting. When a transition is necessary, continuity between settings balances new experiences with familiar ones." *Regional Educational Laboratories' Early Childhood Collaboration Network. November 1995*

"...the development of the individual is in most respects a continuous process and that, therefore, any sudden or abrupt break between the elementary and the secondary school or between any two successive stages of education is undesirable." DEPARTMENT OF THE INTERIOR BUREAU OF EDUCATION BULLETIN, 1918, No. 35 1928.

"School continuity is intimately tied to a child's well-being" Albany Law Review, December 22, 2005.

Having contracted with a school outside of the home school district, Lakeside failed to provide any alternatives for district residents. According to the Institute of Judicial Administration, American Bar Association, "Juvenile Justice Standards Relating to Schools and Education", "every student should have an equal opportunity to select among alternative schools, programs or courses,....subject to minimal restrictions..." Because all the school districts within their home high school district are Basic Aid schools, district residents are forced to either send their children outside of their home school district, home school, send their children to private schools, move to a different school district, or send their children to live with friends and relatives who reside in their home high school district. All of these choices are disruptive to the lives and families involved. By burdening the families within their district with these choices, Lakeside Joint School District has violated the civil rights of every family within the district.

According to the Institute of Judicial Administration, American Bar Association, "Juvenile Justice Standards Relating to Schools and Education", "every student has a right to an education that is:

    substantially similar in kind to that which is provided other students in the
    district; and

[Summary of pleading] - 5

provided through a substantially equal allocation of educational resources on a statewide basis."

By refusing to allocate educational resources to the 6th through 8th grade students, Lakeside has created a "lower class" of students who must rely on the kindness of a revenue-limited school district to adopt these "orphans".

By refusing to fund the education of the 6th through 8th grade students, Lakeside has ensured that their educational experience is inherently unequal to other students who did not have to be bussed out of their home districts and were allowed a continuous education.

Plaintiffs further allege that defendant's actions violate equal protection under the law, *Kadrmas v. Dickinson Public School Dist.* 487 U.S. 450, 108 S. Ct. 2481, 101 L. Ed.2d 399 (1988), which involves financing of the fundamental right to a public education. Plaintiffs are not requiring Lakeside to expend more funding than other school districts in the area. They are asking that the District spend the funds it receives for their students. According to the Santa Clara County Office of Education, Lakeside receives $6,329.62 in revenue for each student, including the 6th through 8th grade students. LGUSD is requesting $5,535.77 for each student. In other words, LGUSD is asking for less than what Lakeside receives.

Plaintiffs further allege Lakeside's actions are contrary to legislative intent. The Lakeside Joint School District receives revenues from County, State and Federal sources. These sources did not anticipate the school district pocketing the money and bussing a portion of their students to an outside school district. The Supreme Court has ruled that when reviewing equal protection claims, "we require the distribution of funding for education to bear a close correspondence to legislative goals." E.g.,

[Summary of pleading] - 6

*Hanson v. Williams County, supra.*

Rolling Hills Middle School has substantially lower test scores than the schools in the plaintiff's home high school district. Additionally, the student population consists of more than 25% non-English speaking students and almost 40% living in poverty. Lakeside's contract with a school district that is not only outside of the plaintiff's home school district, but to a school that is decidedly inferior to their neighborhood schools, interferes with plaintiff's right to equality of educational opportunities. As noted by the courts, students in wealthier school districts have a substantial advantage in regards to post-secondary training, jobs, and colleges. Having paid the property taxes and mortgage to live in a "privileged" area, plaintiffs are now denied equal access to those advantages.

Properties in the Los Gatos area average one million dollars or more. Properties in the Campbell area are at least $200,000 less for a similar property. The price disparity is due primarily to the quality of the school districts. By contracting educational services to a school district outside of the plaintiff's home high school district, Lakeside has effectively devalued the property of every home and parcel in their district. Any seller would have to disclose that a buyer's children would be bussed out of district for the middle school grades. Obviously, many prospective buyers would be dissuaded from purchasing a home in a school district where there are no educational services provided for three grades. Plaintiffs contend that this is a violation of their constitutional rights under the Fourteenth Amendment, Section I; deprivation of property without due process.

Lakeside Joint School District receives Title I funding. It is ironic that a funding measure that is supposed to promote "school choice" has resulted in a district denying their residents any choice at all. No Child Left Behind supports continuity in

education and higher test scores. By disrupting the education of our children and sending them to a school district with lower test scores, Lakeside effectively mocks congressional intent. Plaintiffs refer again to the Supreme Court ruling "we require the distribution of funding for education to bear a close correspondence to legislative goals." E.g., *Hanson v. Williams County, supra.*

Plaintiff Isaiah Joseph Winters is an individual with exceptional needs, within the meaning of 34 CFR Section 104.3(j), in that 1) plaintiff has been identified as a child with known DSM-IV emotional disorders, Post Traumatic Stress Disorder and Reactive Associative Disorder, caused by trauma, neglect and abuse suffered during early childhood. Plaintiff is currently eligible for 504 Services; 2) Plaintiff is eleven years old with a birth date of May 11, 1996, and 3) Plaintiff meets the eligibility requirements set forth in regulations of the State Board of Education.

