1 | ELISE STASSART, PRO SE

2 | 21951 BEAR CREEK WAY

3 | LOS GATOS, CA 95033

4 |

5 | IN THE UNITED STATES DISTRICT COURT

6 | FOR THE NORTHERN DISTRICT OF CA

7 |

8 | ISAIAH [A MINOR CHILD], BY

9 | PHILIPPE & ELISE STASSART, LEGAL

10 | GUARDIANS

11 | ET AL

12 | 21951 BEAR CREEK WAY

13 | LOS GATOS, CA 95033

14 | PLANTIFFS

15 | Vs.

16 | LAKESIDE JOINT SCHOOL DISTRICT

17 | 19621 BLACK ROAD

18 | LOS GATOS, CA 95033

19 | DEFENDANT

20 |

21 |

22 |

23 |

24 |

25 |

**FILED**

2008 APR 28  A 9 31

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

) Case No.: C08 01511 (PVT)

)

) MEMORANDUM OF POINTS AND AUTHORITIES

) SUPPORTING PLAINTIFF'S MOTION FOR

) PRELIMINARY & PERMANENT INJUNCTION;

) EXHIBITS A THROUGH V

)

) Date:   June 3, 2008

) Time:   10:00 am

) Place: 5, 4th Floor

   Magistrate Judge:   Patricia V.

   Trumbell

MEMORANDUM OF POINTS AND AUTHORITIES - 1

TABLE OF CONTENTS

I.     INTRODUCTION..................................................................... 3

II.    PLAINTIFF HAS SHOWN STANDING ............................... 4

III.   DEFENDANT'S REFUSAL TO ALLOCATE FUNDING FOR A FREE &
       PUBLIC EDUCATION IS A VIOLATION UNDER THE FOURTEENTH
       AMENDMENT...................................................................... 6

IV.    DEFENDANT'S REFUSAL TO ALLOCATE FUNDING FOR A FREE & PUBLIC
       EDUCATION VIOLATES LEGISLATIVE INTENT.................... 7

V.     TRANSPORTING STUDENTS OUTSIDE OF THE HOME HICH SCHOOL DISTRICT TO
       AVOID PAYING FOR THEIR EDUCATION PLACES AN UNDUE BURDEN ON DISTRICT
       RESIDENTS........................................................................ 9

VI.    DEFENDANT VIOLATES LEGISLATIVE INTENT REGARDING RESIDENCY
       REQUIREMENTS PURSUANT TO
       CALIFORNIA EDUCATION CODE 48200............................... 11

VII.   PLAINTIFF HAVE IN FACT EXHAUSTED ADMINISTRATIVE
       REMEDIES.......................................................................... 11

VIII.  STATEMENT OF JURISDICTION........................................ 14

IX.    ARGUMENT........................................................................ 15

X.     THE PLAINTIFF CAN PROVE A PRIMA FACIE CIVL RIGHTS CLAIM  15

XI.    PLAINTIFF WILL SUFFER IRREPARABLE INJURY UNLESS
       INJUNCTION ISSUES.......................................................... 17

XII.   THE THREATENED INJURY TO THE PLAINTIFF OUTWEIGHS ANY HARM TO THE
       DEFENDANTS...................................................................... 20

XIII.  AN INJUNCTION SERVES THE PUBLIC INTEREST.................. 21

XIV.   CONCLUSION...................................................................... 22

I.    INTRODUCTION

This lawsuit arises out of the refusal of the Lakeside Joint School District to allocate funds for the education of their sixth through eighth grade students.

Lakeside Joint School District consists of a single elementary school.  This school district has a charter to service kindergarten through eighth grades. However, for the past twenty years, the school district has only provided instruction and educational services for kindergarten through fifth grades. Up until five years ago, sixth through eighth grade Lakeside students were provided access to Fisher Middle School, which is in the Los Gatos Union School District (LGUSD) and is the closest middle school to plaintiffs' residence.  The LGUSD allowed these students to attend at no additional cost to Lakeside because they were a revenue-limited or state aid district.  This allowed LGUSD to collect revenue from the state based on student attendance. In 2003, LGUSD became a Basic Aid district, which meant their revenue was no longer tied to student attendance.    For Basic Aid school districts, the state gives the school 100% of its share of the property tax collected in the district. As a result, LGUSD would no longer accept Lakeside students unless the Lakeside District paid for their education. (See Exhibit J)

LGUSD is still willing to accept Lakeside students, but not without funding from the Lakeside Joint School District.

1  Lakeside Joint School District decided to seek another solution.  In 2005,

2  the district contracted with the Campbell Union School District for

3  educational services for their 6th through 8th grade students.  (See Exhibit

4  H).  Campbell Union School District is a revenue-limited or state aid

5  district.   This meant that Lakeside Joint School District, which is a Basic

6  Aid district, could continue to collect 100% of its share of the property tax

7  collected in the district without having to contribute towards the education

8  of the 6th through 8th grade students in their district.

9

10  There are three school districts that feed into the Los Gatos-Saratoga Union

11  High School District.  These districts are Lakeside, Loma Prieta and LGUSD.

12  The Campbell Union School District does not feed into the home high school

13  district of the plaintiffs.  The Campbell Union School District's boundaries

14  are not adjacent to the plaintiff's district of residence.  The middle school

15  selected by the Lakeside Joint School District is neither the closest nor the

16  next closest school to the plaintiffs' residence.  The LGUSD and the Loma

17  Prieta School districts' boundaries are both adjacent to the plaintiff's

18  district of residence.  These school districts are the closest and next

19  closest districts, respectively. (See Exhibits A and B)

20

21     II.   PLAINTIFF HAS SHOWN STANDING

22

23  Plaintiffs Philippe and Elise Stassart are, and at all times herein mentioned

24  were, residents of Santa Cruz County, California, and the legal guardians of

25  plaintiff Isaiah.