Isaiah's guardians were awarded custody of Isaiah on November 30, 2005. They immediately enrolled him in Lakeside's fourth grade class. Plaintiffs ask the Court to note that his enrollment at Lakeside meant that Isaiah had attended four different elementary schools since the beginning of that school year. Isaiah had spent the previous nine years of his life in different foster homes, children shelters, and in the custody of his birth mother (now deceased). Isaiah's time at Lakeside from fourth to fifth grade was the longest period of time Isaiah had ever attended the same school or lived in the same home.

Defendant has failed and refused and continues to fail and refuse to perform their duty to provide Plaintiff Isaiah Joseph Winters with a unified public education. Instead Defendant has arranged an inter-district transfer for the student outside of his home high school district in order to avoid paying for the plaintiff's education.

1  Unless and enjoined by order of this court, the wrongful failure and refusal of
2  defendant to provide plaintiff Isaiah Joseph Winters with a free appropriate public
3  education to which he is entitled under state and federal law will cause great and
4  irreparable injury in that the child will not have had equal access to the same
5  educational opportunities as his peers when he enters high school and the emotional
6  stress of attending a school outside of his community will result and has resulted in
7  increased anxiety and poor performance in school.

9  When Isaiah started the school year at Rolling Hills Middle School, he had made a
10 great deal of progress both emotionally and scholastically. His grades had gone from
11 C's and D's to B's and C's. His reading had improved from second grade level to sixth
12 grade level. Since his attendance at Rolling Hills Middle School, his guardians have
13 noted with great dismay that his sense of security and stability has been eroded, his
14 anxiety has increased, and his grades have fallen from B's and C's down to D's and
15 F's.

17 Plaintiff Elise Stassart has repeatedly emailed and phoned Rolling Hills Middle School
18 with regards to their failure to provide Isaiah with a stable, consistent learning
19 environment, as well as their failure to follow the guidelines in his 504. These
20 guidelines include providing homework support, verifying that he understands
21 assignments, providing him with easy transitions from one task to the next, and
22 ensuring that he writes down his assignments in his planner daily. His teachers have
23 not only failed to follow the 504 recommendations, but they have acted contrary to
24 established guidelines when dealing with a child who has been traumatized. Plaintiffs
25 have been repeatedly told by staff at Rolling Hills that they do not have the
26 training, funding, or services to support Isaiah's educational needs. Plaintiff Elise
27 Stassart has continually demanded Lakeside make arrangements for Isaiah to attend a
28 school closer to home where he can be better monitored and Lakeside has ignored these

requests.

Because Isaiah suffers from PTSD, he requires a consistent, stable environment. Rolling Hills Middle School does not have an after-school program, unlike the middle schools in the Plaintiffs' home school districts. Both Philippe and Elise Stassart work full-time. Isaiah has private tutoring sessions in Los Gatos twice a week. Isaiah has therapy with a psychiatrist once a week. Isaiah also plays on a Los Gatos Little League team which has a practice once during the school week. Additionally, Isaiah has the usual orthodontist and doctor appointments after school. If Isaiah was attending Fisher Middle School in the LGUSD, he would be able to go to The Zone, the after school program, and then be picked up from there to go to his appointments or walk from there to the baseball field where his team meets. Instead, Isaiah takes a bus provided by Lakeside from Rolling Hills Middle School back to Lakeside where he attends Lakeside's after school program with the kindergarten through fifth graders. Needless to say, the activities at this program hold very little interest for an 11 year old. Many days, one of the plaintiffs take off from their job to pick Isaiah up at Rolling Hills Middle School, take him to his tutoring/therapy/doctor's appointment, hand him off to the other parental unit, and then return to work. This constitutes an undue hardship on both parents, who are already stressed dealing with a child who has emotional problems.

A judicial declaration is necessary and appropriate at this time under the circumstances in order that plaintiffs may ascertain their rights with respect to the obligation of the defendant to provide a free and appropriate public education.

Under Title 20, United States Code 1415(j) plaintiff Isaiah Joseph Winters is entitled to be placed in a public school located within his home high school district, pending completion of this action.

1  WHEREFORE, plaintiffs pray judgment against the defendant as follows:

3  For an order requiring defendant to show cause, if any, why they should not be
4  enjoined, as hereinafter set forth, during the pendency of this action.

6  For a preliminary injunction enjoining defendant, it's agents, and all it's employees,
7  and all persons acting under, in concert with, from failing or refusing to fund the
8  education of plaintiff and thus, allowing him to attend a middle school within his
9  home high school district.