1

2   Plaintiff Isaiah (minor) is, and at all times herein mentioned was, a

3   resident of Santa Cruz County, California, and a pupil duly enrolled in the

4   Lakeside Joint School District.

5

6   Plaintiffs Philippe and Elise Stassart, along with their minor child, Isaiah,

7   all reside within the Lakeside Joint School District boundaries.

8

9   If a taxpayer questions the use of public funds for a public purpose, that

10  individual taxpayer has the necessary standing to bring an action against a

11  public school district. *Turkoveck v. Board of Trustees of the university, 143*

12  *N.E. 2d 229 (Ill. 1957)*.  Plaintiffs Philippe & Elise Stassart have been

13  paying property taxes to the Lakeside Joint School District since they

14  purchased their home in December 1989.

15

16  "An individual denied an equal educational opportunity, as defined by this

17  subchapter may institute a civil action in an appropriate district court of

18  the United States against such parties, and for such relief, as may be

19  appropriate."  *20 USC Sec. 1706*

20

21  Defendant argues that Plaintiffs are required to provide a Guardian Ad Litem

22  for their child.

23

24  "A guardian ad litem **may** (emphasis added) be appointed in any case when it is

25  deemed by the court in which the action or proceeding is or by a judge

1   thereof, expedient to appoint a guardian ad litem to represent the minor,

2   incompetent person, or person for whom a conservator has been appointed,

3   notwithstanding that the person may have a guardian or conservator of the

4   estate and may have appeared by the guardian or conservator of the estate."

    *Civil Rules 372. (a)*

5

6   The use of the word "may" indicates that it is purely at the Court's

7   discretion to have a guardian ad litem appointed to represent a minor.

8

9   *The US Supreme Court established* that parents may bring suits on their own or

10  their children's behalf without the assistance of counsel.  The Court ruled

11  that multiple provisions of IDEA indicate that parents are the co-owners of

12  their child's right to an appropriate education. *Winkelman v. Parma City*

13  *School District , U.S. Supreme Court (No. 05-983)*

14

15      III.   DEFENDANT'S REFUSAL TO ALLOCATE FUNDING FOR A FREE &

16  PUBLIC EDUCATION IS A VIOLATION UNDER THE FOURTEENTH AMENDMENT

17

18  *The Fourteenth Amendment*: The "Equal Protection Clause" forbids school

19  districts from treating people differently. In essence, this is a fairness

20  compact that says schools must provide equal opportunities and equal

21  treatment.

22

23  "Recognizing that the Nation's economic, political, and social security

24  require a well-educated citizenry, the Congress

25

MEMORANDUM OF POINTS AND AUTHORITIES - 6

1   **(1)** reaffirms, as a matter of high priority, the Nation's goal of equal
2   educational opportunity, and
3   **(2)** declares it to be the policy of the United States of America that every
4   citizen is entitled to an education to meet his or her full potential without
5   financial barriers." *20 USC 1221*
6
7   "(a) Entitlement to equal educational opportunity; neighborhood as
8   appropriate basis
9   The Congress declares it to be the policy of the United States that—
10   (1) all children enrolled in public schools are entitled to equal educational
11   opportunity without regard to race, color, sex, or national origin; and
12   (2) the neighborhood is the appropriate basis for determining public school
13   assignments." *20 USC 1701*
14
15     IV.    DEFENDANT'S REFUSAL TO ALLOCATE FUNDING FOR A FREE & PUBLIC
16         EDUCATION   VIOLATES LEGISLATIVE INTENT
17
18   Plaintiffs allege Lakeside's actions are contrary to legislative intent.   The
19   Lakeside Joint School District receives revenues from County, State and
20   Federal sources.   (See Exhibit M) These sources did not anticipate the school
21   district pocketing the money and transporting a portion of their students to
22   an outside school district that does not even share a boundary with the
23   district of residence.   The Supreme Court has ruled that when reviewing equal
24   protection claims, "we require the distribution of funding for education to
25

1  bear a close correspondence to legislative goals." E.g., *Hanson v. Williams*

2  *County, supra*.

3

4  Lakeside Joint School District receives Title I funding.    It is ironic that

5  a funding measure that is supposed to promote "school choice" has resulted in

6  a district denying their residents any choice at all.    No Child Left Behind

7  supports continuity in education and higher test scores.    By disrupting the

8  education of our children and sending them to a school district with lower

9  test scores, Lakeside effectively mocks congressional intent.    "Congress must

10  "speak with a clear voice" and manifest an unambiguous intent to create

11  individually enforceable rights." *Pennhurst*, 451 U.S. at 17.

12

13  It is interesting that nowhere in Defendant's response is any declaratory

14  response regarding Lakeside Joint School District's refusal to fund the

15  education of their middle school students.    This is a critical component of

16  this case.    If Lakeside was willing to fund the educational needs of those

17  students, then students would be allowed to attend schools in adjacent school

18  districts that are closer to their homes.

19

20  It is possible that this was a mere oversight on the part of the Defendant's

21  attorney, but it is more likely that the attorney recognizes that this is, in

22  fact, indefensible.

23

24

25

V.    TRANSPORTING STUDENTS OUTSIDE OF THE HOME HIGH SCHOOL DISTRICT TO
      AVOID PAYING FOR THEIR EDUCATION PLACES AN UNDUE BURDEN ON DISTRICT
      RESIDENTS AND VIOLATES UNITED STATES CODE

Having contracted with a school district outside of the home high school
district, Lakeside failed to provide any alternatives for district residents.
In *Helena F. v. West Contra Costa Unified School District, (October 17, 1996)
96 Daily Journal D.A.R. 12683,* "the district had a policy that placed late
enrollees at alternate schools while waiting for space to become available at
schools in the student's attendance zones. If a parent rejected an alternate
school, the district offered to enroll the student in a home instruction
program". Lakeside School District failed to provide or promote any
alternative to having middle school students transported out of their home
high school district.