11  For a permanent injunction enjoining defendant, it's agents, and all it's employees,
12  and all persons acting under, in concert with, from failing or refusing to fund the
13  education of plaintiff and thus, allowing him to attend a middle school within his
14  home high school district.

16  For a judicial declaration that the Lakeside Joint School District is required to
17  provide a free and public education for all their students, including the sixth,
18  seventh, and eighth grades within the Los Gatos-Saratoga Union High School District.

20  For such other and further relief as the court may deem proper.

22  By: *Elise Stassart*  3/18/08
23  ELISE STASSART

I am one of the plaintiffs in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters, which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

3/18/08
Date

*[signature]*
Signature

JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS
PHILIPPE & ELISE STASSART, ISAIAH WINTERS, ET ALL, PRO SE

### DEFENDANTS
LAKESIDE JOINT SCHOOL DISTRICT

(b) County of Residence of First Listed Plaintiff: SANTA CRUZ
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: SANTA CLARA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
21951 BEAR CREEK WAY
LOS GATOS, CA 95033
(408) 655-4710

C08 01511 PVT ADR

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated or Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**: 110 Insurance; 120 Marine; 130 Miller Act; 140 Negotiable Instrument; 150 Recovery of Overpayment & Enforcement of Judgment; 151 Medicare Act; 152 Recovery of Defaulted Student Loans (Excl. Veterans); 153 Recovery of Overpayment of Veteran's Benefits; 160 Stockholders' Suits; 190 Other Contract; 195 Contract Product Liability; 196 Franchise

**TORTS - PERSONAL INJURY**: 310 Airplane; 315 Airplane Product Liability; 320 Assault, Libel & Slander; 330 Federal Employers' Liability; 340 Marine; 345 Marine Product Liability; 350 Motor Vehicle; 355 Motor Vehicle Product Liability; 360 Other Personal Injury

**TORTS - PERSONAL INJURY**: 362 Personal Injury—Med. Malpractice; 365 Personal Injury—Product Liability; 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**: 370 Other Fraud; 371 Truth in Lending; 380 Other Personal Property Damage; 385 Property Damage Product Liability

**REAL PROPERTY**: 210 Land Condemnation; 220 Foreclosure; 230 Rent Lease & Ejectment; 240 Torts to Land; 245 Tort Product Liability; 290 All Other Real Property

**CIVIL RIGHTS**: 441 Voting; 442 Employment; 443 Housing/Accommodations; 444 Welfare; 445 Amer. w/Disabilities - Employment; 446 Amer. w/Disabilities - Other; [X] 440 Other Civil Rights

**PRISONER PETITIONS**: 510 Motions to Vacate Sentence; Habeas Corpus: 530 General; 535 Death Penalty; 540 Mandamus & Other; 550 Civil Rights; 555 Prison Condition

**FORFEITURE/PENALTY**: 610 Agriculture; 620 Other Food & Drug; 625 Drug Related Seizure of Property 21 USC 881; 630 Liquor Laws; 640 R.R. & Truck; 650 Airline Regs.; 660 Occupational Safety/Health; 690 Other

**LABOR**: 710 Fair Labor Standards Act; 720 Labor/Mgmt. Relations; 730 Labor/Mgmt.Reporting & Disclosure Act; 740 Railway Labor Act; 790 Other Labor Litigation; 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**: 462 Naturalization Application; 463 Habeas Corpus – Alien Detainee; 465 Other Immigration Actions

**BANKRUPTCY**: 422 Appeal 28 USC 158; 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**: 820 Copyrights; 830 Patent; 840 Trademark

**SOCIAL SECURITY**: 861 HIA (1395ff); 862 Black Lung (923); 863 DIWC/DIWW (405(g)); 864 SSID Title XVI; 865 RSI (405(g))

**FEDERAL TAX SUITS**: 870 Taxes (U.S. Plaintiff or Defendant); 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**: 400 State Reapportionment; 410 Antitrust; 430 Banks and Banking; 450 Commerce; 460 Deportation; 470 Racketeer Influenced and Corrupt Organizations; 480 Consumer Credit; 490 Cable/Sat TV; 810 Selective Service; 850 Securities/Commodities/Exchange; 875 Customer Challenge 12 USC 3410; 890 Other Statutory Actions; 891 Agricultural Acts; 892 Economic Stabilization Act; 893 Environmental Matters; 894 Energy Allocation Act; 895 Freedom of Information Act; 900 Appeal of Fee Determination Under Equal Access to Justice; 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. sections 1331 and 1343

Brief description of cause:
EQUAL OPPORTUNITY TO A FREE PUBLIC EDUCATION DENIED, EQUAL PROTECTION DENIED

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
- DEMAND $
- JURY DEMAND: [ ] Yes [X] No
- CHECK YES only if demanded in complaint

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)
- [ ] SAN FRANCISCO/OAKLAND
- [X] SAN JOSE

DATE: 3/15/2008

SIGNATURE OF ATTORNEY OF RECORD: *Elise Stassart* (signature)