Because Rolling Hills Middle School is located farther away from plaintiff's
home, from the places where they worship, where they have arranged for their
child's sports, therapy, and medical appointments, plaintiffs are now
required to spend extra time and money facilitating their child's
transportation to these activities.  Rolling Hills Middle School is located
in a school district that is not contiguous to the Plaintiff's district of
residence.  Plaintiffs miss more work because of the extra distances
involved.

1  "No court, department, or agency of the United States shall, pursuant to

2  section 1713 of this title, order the implementation of a plan that would

3  require the transportation of any student to a school other than the school

4  closest or next closest to his place of residence which provides the

5  appropriate grade level and type of education for such student." *20 USC 1714*

6

7  Defendant cites *Helena F. v. Contra Costa Unified School District, 49 Cal.*

8  *App 4th 1793, 1800 (1996)* to support the right of Lakeside School District to

9  transport students outside their home district.  In this case, late

10  registering students were transported out of district to an adjacent school

11  district in order to relieve overcrowded classrooms.  This clearly does not

12  apply in this case.  The school district selected by Lakeside is not adjacent

13  and there are no overcrowded classrooms involved.  (Refer to Exhibits C, D,

14  E, and F).  In fact, the only school experiencing increased enrollment is the

15  school selected by the defendant for their middle school students.

16  Additionally, the school district in question was not transporting students

17  to avoid paying for their education, but to relieve over-crowded classrooms,

18  in order to comply with state and federal mandates.

19

20  Acknowledging there are "a myriad of obvious benefits to attending a school

21  close to home," the court applied a balancing test and found that "[t]he

22  convenience of late-registering students must be balanced against the

23  education of an established number of students deemed the maximum appropriate

24  for its age group."

25

1    VI.    DEFENDANT VIOLATES LEGISLATIVE INTENT REGARDING RESIDENCY
2           REQUIREMENTS PURSUANT TO CALIFORNIA EDUCATION CODE 48200
3
4    *"To provide adequate services for students and pursuant to California*
5    *Education Code 48200, a student is expected to be enrolled in the school that*
6    *is within the district in which the parent(s) or legal guardian(s)*
7    *reside(s)." Santa Clara County Office of Education.*
8
9    Since plaintiffs are located in the Los Gatos-Saratoga High School district,
10   it is reasonable to assume that in order to meet legislative intent, a
11   student would be allowed to attend an elementary school within the same
12   district boundary.  However, because the elementary school district of
13   plaintiff's residence refuses to provide an education for the middle school
14   grades and the neighboring school districts are all Basic Aid and have closed
15   their doors to any non-district students, plaintiffs have no method of
16   complying with state law.
17
18   VII.   PLAINTIFFS HAVE IN FACT EXHAUSTED ADMINISTRATIVE REMEDIES
19   Plaintiff Elise Stassart appeared before the Lakeside Joint School District
20   Board twice, once in 2006 and once in 2007, to protest the transportation of
21   middle school students to a non-adjoining school district.  At both
22   appearances, the school board explained that the reason behind the
23   transportation of the students was so that the school district could avoid
24   the financial burden of paying for the education of those students.  At both
25   appearances, the school board advised Plaintiff that any further action on

1  her part would be futile. Prior to that, Plaintiff Elise Stassart attended
2  school board meetings in 2001, 2002, 2003, and 2004, attending two or three
3  meetings per year. At each board meeting, Plaintiff Elise Stassart objected
4  to any solution that did not allow students to remain within the home high
5  school district, in order to ensure a stable educational and social
6  environment.

8  Plaintiff Elise Stassart made repeated complaints to the superintendent of
9  the Lakeside Joint School District after her child began attending Rolling
10 Hills Middle School in the Campbell Union School District.  These complaints
11 revolved around her child's poor performance in school, the lack of
12 appropriate after school care, the failure of the school to make proper
13 accommodations under child's 504 Plan, and the obvious emotional distress
14 attending a school outside of the community was causing the child.  The
15 superintendent ignored all complaints and refused to provide any relief or
16 support.

18 Plaintiff contacted the Santa Clara County Office of Education (SCCOE), the
19 State Department of Education, and the US Department of Education.  The SCCOE
20 is currently reviewing a petition for territory transfer filed by the
21 plaintiff and determining whether a possible merger should occur (Exhibit T
22 and U).  However, any change in district boundaries will not be achieved
23 until after plaintiff's child is attending high school.  It will not provide
24 redress in the immediate future.  The California Department of Education is
25 performing an investigation to determine if Lakeside Joint School District's

1  refusal to fund the education of all their students constitutes a
2  misappropriation of funds.  This investigation may take as long as a year.
3  The US Department of Education has agreed to open an investigation which is
4  on-going.

5

6  Plaintiff Elise Stassart applied for an inter-district transfer from Lakeside
7  Joint School District, the district of residence, to Los Gatos Union School
8  District, for the purposes of enrolling Isaiah in Fisher Middle School, the
9  closest middle school to their residence.  The transfer was denied.  The
10  reasons cited were the lack of funding accompanying the child and over-
11  crowded classrooms.  Plaintiff appealed the denial, citing declining
12  enrollment at the admitting district. (See Exhibit C) The appeal was denied.
13  Plaintiff appealed to the Santa Clara County Office of Education, who refused
14  to hear the appeal.  Plaintiff contacted CT English to inquire if they would
15  accept an inter-district transfer for her child and was told that he would
16  only be accepted if Lakeside School District provided funding for the child.

17

18  Lakeside Joint School District's Regulation No. 1312.3 of their Uniform
19  Complaint Procedure states "A complainant may pursue available civil law
20  remedies outside of the District's complaint procedures."

21

22  Additionally, Plaintiff Elise Stassart contacted Larry Shirey, who is in
23  charge of district organization for the California Department of Education.
24  Mr. Shirey has advised Plaintiff that the Lakeside Joint School District is
25  the only school district in the entire state of California transporting

1  students to a non-adjacent school district for the purpose of an education.

2  While other school districts enter into contracts similar to the one

3  developed by Lakeside, primarily due to either low or high enrollment or

4  budgetary requirements, all other school districts in the state understand

5  students should not be transported beyond adjacent school districts as this

6  is too disruptive to their social and educational development and places an

7  undue burden on the students and their families.

8

9  Finally, Plaintiff Elise Stassart contacted members of the Committee of

10  Education within the California State Senate, inquiring about the possibility

11  of legislation to prevent a school district from transporting students to a

12  non-adjacent school district with the intent of avoiding funding the

13  education of those students.  Plaintiff was advised that since Lakeside Joint

14  School District is the only school district in the state doing this, her best

15  option would be a lawsuit in federal district court.

16

17    VIII. STATEMENT OF JURISDICTION

18

19  1. This Court has subject matter jurisdiction under 28 U.S.C. sections 1331

20  and 1343.

21  2. This action is commenced pursuant to 2201 and 2202 and 42 U.S.C., section

22  1983.

23

24  "When a local district's financial problems otherwise would deny students

25  "basic educational equality", the court reasoned, the state is required to

1  step in unless it can demonstrate a compelling reason for not doing so." *Butt*
2  *v. State, CA*

3

4  While education is a State matter, it is not so absolutely or exclusively,
5  *Cumming v. Board of Education of Richmond County, 175 US 528 S. Ct. 197, 201,*
6  *44 L.Ed. 262.*   In the Cumming decision, the Supreme Court said: "that
7  education of the people in schools maintained by state taxation is a matter
8  belonging to the respective states, and any interference on the part of
9  Federal authority with the management of such schools cannot be justified
10 except in the case of a clear and unmistakable disregard of rights secured by
11 the supreme law of the land."   See, also *Gong Lum v. Rice, 275 US 78, 48 S.*
12 *Ct. 91, 72 L. Ed. 172; Wong Him v. Callahan, C.C., 119 F. 381; Ward v. Flood,*
13 *48 Cal. 36, 17 Am. Rep. 405; Piper et al v. Big Pine School District, 193*
14 *Cal. 664, 226 P. 926.*

15

16 The complaint in this action, alleging defendant district have denied equal
17 opportunity and equal access of plaintiff to acquire knowledge, confers
18 jurisdiction on this court if the actions complained of are deemed those of
19 the State.   *Hamilton v. Regents of University of California, 293 US 245, 55*
20 *S. Ct. 197, 79 L. Ed. 343, cf Meyer v. Nebraska, 262 US 390, 43 S. Ct. 625,*
21 *67 L.Ed. 1042, 29 A.L.R. 1446.*

22

23     IX.   ARGUMENT

24 In order to obtain a preliminary injunction, the Plaintiff must establish:

25

1          • substantial likelihood that the movant will eventually prevail on the
2            merits;

3          • a showing that the movant will suffer irreparable injury unless the
4            injunction issues;

5          • proof that the threatened injury to the movant outweighs whatever
6            damage the proposed injunction may cause the opposing party; and

7          • a showing that the injunction, if issued, would not be adverse to the
8            public interest.

9

10    X.    THE PLAINTIFF CAN PROVE A PRIMA FACIE CIVL RIGHTS CLAIM

11

12    The evidence establishes a prima facie case for violation of civil rights

13    under the Fourteenth Amendment.  The evidence consists of:

14

15    Lakeside Joint School District does not contest the fact that the sole reason

16    for transporting three grades outside of the district to a non-adjacent

17    district is to withhold allocated funding for the education of those

18    students.  They are not being transported to a "better" school district.

19    They are not being transported to promote desegregation.  They are not being

20    transported because Rolling Hills Middle School has any special program or

21    services required or requested by the parents or the students.  They are not

22    being transported to relieve over-crowded classrooms.  Lakeside parents have

23    repeatedly asked Lakeside to allocate funds for the education of the middle

24    school students, so their children can attend a school in their own

25    neighborhood, and have been rebuffed.

1

2 Further, there is no dispute that Rolling Hills Middle School does not

3 qualify as the closest or next closest school to the plaintiffs' residence.

4 (See Exhibit G)

5

6    XI.    PLAINTIFF WILL SUFFER IRREPARABLE INJURY UNLESS INJUNCTION ISSUES

7

8 Plaintiffs are suffering a violation of their constitutional rights.

9 "When an alleged deprivation of a constitutional right is involved, most

10 courts hold that no further showing of irreparable injury is necessary."  11A

11 Wright, Miller & Kane, Federal Practice & Procedure §2948.1 at 161 (West

12 1995).

13

14 Isaiah is the ward of the plaintiffs.  He has been in and out of children's

15 shelters and foster care homes for much of his early childhood.  His

16 experiences have been similar to a "homeless child" and, in fact, while in

17 his mother's custody, he experienced homelessness several times.  He has been

18 in the custody of the plaintiffs since November 30, 2005.  According to the

19 McKinney-Vento law: "In general, it is usually considered better for the

20 child to remain in the school of origin, as this encourages stability for the

21 student. In some cases, school is one of the few stable experiences that a

22 homeless child or youth may have. Changing schools significantly hinders a

23 child's ability to learn and achieve academically and socially. The work of

24 Dr. Joy Rogers with Loyola University in Chicago finds that it can take a

25 student four to six months to recover academically after changing schools. In

1  addition, students who are highly mobile generally have lower test scores and
2  overall academic performance than those who do not."

3

4  The stress of changing schools once again and being transported away from his
5  cohorts has resulted in additional mental duress for Isaiah.  His grades have
6  fallen (Exhibit R) and his anxiety level has increased since attending
7  Rolling Hills Middle School (Exhibit S).

8

9  While Isaiah does not qualify for services under the McKinney-Vento law, the
10 legislative intent behind the law certainly applies in Isaiah's case.
11 Plaintiffs Philippe and Elise Stassart have spent the past two years trying
12 to provide Isaiah with a stable environment.  The defendant district's
13 refusal to support Isaiah as a special needs student violates his rights
14 under IDEA.

15

16 Defendant trivializes the hardship on Plaintiff's child that has resulted in
17 Lakeside's decision to send their middle school students to a non-adjacent
18 school district.  If the minor child took the school bus provided by Lakeside
19 School District, he would spend seventy five minutes every morning and
20 seventy five minutes every afternoon on a bus just to get to and from school.
21 In order to provide their child some relief, the Plaintiffs take time off
22 work, to the detriment of their jobs, in order to provide transportation.
23 Because Lakeside's chosen school is at a greater distance from their home
24 than the closer schools, plaintiffs bear a greater financial burden in the
25 cost of fuel and wear and tear on their vehicles.

1

2  Minor child suffers from Reactive Attachment Disorder and Post Traumatic
3  Stress Disorder brought on by early childhood abuse (See Exhibit V).  One of
4  the recommendations for treatment of this disorder is to provide as stable
5  and consistent an environment as possible.  Plaintiff is able to attend a
6  mainstream school environment, but requires additional accommodations to
7  allow him to be successful in school.  These accommodations include having a
8  "check-in person" at school to help him work through any anxiety attacks,
9  extra homework support because he often has difficulty concentrating in class
10 or understanding and retaining the material, and positive behavior
11 reinforcement to control any anxiety-induced behaviors, such as touching
12 inanimate objects, making noise, or being disruptive in the classroom.
13 Rolling Hills Middle School has not been able to make all the accommodations
14 necessary in order to ensure minor child is successful in class.  No check-in
15 person has been provided and only recently has extra homework support been
16 provided.  There have been no assurances from Rolling Hills Middle School
17 that they will be able to support minor child's special needs in entirety for
18 the next two years.

19

20 Plaintiffs are greatly concerned as to what will happen when he transitions
21 from middle school to Los Gatos High School.  The culture at Rolling Hills
22 Middle School is substantially different from the culture at Fisher Middle
23 School, the middle school in the plaintiff's home high school district.  If
24 the minor child remains in Rolling Hills Middle School, any friendships that
25 develop will be disrupted and lost when he moves on to high school.  He will

1   essentially lose any peer support group he builds up and have no peer support
2   group in the new school.  The curriculum at Rolling Hills Middle School does
3   not dovetail into the curriculum at Los Gatos High School, unlike the
4   curriculum at Fisher Middle School.  Because Fisher Middle School acts as a
5   "feeder school" to Los Gatos High School, the curriculum there is aligned to
6   the curriculum at Los Gatos High School, in order to provide students with a
7   sense of continuity in their educational development.  There is no such
8   relationship between Rolling Hills Middle School and Los Gatos High School.
9   However, Rolling Hills Middle School does have that relationship with the
10  high school they feed into.  Plaintiffs foresee that the transition from
11  middle school to high school will be a year of extreme stress and anxiety,
12  similar to the current year when their child had to transition from
13  elementary school to a middle school with no cohorts and no continuity
14  provided in his educational development.

15

16  XII.   THE THREATENED INJURY TO THE PLAINTIFF OUTWEIGHS ANY HARM TO THE
17         DEFENDANTS

18

19  Plaintiffs are asking the Court to order Lakeside Joint School District to
20  perform in a similar manner as every other school district in the United
21  States.  Having received the revenues to be used towards the education of
22  their students, Plaintiffs are asking that the Court enjoin the school
23  district to use the funds for the purpose intended by the county, state, and
24  federal governments.

25

MEMORANDUM OF POINTS AND AUTHORITIES - 20

1  Lakeside Joint School District spends less per student than any other school
2  district in the entire State of California; at the same time spending more on
3  administration and overhead than any other school district.  Additionally,
4  Lakeside Joint School District receives more funding than any other school
5  district in Santa Clara and Santa Cruz Counties. (See Exhibits  L, N, O, P,
6  and Q).

7

8  Plaintiffs are not expecting or asking for the Lakeside School District to
9  construct school buildings, hire teachers, or pay for books.  Plaintiffs are
10 asking that they not be required to drive past two perfectly acceptable
11 middle schools in order to get to the middle school selected by their
12 district of residence.  This is especially aggravating when the plaintiffs
13 have paid property taxes to their school district for almost twenty years.
14 It does not seem unreasonable to the plaintiffs to ask their district to
15 financially support their child's education.

16

17    XIII. AN INJUNCTION SERVES THE PUBLIC INTEREST

18

19 The legislative bodies at state and federal levels have long noted the
20 funding disparities between school districts in different areas.  Lakeside
21 Joint School District has chosen to act against legislative intentions that
22 are meant to "level the playing field" by pocketing money allocated towards
23 the education of their students and "outsourcing" the responsibility and
24 expense to a revenue limited school district.

25

1    XIV.   CONCLUSION

2

3    "Where a tax is levied for a special purpose, the funds raised must be used

4    for that purpose." *Thomas v. Board of Education, County of McDowell, 261 SE*

5    *2d 66 (W. Va. Ct. App. 1979).*   There is no doubt that the property taxes

6    Plaintiffs pay each year are to go to the Lakeside Joint School District.

7    The property statements plaintiffs receive from the County Tax Assessor

8    clearly state the amount and the recipient.   Plaintiffs pay these taxes with

9    the understanding that they will be used for educational and instructional

10   support for their children as well as other children in the district.

11

12   According to the Santa Clara County Office of Education, Lakeside receives

13   $6,329.62 in revenue for each student, including the 6th through 8th grade

14   students.   Defendant's refusal to use the funds they receive for the 6th

15   through 8th grade students violates the rights of those students and their

16   families under the equal protection clause of the Fourteenth Amendment.

17

18   Lakeside Joint School District ignored federal law by electing to skip the

19   closest and next closest school providing the appropriate grade level

20   education to contract with the closest **revenue-limited** school.

21

22   In Defendant's Memorandum of Points and Authorities, Defendant states "The

23   Court must assume Plaintiff's allegations to be true and draw all reasonable

24   inferences in their favor." *Fed R. Civ. P. 112(b)(1)*

25

1  Plaintiff takes this to mean that Defendant admits that Lakeside School

2  District's primary motivation for electing to send middle school students to

3  Rolling Hills Middle School, rather than the closer middle schools, is to

4  avoid their fiduciary responsibilities to provide an education for those

5  students.

6

7  Based upon the foregoing, Plaintiffs respectfully request:

8

9    • For an order requiring defendant to show cause, if any, why they should

10     not be enjoined, as hereinafter set forth, during the pendency of this

11     action.

12

13   • For a preliminary injunction enjoining defendant, it's agents, and all

14     it's employees, and all persons acting under, in concert with, from

15     failing or refusing to fund the education of plaintiff and thus,

16     allowing him to attend a middle school within his home high school

17     district.

18

19   • For a permanent injunction enjoining defendant, it's agents, and all

20     it's employees, and all persons acting under, in concert with, from

21     failing or refusing to fund the education of plaintiff and thus,

22     allowing him to attend a middle school within his home high school

23     district.

24

25

MEMORANDUM OF POINTS AND AUTHORITIES - 23

1    • For a judicial declaration that the Lakeside Joint School District is

2       required to provide a free and public education for all their students,

3       including the sixth, seventh, and eighth grades within the Los Gatos-

4       Saratoga Union High School District.

5

6                                                    4/28/08

7

8                                                    21951 BEAR CREEK WAY

9                                                    LOS GATOS, CA 95033

10                                                   PRO SE

11                                                   ELISE STASSART

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## DISTRICT BOUNDARY MAP



Date last updated: May 5. 2004



EXHIBIT B

SANTA CRUZ COUNTY SIDE OF LAKESIDE JOINT SCHOOL DISTRICT



**Enrollment Trends**
**Raymond J. Fisher Middle School** (CDS Code 6047567)

EXHIBIT C

Enrollment Trend options: Total

**Total Enrollment**

| 2000-01 | 2001-02 | 2002-03 | 2003-04 | 2004-05 | 2005-06 | 2006-07 |
|---------|---------|---------|---------|---------|---------|---------|
| 994 | 1,011 (+1.7%) | 1,015 (+0.4%) | 1,018 (+0.3%) | 978 (-3.9%) | 987 (+0.9%) | 931 (-5.7%) |

THIS IS THE CLOSEST MIDDLE SCHOOL TO PLAINTIFF AND THE SCHOOL
WHERE THEIR OTHER CHILDREN ATTENDED



EXHIBIT D

THIS IS LAKESIDE JOINT SCHOOL DISTRICT'S ENROLLMENT



**Enrollment Trends**
**C. T. English Middle School** (CDS Code 6093058)

Enrollment Trend options: | Total |

**Total Enrollment**

| 2000-01 | 2001-02 | 2002-03 | 2003-04 | 2004-05 | 2005-06 | 2006-07 |
|---------|---------|---------|---------|---------|---------|---------|
| 248 | 276 (+11.3%) | 264 (-4.3%) | 259 (-1.9%) | 261 (+0.8%) | 204 (-21.8%) | 176 (-13.7%) |

EXHIBIT E

THIS IS A MIDDLE SCHOOL LOCATED IN ADJACENT SCHOOL DISTRICT TO
LAKESIDE



EXHIBIT F

THIS IS THE SCHOOL WHERE LAKESIDE CURRENTLY SENDS THEIR MIDDLE
SCHOOL STUDENTS



EXHIBIT G

THIS MAP SHOWS LAKESIDE IN RELATION TO THE SURROUNDING MIDDLE SCHOOLS.

STUDENTS DRIVE PAST TWO MIDDLE SCHOOLS TO GET TO ROLLING HILLS MIDDLE SCHOOL.

EXHIBIT H



April 6, 2005    Los Gatos, California *Since 1881*

| CLASSIFIEDS | ADVERTISING | ARCHIVES | SEARCH | ABOUT US |

# News

# Lakeside makes a middle school decision

*By* Lisa Toth

Lakeside school board members finally made a decision that could impact the future of seventh- and eighth-grade students in the district for years to come.

The Lakeside Joint School District board unanimously decided in a 4-0 vote on March 29 to pursue an action plan with Rolling Hills Middle School for Lakeside's future seventh- and eighth-grade students. Board member Brent Schwager was absent from the meeting.

As part of the motion, the educational services at Rolling Hills will be provided to Lakeside under a feeder school status, rather than regarding Lakeside's students as inter-district transfers. The board also plans to give due consideration, at a later date, to have Lakeside's sixth-graders attend Rolling Hills as well.

Rolling Hills, located at 1585 More Ave. in Los Gatos, is about 15 to 20 minutes away from Lakeside school, situated in the mountains on Black Road. It's also part of the Campbell Union School District. Students from Rolling Hills feed into high schools in the Campbell Union High School District. But Lakeside's seventh- and eighth-graders will feed into Los Gatos High School.

Campbell Union School District board president Janet Johnson and District Superintendent Johanna VanderMolen gave a

presentation about Rolling Hills to about 20 Lakeside parents and community members in the audience. The presentation highlighted minimum days, special education services, academic performance, after-school day care, summer school enrichment programs, extracurricular activities, electives, dances, technology and sports.

Rolling Hills has about 980 students in attendance this year, said VanderMolen, and is facing a projected declining enrollment with only 963 students for next year. She said the declining enrollment the school has faced in the past appears to finally be stabilizing this year.

Rolling Hills is a revenue-limit district, meaning the majority of the school's funding comes from average daily attendance. School officials described adding Lakeside students to the Rolling Hills campus as a win-win situation for both districts.

"Why are we here?" VanderMolen questioned. "It's a match for us. We're not going out soliciting kids and school districts."

Lakeside is also facing both declining enrollment and a shrinking budget reserve. Lakeside is a basic aid district, meaning the majority of its revenue comes from property taxes. VanderMolen said she doesn't expect the Campbell Union School District to become a basic aid district anytime soon.

Lakeside parents and teachers in the audience who had previously visited Rolling Hills for tours commented on the welcoming middle school staff and happy students they saw while on the campus.

The motion passed on March 29 does not preclude Lakeside officials from considering merger or annexation with another neighboring school district. Lakeside serves grades K6, but is obligated to provide educational services for grades K8. Lakeside Board President Parker Stokes said they can't continue to send seventh- and eighth-grade students to Fisher Middle School, in the Los Gatos Union School District, since that agreement comes with a price tag of approximately $4,900 per student each year. This would exhaust Lakeside's reserve budget in two years or less.

Copyright © SVCN, LLC.

EXHIBIT J

# WEEKLY TIMES
### LOS GATOS

February 18, 2004     Los Gatos, California *Since 1881*

CLASSIFIEDS     ADVERTISING     ARCHIVES     SEARCH     ABOUT US

## *News*

# Lakeside district will pay to send its middle school students to Fisher

*By* Lisa Toth

Los Gatos Union School District board members unanimously voted at their Feb. 10 meeting to approve an agreement to provide educational services for seventh- and eighth-grade students from the Lakeside Joint School District.

Lakeside is a small, mountain school district that has too few students to have its own middle school, so a handful of its students are sent every year to Raymond J. Fisher Middle School in Los Gatos.

The arrangement has worked well until now. This year, the Los Gatos district slipped from being a "revenue-limit" district, meaning they were funded primarily by the state, to a "basic-aid" district, meaning they are now funded mainly by property taxes.

Linda Latasa, LGUSD assistant superintendent of business services, said the Lakeside students are no longer contributing financially to the Los Gatos district's tax base, since Lakeside is also a basic-aid district. Lakeside became a basic-aid district in the 200102 school year.

A $4,900-per-pupil fee was jointly suggested and set, which the Lakeside district will pay the Los Gatos district, Latasa said, effective in the fall of 2004. This will cover most of the Los Gatos district's costs to take on students from the Lakeside district.

"The Los Gatos school district is not asking for anything we haven't received before," said Phil Couchee, a LGUSD board member.

The set amount is equivalent to what the Los Gatos district was receiving from Lakeside when it was still a revenue-limit district.

The board made the decision after input during its December board meeting and mutual negotiations reached between LGUSD Board President Dorothy Rouse, LGUSD Superintendent Mary Ann Park, Lakeside Superintendent Joyce Salisbury and Lakeside Board President Parker Stokes.

From the meetings, representatives reached an agreement they felt was fair to both sides, Latasa said. She added this is an agreement that is renegotiated every year. Stokes said he was pleased with the spirit of the negotiations, which were done with the best interests of the students in mind. The Lakeside school board also unanimously approved the agreement at its Feb. 11 meeting.

"There was never any intent on our side not to have [Lakeside] students attend our school district," Park said. "There is always a reimbursement from the sending district to the receiving district."

Since 1988, the Lakeside district has been sending students to Fisher, according to Salisbury. She said Lakeside students wanted more specialized courses such as after-school classes and electives, which Fisher provided.

"There were parents who worked with the school board regarding the evolution of the district," said Salisbury, adding that Lakeside is a K8 district but currently serves only K6.

Salisbury also mentioned the possibility of eventually restarting a middle school in the Lakeside district and returning to a K8 status.

"We would need to study existing programs, and we would certainly need to have parents on board and keep them informed on the different programs that are out there," she said.

The Lakeside district has an enrollment of 110 students. Salisbury added the Lakeside district also has six families whose children attend C.T. English Middle School, which is located off Summit Road in the Santa Cruz mountains and is included in the Loma Prieta Joint Union Elementary School District. Salisbury said they

are looking forward to continuing that arrangement, since the students chose to attend this middle school.

In addition, the LGUSD board members voted unanimously to expel an unnamed student for the remainder of the current semester. Park said the student violated a section of the California Education Code related to unlawfully being in possession of, selling or using a controlled substance such as alcohol or drugs. Park said the district will be working with the parents of that student to place the minor in another school in a different district or in a continuation program.

*Lakeside Joint School District is currently enrolling kindergartners. For more information, call 408.354.2372. LGUSD is also now accepting new student registration packets. For more information, call 408.335.2000.*

Copyright © SVCN, LLC.

EXHIBIT K

Schools like this ...    Highest/Lowest    Results    Help

## School Comparison Results, Fiscal Year 2005-06

Clicking on a column heading will re-sort by that column.
Click the round X button to get a spreadsheet of the table below.

Compare all Middle/Junior High schools in the city of Los Gatos with "Enrollment" between 933 and 1,031. Include Rolling Hills Middle regardless of this criteria.

(2 of 2 matches listed, sorted by Enrollment)

| County Name | District Name | School Name | Grade Span[1] | Enrollment | Year-round? | Title I? | Average Class Size | 1-Year Dropout Rate[2] | % of students tested for SAT | Average Total SAT Score[3] | % English Learners | % Free Meals | Largest Ethnic Group | % Minority | Pupil-Teacher Ratio | API Base Scores | API Statewide Rank | Made AYP? | AYP Lang Arts % Proficient | AYP Math % Prof |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Santa Clara | Campbell Union Elementary | Rolling Hills Middle | 5-8 | 982 | No | No | 28.3 | | | | 6.2% | 13.3% | White | 34.5% | 22.1 | 843 | 9 | Yes | 69.2% | 56.3% |
| Santa Clara | Los Gatos Union Elementary | Raymond J. Fisher Middle | 6-8 | 987 | No | No | 26.6 | | | | 0.8% | 3.3% | White | 20.1% | 20.1 | 891 | 10 | Yes | 79.4% | 76.9% |
| Averages | for | all schools | n/a | * | n/a | n/a | 27.3 | 3.7% | 36.7% | 1,506 | 24.9% | 50.1% | n/a | 67.7% | 21.0 | * | n/a | n/a | 44.8% | 48.0% |

1 Lowest and highest grade with reported enrollment, including alternative and special programs.

2 The 1-Year Dropout Rate is dropouts divided by enrollment for grades 9-12.

3 Tests taken after March 2005 are scored out of a total possible score of 2,400.

Notes: * A statewide average for this value is not calculated by the California Department of Education.

EXHIBIT L

| County Name | District Name | Enrollment | Average Daily Atten. (ADA) | Expenditures per ADA[1] | Revenue Limit per ADA | % English Learners | % Free or Reduced Meals | % Minority | Largest Ethnic Group | API Base Scores | Made AYP? |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | **Finance** | | | | **Students** | | **Performance** | |
| Santa Clara | Campbell Union Elementary | 7,352 | 7,123 | $7,255 | $4,913 | 34.3% | 41.1% | 60.7% | Hispanic | 772 | Yes |
| Santa Clara | Lakeside Joint Elementary | 80 | 77 | $15,000 | $10,320 | 1.3% | 5.0% | 6.2% | White | 926 | Yes |
| Santa Clara | Loma Prieta Joint Union Elementary | 480 | 462 | $9,347 | $6,787 | 1.5% | 3.8% | 9.6% | White | 911 | Yes |
| Santa Clara | Los Gatos Union Elementary | 2,628 | 2,547 | $8,610 | $5,426 | 1.8% | 3.4% | 20.8% | White | 897 | Yes |

*EXHIBIT M*



Lakeside Revenues 2008-2009

Property Taxes
75%

Local Income
5%

State Income
15%

Federal Income
5%

EXHIBIT N

## School District:

School District Name: Lakeside Joint Elementary School District

| | This School's Agency | (CA) District Average |
|---|---|---|
| Number of Schools Managed | 1 | 4 |
| Number of Students Managed | 80 students | 1,785 students |
| District Total Revenue | $1,311,000 | $16,194,000 |
| District Expenditure | $1,197,000 | $16,545,000 |
| District Revenue / Student | $16,388 | $8,848 |
| District Expenditure / Student | $14,963 | $8,162 |

*EXHIBIT O*

**General Fund - Revenues**
**Lakeside Joint Elementary, 2005-06**

| Object Codes | Type of Revenue | Revenues | | | Dollars/Student (ADA) * | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | Unrestricted | Restricted | Total | This District (ADA 77) | % of Avg for Elementary School Districts | Statewide Avg Elementary School Districts | Statewide Avg All Districts |
| 8010-8099 | Revenue Limit Sources ⓘ | $792,764 | $5,595 | $798,359 | $10,320 | 199% | $5,177 | $5,370 |
| 8100-8299 | Federal Revenue ⓘ | 96 | 82,363 | 82,459 | 1,066 | 146% | 728 | 757 |
| 8300-8599 | Other State Revenue ⓘ | 61,601 | 105,644 | 167,245 | 2,162 | 160% | 1,352 | 1,542 |
| 8600-8799 | Other Local Revenue ⓘ | 75,781 | 1,622 | 77,403 | 1,001 | 160% | 626 | 482 |
| **Total Revenue** | | **$930,242** | **$195,224** | **$1,125,466** | **$14,548** | **185%** | **$7,883** | **$8,150** |

**Source:** California Department of Education, School Fiscal Services Division - SACS Unaudited Actual Data.

*EXHIBIT P*

**General Fund - Revenues**
**Los Gatos Union Elementary, 2005-06**

| Object Codes | Type of Revenue | Revenues | | | Dollars/Student (ADA) * | | | |
|---|---|---|---|---|---|---|---|---|
| | | Unrestricted | Restricted | Total | This District (ADA 2,547) | % of Avg for Elementary School Districts | Statewide Avg Elementary School Districts | Statewide Avg All Districts |
| 8010-8099 | Revenue Limit Sources ⑦ | $13,622,253 | $327,580 | $13,949,832 | $5,476 | 106% | $5,177 | $5,370 |
| 8100-8299 | Federal Revenue ⑦ | 25 | 677,803 | 677,828 | 266 | 37% | 728 | 757 |
| 8300-8599 | Other State Revenue ⑦ | 1,414,817 | 783,390 | 2,198,207 | 863 | 64% | 1,352 | 1,542 |
| 8600-8799 | Other Local Revenue ⑦ | 3,868,017 | 1,962,408 | 5,830,425 | 2,289 | 366% | 626 | 482 |
| **Total Revenue** | | **$18,905,111** | **$3,751,181** | **$22,656,292** | **$8,894** | **113%** | **$7,883** | **$8,150** |

**Source:** California Department of Education, School Fiscal Services Division - SACS Unaudited Actual Data.

*EXHIBIT Q*

## General Fund - Revenues
## Campbell Union Elementary, 2005-06

| Object Codes | Type of Revenue | Revenues | | | Dollars/Student (ADA) * | | | |
|---|---|---|---|---|---|---|---|---|
| | | Unrestricted | Restricted | Total | This District (ADA 7,123) | % of Avg for Elementary School Districts | Statewide Avg Elementary School Districts | Statewide Avg All Districts |
| 8010-8099 | Revenue Limit Sources | $34,089,728 | $905,607 | $34,995,336 | $4,913 | 95% | $5,177 | $5,370 |
| 8100-8299 | Federal Revenue | 5,666 | 3,810,126 | 3,815,792 | 536 | 74% | 728 | 757 |
| 8300-8599 | Other State Revenue | 4,526,220 | 3,973,062 | 8,499,283 | 1,193 | 88% | 1,352 | 1,542 |
| 8600-8799 | Other Local Revenue | 5,357,259 | 2,768,023 | 8,125,282 | 1,141 | 182% | 626 | 482 |
| **Total Revenue** | | **$43,978,874** | **$11,456,818** | **$55,435,692** | **$7,782** | **99%** | **$7,883** | **$8,150** |

\*  The per student number is based on total ADA, not the number of students in a specific program.

**Source:** California Department of Education, School Fiscal Services Division - SACS Unaudited Actual Data.