1  ELISE STASSART, PRO SE

2  21951 BEAR CREEK WAY

3  LOS GATOS, CA 95033

**FILED**

2008 MAY 20  A 10: 12

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA/S.J.

4

5  IN THE UNITED STATES DISTRICT COURT

6  FOR THE NORTHERN DISTRICT OF CA

7

8  ISAIAH [A MINOR CHILD], BY            )  Case No.: C08 01511 (PVT)

9  PHILIPPE & ELISE STASSART, LEGAL GUARDIANS)  ADDENDUM TO

10  ET AL                                )  PLAINTIFF'S MEMORANDUM IN OPPOSITION TO

11  21951 BEAR CREEK WAY                 )  DEFENDANT'S MOTION TO DISMISS

12  LOS GATOS, CA 95033                  )

13  PLANTIFFS                            )  Date:  June 3, 2008

14  Vs.                                  )  Time:  10:00 am

15  LAKESIDE JOINT SCHOOL DISTRICT       )  Place: 5, 4th Floor

16  19621 BLACK ROAD                     )  Magistrate Judge:  Patricia V. Trumbell

17  LOS GATOS, CA 95033                  )

18  DEFENDANT

19  _____

20  The Plaintiffs, Philippe and Elise Stassart, along with their minor child,

21  Isaiah, hereby submit this "Addendum to Memorandum in Opposition to

22  Defendant's Motion to Dismiss."  The Defendant, Lakeside Joint School

23  District, has moved to dismiss this matter pursuant to Cal. Civ. Proc. 373(a)

24  and Fed. R. Civ. P. 23(b)(1) on the grounds that a) Plaintiffs are required

25  to have a guardian ad litem appointed on behalf of their minor child and b)

26  Plaintiffs have failed to state a claim for which relief can be granted.

27

28  Defendant's claims are without merit.

PLAINTIFF'S ADDENDUM TO MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 1

Defendant argues that Plaintiffs have not exhausted all administrative
remedies and failed to provide Lakeside Joint School District an opportunity
to resolve the complaint under their Uniform Complaint Procedure.   The
IDEA's exhaustion requirement does not apply "in situations in which
exhaustion would be futile because administrative procedures do not provide
adequate remedies." *Heldman v. Sobol*, 962 F.3d 148, 158 (2d Cir. 1992); see
also H.R. Rep. No. 99-296, at 7 (1985); *Mrs. W. v. Tirozzi*, 832 F.2d 748, 756
(2d Cir. 1987).   "It is important to note that there are certain situations
in which it is not appropriate to require the exhaustion of [IDEA]
administrative remedies before filing a civil law suit. These include
complaints that . . . an agency has failed to provide services specified in
the child's individualized educational program." 131 Cong. Rec. § 10396-01
(1985); see also H.R. Rep. 99-296, at 7 (1985) (exhaustion not required where
"it would be futile to use the due process procedures (e.g., an agency has
failed to provide services specified in the child's individualized
educational program . . . ").


I.    PLAINTIFFS HAVE EXHAUSTED ADMINISTRATIVE REMEDIES

Plaintiffs have, in fact, attempted mightily to resolve the issue of Lakeside
Joint School District's refusal to provide a free and appropriate education
of their minor child using administrative remedies.


Plaintiffs submit to the Court, at this time, correspondence as follows:


➢  LETTER TO OFFICE OF EQUAL OPPORTUNITY, CALIFORNIA DEPARTMENT OF EDUCATION, DATED
   APRIL 7, 2008 -  RESPONSE RECEIVED APRIL 25, 2008 (EXHIBIT AA)

1  ➤ LETTER FROM CALIFORNIA DEPARTMENT OF EDUCATION, DATED APRIL 25, 2008 – ASKING

2     PLAINTIFF TO PROVIDE PROOF THAT PLAINTIFF HAS EXHAUSTED ADMINISTRATIVE REMEDIES ON

3     THE LOCAL LEVEL (EXHIBIT AB)

4  ➤ LETTER TO CALIFORNIA DEPARTMENT OF EDUCATION, DATED APRIL 29 – PROVIDING COPY OF

5     MEMORANDUM OF POINTS AND AUTHORITIES (EXHIBIT AC)

6  ➤ LETTER TO CALIFORNIA DEPARTMENT OF EDUCATION, DATED APRIL 30 – PROVIDING COPIES OF

7     CORRESPONDENCE (EXHIBIT AD)

8  ➤ LETTER TO LAKESIDE JOINT SCHOOL DISTRICT, DATED MARCH 11, 2008 – FORMAL COMPLAINT

9     UNDER UCP (EXHIBIT AE)

10 ➤ RESPONSE FROM LAKESIDE JOINT SCHOOL DISTRICT, DATED MARCH 18, 2008 – DENYING RELIEF

11    (EXHIBIT AF)

12 ➤ LETTER TO SANTA CLARA COUNTY OFFICE OF EDUCATION, DATED APRIL 10, 2008 – FORMAL

13    COMPLAINT UNDER UCP – RESPONSE RECEIVED ON APRIL 21, 2008 (EXHIBIT AG)

14 ➤ LETTER FROM SANTA CLARA COUNTY OFFICE OF EDUCATION, DATED APRIL 21, 2008 – FORMAL

15    COMPLAINT UNDER UCP – ADVISING PLAINTIFF TO COMPLAIN TO CDE AS SCCOE HAS NO

16    JURISDICTION (EXHIBIT AH)

17 ➤ LETTER TO SANTA CLARA COUNTY OFFICE OF EDUCATION, DATED MAY 2, 2008 – FORMAL

18    COMPLAINT UNDER UCP – (EXHIBIT AI)

19 ➤ LETTER TO SANTA CLARA COUNTY OFFICE OF EDUCATION, DATED MARCH 29, 2008 –REQUESTING

20    REVIEW OF DENIAL OF APPEAL, NO RESPONSE – (EXHIBIT AJ)

21 ➤ LETTER FROM SANTA CLARA COUNTY OFFICE OF EDUCATION, DATED MARCH 28, 2008 – DENIAL

22    OF APPEAL FOR INTERDISTRICT TRANSFER – NO RELIEF PROVIDED (EXHIBIT AK)

23 ➤ LETTER TO LOS GATOS UNION SCHOOL DISTRICT, DATED APRIL 16, 2008 – NO RESPONSE

24    RECEIVED (EXHIBIT AL)

25 ➤ LETTER FROM LGUSD, DATED FEBRUARY 20, 2008 – DENYING APPEAL FOR INTERDISTRICT

26    TRANSFER (EXHIBIT AM)

27 ➤ LETTER FROM LGUSD, DATED AUGUST 23, 2008 – DENYING INTERDISTRICT TRANSFER (EXHIBIT

28    AN)

1  ➢ LETTER TO ATTORNEY GENERAL'S OFFICE, STATE OF CALIFORNIA, DATED APRIL 7, 2008 –
2     ASKING FOR SOME RELIEF (EXHIBIT AO)

3  ➢ LETTER FROM ATTORNEY GENERAL'S OFFICE, STATE OF CALIFORNIA, DATED APRIL 25, 2008 –
4     ADVISING PLAINTIFF TO SEEK RELIEF USING THE COURTS (EXHIBIT AP)

5  ➢ LETTER TO DIRECTOR OF EDUCATION, CALIFORNIA DEPARTMENT OF EDUCATION, DATED MARCH
6     20, 2008 – PROVIDING MORE INFORMATION (EXHIBIT AQ)

7  ➢ LETTER FROM DIRECTOR OF EDUCATION, CALIFORNIA DEPARTMENT OF EDUCATION, DATED MAY
8     13, 2008 – REQUESTING MORE INFORMATION (EXHIBIT AR)

9  ➢ LETTER TO DIRECTOR OF EDUCATION, CALIFORNIA DEPARTMENT OF EDUCATION, DATED MARCH 8,
10    2008 – RESPONSE RECEIVED MAY 13, 2008 (EXHIBIT AS)

11 ➢ LETTER TO U.S. DEPARTMENT OF EDUCATION, DATED APRIL 8, 2008 – REQUESTING RELIEF
12    (EXHIBIT AT)

13 ➢ RESPONSE FROM U.S. DEPARTMENT OF EDUCATION, DATED APRIL 23, 2008 – DENYING RELIEF
14    (EXHIBIT AU)

15 ➢ RESPONSE TO U.S. DEPARTMENT OF EDUCATION, DATED APRIL 25, 2008 – REQUESTING RE-
16    REVIEW, NO RESPONSE (EXHIBIT AV)

17 ➢ LETTER TO U.S. DEPARTMENT OF EDUCATION, DATED MAY 7, 2008 – REQUESTING RELIEF
18    (EXHIBIT AW)

19 ➢ LETTER TO SEN. JOE SIMITIAN, DATED MAY 8, 2008 – REQUESTING LEGISLATION TO PREVENT
20    OTHER SCHOOL DISTRICTS FROM USING LOOPHOLES IN CALIFORNIA EDUCATION CODE (EXHIBIT
21    AX)

22 ➢ LETTER TO LAKESIDE'S ATTORNEY, DATED MAY 7, 2008 – REQUESTING DUE PROCESS HEARING,
23    NO RESPONSE (EXHIBIT AY)

24

25 Plaintiffs have been denied due process under administrative remedies and
26 have been forced to seek relief through this Court.

27

28

their students to a school district that has been named in a past lawsuit for providing a sub-standard educational environment.

This school year, minor child informed parents that one of his classrooms had a leaky roof which was reported to the school administration. The administration at Rolling Hills Middle School advised their child's teacher that there was no budget to repair the roof. The students were required to remain in the classroom with the leaky roof, but moved furniture and supplies so no rain water fell directly on the students. Plaintiff's child has complained about the classroom being moldy. To Plaintiff's knowledge, this still has not been addressed.

It is unreasonable to expect a school district that has difficulty repairing leaky roofs to be able to provide the necessary support that Isaiah needs in order to have a successful education. Plaintiffs are asking the court to allow their child to be enrolled in a school closer to their home that, as a basic aid district, is in a better position to support their child's educational needs.

III. 2007-2008 THE YEAR IN REVIEW
Plaintiff Elise Stassart left a voice mail for the school psychologist, Barbara Rudnicki, on August 9, 2007 to make arrangements for a 504 Plan review for Isaiah to ensure that proper controls were in place before he started school.

Plaintiff Elise Stassart visited with Cynthia Dodd, the vice principal, on August 21 at Rolling Hills Middle School because she had not received a return phone call from Ms. Rudnicki and school was commencing the following week. Cynthia Dodd informed plaintiff that they did not perform 504 Plan reviews until after school had

started because they wanted to observe the student in the classroom and

advised Plaintiff Elise Stassart that the after school care at Rolling Hills would not

be appropriate for Isaiah.  Plaintiff Elise Stassart emailed Bob Chrisman, the

Superintendent at Lakeside School District, on August 21, 2007 informing him that

Plaintiffs did not believe Rolling Hills Middle School would be able to provide

educational benefit for Isaiah and advising that she would attempt to enroll Isaiah at

Fisher Middle School, the closest middle school to the plaintiffs' residence.

The Court found "a structural flaw in the decision-making process, specifically the

inability to convene a meeting to develop an IEP when school was out of session,

prevented any decision to be made within a reasonable time frame that [the student's]

needs required."  *GERSTMYER v. HOWARD COUNTY PUBLIC SCHOOLS et al,  850 F.Supp. 361,*

*20 IDELR 1327, 2 ECLPR 4*

Plaintiff Elise Stassart subsequently applied for an interdistrict transfer

to Fisher Middle School.  The interdistrict transfer was denied, appealed,

and denied.

The first week of September, Plaintiff Elise Stassart began contacting

neighbors to determine how they felt about a territory transfer from Lakeside

Joint School District to Los Gatos Union School District.  As stated in the

Plaintiffs' Complaint, residing in a school district that refuses to fund the

education of all middle school students represents a considerable hardship on

all residents of the district.

On September 27, 2007, Plaintiff Elise Stassart asked Isaiah's teacher to set

up the 504 Plan review as a month had now passed since the start of school.

On October 9, Plaintiffs Philippe and Elise Stassart finally met with Rolling Hills staff for the 504 Plan review.  By this time, Isaiah's behavior had deteriorated to the point that his rages had returned, he was starting to become depressed, his anxiety had increased, and plaintiffs were noticing a reduction in Isaiah's ability to process information.  This was later confirmed by testing done by the Children's Health Council that showed Isaiah's cognitive abilities had actually significantly decreased from the prior year when he was still at Lakeside Elementary School.

The Stassarts were informed that Rolling Hills had no counselor who could meet with Isaiah on a regular basis to act as a "check-in" person, as was recommended in the 504 Plan set up at Lakeside Joint School District.  The district psychologist had not performed a classroom observation for the 504 Plan review and it appeared to the Stassarts that the Rolling Hills staff had done little or no "homework" on Isaiah.

The Stassarts signed off on the 504 Plan dated October 9, 2007 with the understanding that Cynthia Dodd, the vice-principal, would be acting as the check-in person, a homework buddy would be assigned to Isaiah, the homework club teachers would provide homework support for Isaiah, the teachers would use appropriate positive behavior modifications to guide him during transitions, distractions inside the classroom would be minimized, and that the teachers would provide a consistent and structured educational environment.

Another meeting took place between Isaiah's teachers, Isaiah, and his parents on October 26, 2007 to try and get Isaiah back on track as his grades showed no improvement.

In early November, Plaintiff Elise Stassart posted ads on craigslist trying to find after school care for Isaiah because the stress of riding on the bus back to Lakeside was creating too many problems.  He couldn't do his homework at Lakeside's clubhouse because the smaller children were too distracting and by the time his parents picked him up from Lakeside's after school care and got home he was too stressed to do his homework.

Plaintiff Philippe Stassart was finding it difficult to take time off work to transport Isaiah to the various after school appointments Isaiah has because he had to drive from work to Lakeside and then back down into town for the appointments.  Elise Stassart was unsuccessful in finding anyone near Rolling Hills Middle School who could watch Isaiah after school.

By the end of November, Philippe Stassart had removed the door to Isaiah's bedroom.  During his nightly rages, he would slam the door and the door jamb was beginning to shred from the constant abuse.

Isaiah had been attending the Tuesday and Thursday homework club at Rolling Hills since the start of the school.  However, his grades had gone down.  On December 5, 2007, the teacher supervising the homework club told Philippe Stassart that she could not deal with Isaiah in the room.  Apparently, the homework club at Rolling Hills does not provide any real homework support.  It is actually independent study where the students are expected to work quietly at their desks.  Isaiah finally got upset because he wasn't getting any help with his homework and demanded the teacher help him.  When she refused to help him with his homework because she was not familiar with the coursework, he threw a tantrum.  Plaintiff Elise Stassart emailed Kathy Gibbs, the

1   principal at Rolling Hills, to ask why the teacher who was supervising her child was

2   unaware of the 504 Plan.  She received no response.

3

4   On December 12, 2007, Plaintiff Elise Stassart appeared before the Santa Clara County

5   Office of Education's board meeting to protest Lakeside's transporting her child to

6   Rolling Hills Middle School and request some relief to allow her son to attend Fisher

7   Middle School.  The board suggested Ms. Stassart appeal the denial, which she did, and

8   it was denied, and the Santa Clara County Office Education refused to intervene

9   following the denial.

10

11  On December 18, 2007, Plaintiff Elise Stassart emailed Isaiah's PE teacher to ask why

12  his PE grade was an F.  Isaiah enjoys athletics and is a reasonably good athlete.  The

13  PE teacher responded that Isaiah refused to "suit up" for PE.  The teacher knew that

14  Isaiah had RAD, but was unable to use proper behavior modification methods to get him

15  to comply with school rules.  Isaiah was not aware that not suiting up would affect

16  his grade.  By this time, his anxiety level was so high, he often had difficulty

17  processing what his teachers were saying.  Isaiah's 504 Plan specifically states that

18  teachers are to aid Isaiah in making transitions.  Suiting up for PE would qualify as

19  a transition under the 504 Plan.

20

21  Just before Christmas break, Elise Stassart emailed Isaiah's teacher asking for

22  another 504 Plan meeting because Isaiah's grades were so poor, his emotional disorder

23  was worse, Isaiah's psychologist was increasingly concerned, and it appeared that the

24  school still was not making proper accommodations.

25

26  On January 23, 2008, one of Isaiah's teachers emailed a complaint to Elise Stassart

27  that Isaiah was being disruptive in class by clowning around.  Elise Stassart

28  responded with suggestions on how to redirect Isaiah.

On January 29, Elise Stassart had an email exchange once again with Isaiah's teacher due to his poor grades.  At this point, he had gotten several successive F's on assignments.

In February, Plaintiffs re-enrolled Isaiah at KnowledgeQuest, a private tutoring center, at their own expense because the teachers at Rolling Hills consistently ignored the accommodations required to address his emotional disability.

On February 7, 2008, Philippe and Elise Stassart, along with Isaiah, met with his teachers to discuss his poor grades.   The poor grades were due in part to missing homework assignments. It was obvious to the Stassarts at the meeting that the teachers did not understand the nature of Isaiah's disability and were not providing the proper accommodations to help Isaiah be successful in school.  At the meeting, Isaiah assured the teachers that he would hand in all homework assignments from that point on.

On February 12, 2008, Isaiah announced he would no longer do homework unless he received a reward.   It was clear that that one of Isaiah's teachers had suggested to Isaiah that he should ask his parents to reward him for doing homework in the hope of getting him to improve his grades.  However, reward systems don't work with children with Reactive Attachment Disorder.  They do not understand "cause and effect" because the care-taking they have experienced has been so random.  It didn't matter if he was hungry, his birth mother may or may not have fed him.  In Isaiah's world, events are simply a matter of "luck".  This had been explained to the staff at Rolling Hills at the October 504 Plan meeting.  Isaiah was receiving conflicting messages at school. As a result, Isaiah's emotional disorder was getting worse.

Dr. Jay Muccelli, Isaiah's psychologist provided the Stassarts a referral to Dr. Nancy Sullivan, a neuro-psychologist at Children's Health Council. The Stassarts could no longer deal with Isaiah's rages and the stress of coping with a school that refused to accommodate his emotional problems without some additional guidance.

On February 20, 2008, Plaintiff Elise Stassart was informed that the Registrar of Voters had validated the signatures for the petition for territory transfer and it could move forward to committee.

On March 3, 2008, Plaintiff Elise Stassart contacted the California Department of Education in an attempt to get some support for her child. At that time, Isaiah had four F's out of seven classes.

On March 11, Plaintiff Elise Stassart filed a letter of formal complaint under the UCP with Lakeside Joint School District. Pursuant to CFR 300.510, Lakeside Joint School District "must convene a meeting with the parent and the relevant member or members of the IEP team who have specific knowledge of the facts identified in the due process complaint" within 15 days of receiving notice of parent's due process complaint. No hearing was set.

On March 18, 2008, Isaiah's teachers began working with Isaiah on Tuesdays and Thursdays after school so he wouldn't have to go to the independent study hall. At this point, the school year was already two-thirds over and Isaiah had made little or no progress in improving his study skills or his grades.

On March 19, 2008, Plaintiffs filed this lawsuit.

On March 31, Isaiah underwent testing at the Children's Health Council. The Court has received a copy of the results. Isaiah's scores went down in several areas from the prior year when he was tested at Lakeside. Additionally, it appears that Isaiah has failed to progress and keep up at his grade level.

In Lakeside's assessment performed in 2007, it was noted that Isaiah showed exceptional ability in mathematics. The Plaintiffs agreed with that assessment as in 2007 Isaiah was often able to perform fairly complicated mathematics in his head, such as multiplying two fractions. In 2008 at Rolling Hills Middle School, Isaiah is flunking his math class and has difficulty adding two double-digit numbers.

In mid-April, Isaiah's science teacher caught Isaiah cheating on an assignment. In Isaiah's language arts class, the students were required to do an oral report. The teacher failed to make it clear to Isaiah that if he did not make the report, he would receive an F. Because the teacher did not use proper behavior methods to communicate to Isaiah about the assignment, he did not make the report and received an F.

On April 21, the second hearing for the petition for territory transfer was held at Fisher Middle School in Los Gatos.

More than four months after Elise Stassart's request for another 504 Plan Review, Rolling Hills finally agreed to schedule one. On April 22, 2008, there was another 504 Plan Review meeting at Rolling Hills Middle School. Isaiah's psychologist attended. The meeting was taken up trying to explain to the team the nature of Isaiah's disability and how it impacted his ability to learn. Elise Stassart requested a transition to an IEP because his Children's Health Council test results showed his learning was being impacted by his disability and because his grades had been consistently poor this school year. Elise Stassart felt it was important to

1    include measurable goals in Isaiah's 504 Plan, so that the parents could determine if

2    Isaiah was receiving any educational benefit.  The Rolling Hills staff denied the

3    request.  IDEA 2004 requires states to establish performance goals for

4    children with disabilities that are the same as the state's definition of

5    adequate yearly progress under NCLB.  *IDEA 2004 Section §1412(a)(15).*  The

6    meeting was to be continued as the teachers needed to return to class.

7

8    Elise Stassart signed Isaiah up for the after school care at Rolling Hills Middle

9    School on May 1, 2008.  Isaiah had been taking the bus provided by Lakeside from

10   Rolling Hills to Lakeside's Clubhouse, their after school care program.  The bus

11   driver called Elise Stassart to complain that Isaiah had been throwing candy wrappers

12   on the bus at the younger children.  According to the bus driver, Lakeside

13   administration was aware of the problem, but refused to contact the Stassarts directly

14   about the complaint. Instead, the administration had told the bus driver to contact

15   the Stassarts.  By this time, Isaiah was too stressed to continue riding the bus and

16   Philippe Stassart had used up all his vacation time transporting Isaiah from Lakeside

17   to his after school activities and home.  Isaiah, hearing that he would be attending

18   the after school care at Rolling Hills Middle School, trashed Elise Stassart's home

19   office.

20

21   On May 1, Elise Stassart emailed Isaiah's teachers because his twelfth birthday was

22   coming up and Isaiah wanted to bring cupcakes for his class.  His teacher informed her

23   that Isaiah needed to bring thirty-two cupcakes for the class.  The class sizes at

24   Fisher Middle School are less than twenty-five students in a class.

25

26   On May 5, 2008, Isaiah's PE teacher reported to Elise Stassart that Isaiah had to be

27   reminded to suit up for PE.  Isaiah's PTSD was causing him to have flashbacks to

28   periods when he was at the Children's Shelter and his clothes were stolen when he

1   changed.  He did not want to wear PE clothes for fear his street clothes would be
2   stolen while he was at PE.    Elise Stassart reminded the teacher on how to manage
3   Isaiah's behavior in accordance to his 504 Plan.

4

5   On May 6, Isaiah flunked another test.  Isaiah told Elise Stassart that the reason he
6   flunked was prior to the test, the teacher re-arranged the furniture in the room and
7   reassigned the seating.  This was less than a month after the same teacher had been
8   briefed on Isaiah's emotional disorder and the importance of being consistent and not
9   making abrupt changes.  Elise Stassart emailed the teacher to ask why she elected to
10  move furniture right before a test and received no response.

11

12  On May 7, Elise Stassart mailed letters to defendant district's attorney and
13  California Department of Education advising that plaintiffs would not be re-enrolling
14  Isaiah in Rolling Hills Middle School.    It was framed as a due process complaint
15  under CFR 300.508

16

17  Pursuant to CFR 300.510, Lakeside Joint School District "must convene a meeting with
18  the parent and the relevant member or members of the IEP team who have specific
19  knowledge of the facts identified in the due process complaint" within 15 days of
20  receiving notice of parent's due process complaint.  Lakeside Joint School District
21  received formal complaints on or about March 11 and May 8, 2008. No meetings were set.

22

23  On May 8, Isaiah was assigned to write a myth about a city he "knew well" by his
24  language arts teacher.  Isaiah decided he wanted to write about Tokyo.  Isaiah has
25  never been to Tokyo.  He interpreted the teacher's instruction to mean a city that his
26  classmates would have heard of, but not visited.  Isaiah informed the teacher of his
27  choice.    The teacher told Elise Stassart that even though Isaiah did not follow the
28  instructions, she would be giving him an A.  In fact, an A appeared on his Power

1    School webpage before he had even handed in the assignment.  The Plaintiffs would

2    prefer their child receive an "honest C" than a "bogus A" on his school assignments.

3    They have explained this to Isaiah's teachers at every meeting.

4

5    On May 12, Elise Stassart picked Isaiah up from the Rolling Hills after school care.

6    There was a young man supervising the students.  She asked him what Isaiah was

7    supposed to do if he needed help with his homework.  The man said he would help Isaiah

8    if Isaiah asked for help.  It states in Isaiah's 504 Plan that Isaiah will not ask for

9    help due to his PTSD and that when he is working on class assignments, whoever is

10   monitoring him is supposed to check with him if he needs help and offer it.

11   Under the IDEA, any person who is supervising Isaiah is to be made aware of the 504

12   Plan and Isaiah's disabilities.  It was clear from the conversation that none of the

13   staff at Campbell Care were aware of Isaiah's emotional disorder.

14

15   On May 14, almost four weeks after the first 504 Plan meeting, plaintiffs met with

16   staff at Rolling Hills Middle School to finish up the 504 Plan Review.  Plaintiffs

17   were advised that all homework support would be stopped after the end of May.

18   Plaintiffs asked if that meant there would be no homework during the month of June and

19   were told that there would be homework assigned, but Isaiah would not be provided any

20   support for the last two weeks of school.  Under the IDEA, the school district is

21   required to provide support if it is needed for the student to receive educational

22   benefit.  Because Isaiah's stress level is so high, he can't concentrate fully in

23   class and his short term memory has been negatively impacted.  The only educational

24   benefit he received during this school year was when he received homework support.

25   This was explained to the IEP team, but no solution was provided.

26

27   Kathy Gibbs, the school principal, asked why the parents couldn't provide the homework

28   support.  The parents explained that because Isaiah was unable to fully understand the

1  teachers' instructions and the parents weren't in the classroom, they often were

2  unable to properly direct the child as to what was needed to complete the assignment.

3  Elise Stassart offered the example where Isaiah had been assigned to complete a

4  worksheet entitled "Graphitti", a math graph exercise.   That evening, Isaiah asked

5  for help on a worksheet, which was entitled "Graphitti".  Elise Stassart guided him on

6  the activity and he completed it successfully and handed it in the next day.  He

7  received an F on the worksheet.  Apparently, there were several worksheets entitled

8  "Graphitti" and he had done the wrong one.  Elise Stassart also explained that when

9  she has had a question about an assignment, her only access to the teachers is through

10 email.  If she sends an email with a question regarding homework, the teachers don't

11 respond to it until the next day, which is too late.  The teachers at Rolling Hills do

12 not give out their phone numbers to parents.  Because Philippe and Elise Stassart have

13 no way of confirming what exactly the teachers want, there is no way for them to

14 provide proper homework support.

15

16 Elise Stassart also noted that these experiences further undermined Isaiah's mental

17 health as he can not trust that he is doing the proper homework assignment or will

18 receive credit for his work.  He can't trust his parents because even when they help

19 him with homework, he might still get an F.

20

21 Plaintiffs advised the 504 team that they would not be re-enrolling Isaiah at Rolling

22 Hills for the next two years as they do not feel that he is receiving any educational

23 benefit.

24

25 The team reviewed the current 504 interventions in place.  It was determined that

26 Rolling Hills Middle School had failed to provide more than half the accommodations

27 that had been put in place while Isaiah was attending Lakeside Elementary School.

28 Kathy Gibbs, the principal, said that there was no funding or support to provide most

1  of those accommodations.  The accommodations, which were not provided, included:  a

2  peer support group to help Isaiah learn how to interact better with his peers, a

3  check-in person to help Isaiah understand how to be more successful in school (this

4  was also a recommendation in the report performed by CHC), and a homework buddy.  The

5  teachers needed to return to their classes, so the meeting was continued for another

6  date.

7

8  III. STUDENT HAS BEEN DENIED A FREE AND APPROPRIATE PUBLIC EDUCATION

9  **TEST SCORE COMPARISON FROM 2007 TO 2008**

|                             | LAKESIDE – 2007 | RHMS –2008 |
|-----------------------------|-----------------|------------|
| VERBAL COMPREHENSION        | 119             | 121        |
| PERCEPTUAL REASONING        | 117             | 110        |
| WORKING MEMORY              | 104             | 86         |
| PROCESSING SPEED            | 97              | 97         |
| FULL SCALE IQ               | 119             | 108        |
| SIMILARITIES                | 13              | 14         |
| VOCABULARY                  | 12              | 12         |
| COMPREHENSION (INFORMATION) | 15              | 8          |
| BLOCK DESIGN                | 11              | 9          |
| PICTURE CONCEPTS            | 15              | 15         |
| MATRIX REASONING            | 12              | 11         |
| DIGIT SPAN                  | 10              | 6          |
| LETTER-NUMBER               | 12              | 9          |
| CODING                      | 11              | 11         |
| SYMBOL SEARCH               | 8               | 8          |

1  Isaiah's IQ has dropped eleven points in one year at Rolling Hills Middle School.  If

2  he remains at Rolling Hills and his IQ continues to drop, by the time he graduates

3  from Rolling Hills, he will have gone from a child with above-average intelligence

4  down into the range of mentally retarded.   The Plaintiffs believe that the added

5  stress and anxiety brought on by attending a school out of his neighborhood, along

6  with the lack of support to the 504 Plan, has impaired Isaiah's ability to comprehend

7  and process information.  Plaintiffs note that his scores should have gone up or at

8  least remained the same, but Isaiah's scores have gone down, in some areas

9  dramatically.

10

11  Isaiah had made remarkable progress both educationally and socially during his

12  attendance at Lakeside Elementary School.  His parents expected his mental health to

13  continue to improve.  By disrupting Isaiah's education and social network, Lakeside

14  Joint School District has done great harm to Isaiah and created a major hardship on

15  Plaintiffs Philippe and Elise Stassart.  Isaiah has made no close friends at Rolling

16  Hills Middle School.  Isaiah plays in the Los Gatos Little League, which is his only

17  social network.  All of his team mates will be at Fisher Middle School next year.

18  Philippe and Elise Stassart feel that the lack of an appropriate peer support group

19  has contributed to Isaiah's negative school performance this year.

20

21  The SELPA representative, Princess Tucker Jones, who has been present at all 504

22  meetings this year, has stated that there is no question that Isaiah is an individual

23  with exceptional needs, within the meaning of 34 CFR Section 104.3(j)

24

25  The IDEA's procedural safeguards guarantee that parents are entitled to an "impartial

26  due process hearing" before a local educational agency if they object to the decisions

27  of the local school regarding the education of their disabled child. 20 USC

28  1415(b)(2).  Not only has Lakeside Joint School District failed to provide a hearing,

1  they have completely ignored all complaints, and made no effort whatsoever to provide

2  Isaiah with a FAPE.

3

4  By sending Isaiah out of district to an outlying school district that does not feed to

5  plaintiffs' high school, Lakeside Joint School District has disrupted all of Isaiah's

6  peer relationships.  Without his friends and cohorts to support and guide him, his

7  behavior has regressed.  He is so stressed and anxious most of the time that he has

8  difficulty remembering what the teacher has said or process the information he reads.

9  Kathy Gibbs, the Rolling Hills principal, stated at the April 21 504 Plan Meeting that

10 Rolling Hills did not have the ability to provide Isaiah with a peer support group.

11

12 If he is not placed at Fisher Middle School, which feeds into plaintiff's local high

13 school, when he goes on to high school, once again his peer relationships will be

14 lost, and he will slide backwards.

15

16 Isaiah's 504 Plan must be "reasonably calculated to enable the child to receive

17 educational benefits." *Rowley, 458 US at 206*.   Plaintiffs have put in a great deal of

18 effort and time to help formulate the interventions and support needed to help Isaiah

19 be successful in school.  Rolling Hills Middle School, finding the requirements too

20 onerous (providing a homework buddy, a structured consistent environment, check with

21 Isaiah to see if he needs help, etc.), opted to ignore the 504 Plan.

22

23 "A school district must comply both procedurally and substantively with the IDEA.

24 While not every procedural flaw constitutes a denial of FAPE, procedural flaws that

25 inhibit a student's right to receive a FAPE, significantly prevent a parent's

26 opportunity to participate in the IEP process, or cause a deprivation of educational

27 benefit to a student, will constitute a substantive denial of FAPE." *Student v.*

28 *Redlands Unified School District* [OAH Case No(s). N2006100159 & N2007031009].

PLAINTIFF'S ADDENDUM TO MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 19

1

2  "When a student's behavior impedes his learning or that of others, a school district

3  is required to consider the use of positive behavioral interventions and supports, and

4  other strategies to address that behavior." *Student v. Redlands Unified School*

5  *District* [OAH Case No(s). N2006100159 & N2007031009].   Rolling Hills Middle School's

6  administration was aware that Isaiah's emotional disorder required the use of

7  interventions in order for him to be successful, but failed to communicate the need

8  for those interventions to teachers and aides who had contact with Isaiah.  Even

9  teachers who had been included in the 504 Plan Review meetings administered the

10  interventions inconsistently.  As a result, Isaiah was denied a FAPE.  Plaintiff Elise

11  Stassart advised Bob Chrisman, Lakeside Joint School District's superintendent, of

12  these deficits and Lakeside Joint School District chose not to act.

13

14   III.   IDEA APPLIES

15  *W.B. v. Matula (3rd Cir. 1995)* established that children who qualified under

16  Section 504 would have the same protections as children who qualified under

17  the IDEA, citing *42 USC Section 1983.*

18

19   IV.   CONCLUSION

20  The Santa Clara County Office of Education has informed Plaintiff in a letter

21  dated April 21, 2008 that they do not have any jurisdictional means to

22  enforce state and federal laws.

23

24  The Santa Clara County Office of Education is reviewing whether or not they

25  should reorganize the school districts involved based on the petition for

26  territory transfer filed by Plaintiffs, but any reorganization will not go

27  into effect until the minor child is in high school.

28

1    The California Department of Education has indicated that they prefer these

2    types of issues be resolved at the local level, but has provided no option

3    other than this Court, since the local educational agency, Lakeside Joint

4    School District, has ignored state and federal laws and denied Plaintiffs due

5    process.

6

7    The failure of Rolling Hills Middle School to hold a 504 Plan Review prior to

8    the start of the school year resulted in a significant loss of educational

9    opportunity to the student.   He began the school year with no interventions

10   in place and with his teachers unaware of how to properly motivate him.   This

11   alone constitutes denial of a FAPE.   Lakeside Joint School District was aware

12   of this failure on the part of Rolling Hills Middle School and did nothing to

13   prevent or remediate it.

14

15   Elise Stassart complained to Bob Chrisman, Lakeside Joint School District's

16   superintendent, repeatedly about Rolling Hills Middle School inability to

17   support Isaiah's 504.   The response from Mr. Chrisman, as written in his

18   letter of March 18 states that "your 504 plan is being administered properly

19   in Rolling Hills Middle School."   Since no representative from Lakeside

20   School District has attended any of the meetings between the Stassarts and

21   staff at Rolling Hills Middle School, Plaintiffs question Mr. Chrisman's

22   assessment.

23

24   None of the teachers, administration, or staff at Rolling Hills Middle School

25   had ever experienced a child with RAD, prior to Isaiah.   They had no training

26   to help them understand how to cope with his behaviors.   Less than 1% of

27   children in the United States suffer from RAD, so plaintiffs do not expect

28   public school personnel to be familiar with the disorder or how to

accommodate it.  However, the Plaintiffs did expect the school district to

support the plan and guidelines provided by the parents which were calculated

to allow their child to access his education in the least restrictive

environment.  Congress found that the education of children with disabilities

can be made more effective if all school personnel who work with children

with disabilities receive "high quality, intensive" professional development

and training to ensure that they have "the skills and knowledge necessary to

improve the academic achievement and functional performance of children with

disabilities, including the use of scientifically based instructional

practices, to the maximum extent possible." *IDEA 2004 Section 1400(c)(5)(E).*

The Plaintiffs have met repeatedly with their child's teachers and the

administration.  They have had their child's psychologist come down to the

school to explain his emotional disorder and how it affects his ability to

learn and process.  They have had him privately assessed at considerable

expense.  They have paid for private tutoring to prevent Isaiah from falling

further behind in his education.

They have tried to work with the school assigned by their district of

residence.  The teachers' failure to provide proper behavioral modifications

has created incredible stress on Philippe and Elise Stassart.  Because Isaiah

does not get the proper behavior modifications at school, when he gets home

he rages.  He is in a classroom with more than thirty students.  He has lost

the peer support group he developed at Lakeside Elementary School.  It is no

wonder that his PTSD is constantly triggered.  His anxiety level has

increased.  He is depressed.  His cognitive and processing abilities have

gone down during his time at Rolling Hills.

Comparing Isaiah's IQ scores from 2007 when he was attending Lakeside Elementary to 2008 when he was attending Rolling Hills Middle School, his IQ dropped more than ten points. In *Kevin T. v. Elmhurst Comm. School District No. 205,* the U.S. District Court determined that the IEPs were not "reasonably calculated to confer [an] educational benefit upon Kevin" and that "the District failed to provide Kevin with a FAPE . . ." and cited the drop in Kevin's IQ as evidence that a free and appropriate education was not provided.

Lakeside Joint School District has no interest in providing Plaintiffs with relief as this would involve the district funding the education of their child. Lakeside Joint School District, in violation of state and federal laws, has opted to transport all middle school students to an outlying school district in order to avoid paying for their education. While it is true, Isaiah is not being treated any differently than any other Lakeside student, the effect on Isaiah constitutes a denial of FAPE.

Plaintiffs believe all Lakeside students are, in fact, being denied a FAPE. More than half of the middle school students who reside in the Lakeside School District do not attend Rolling Hills Middle School. Instead, their parents send them to private school, home-school, or place their children with friends and relatives residing in the Los Gatos Union School District borders for the three years of middle school.

WHEREFORE, plaintiffs pray judgment against the defendant as follows:

For an order requiring defendant to show cause, if any, why they should not be enjoined, as hereinafter set forth, during the pendency of this action.

For a preliminary injunction enjoining defendant, it's agents, and all it's employees, and all persons acting under, in concert with, from failing or refusing to fund the

1  education of plaintiff and thus, allowing him to attend a middle school within his
2  home high school district.

3

4  For a permanent injunction enjoining defendant, it's agents, and all it's employees,
5  and all persons acting under, in concert with, from failing or refusing to fund the
6  education of plaintiff and, thus, allowing him to attend a middle school within his
7  home high school district.

8

9  For a judicial declaration that the Lakeside Joint School District is required to
10  provide a free and public education for all their students, including the sixth,
11  seventh, and eighth grades, within the Los Gatos-Saratoga Union High School District,
12  which constitutes their neighborhood, pursuant to *20 USC 1701*.

13

14  For a judicial declaration that the Lakeside Joint School District may not transport
15  any student to a non-adjoining school district for the purpose of an education
16  pursuant to *20 USC 1714*.

17

18

19  Dated this  5/20/2008

20

21

22  *Elise Stassart*
    ELISE STASSART, PRO SE
23  21951 BEAR CREEK WAY
    LOS GATOS, CA 95033

24

25

26

27

28

PLAINTIFF'S ADDENDUM TO MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 24

Elise Stassart
21951 Bear Creek Way
Los Gatos, CA 95033
(408) 655-4710 cell

Office of Equal Opportunity
California Department of Education
School and District Accountability Division
1430 N Street
Sacramento, CA 95814-5901

April 7, 2008

To Whom It May Concern:

I am making a formal complaint against the Lakeside Joint School District in Los Gatos, California under CCR, Title 5, Sections 4600-4687. I have made repeated complaints to the Santa Clara County Office of Education, the local educational agency, but they have refused to act on my concerns.

I reside in the Lakeside Joint School District. I have owned my home since 1989. I have had two sons who attended Lakeside, then Fisher Middle School, which is part of the Los Gatos Union School District, then Los Gatos High School, and then gone on to college degrees. I have one son who attended Lakeside and is now attending Rolling Hills Middle School.

Lakeside Joint School District consists of a single elementary school. This school district has a charter to service kindergarten through eighth grades. However, for the past twenty years, the school district has only provided instruction and educational services for kindergarten through fifth grades. Up until five years ago, sixth through eighth grade Lakeside students were provided access to Fisher Middle School, which is in the Los Gatos Union School District (LGUSD). The LGUSD allowed these students to attend at no additional cost to Lakeside because they were a revenue-limited or state aid district. This allowed LGUSD to collect revenue from the state based on student attendance. In 2003, LGUSD became a Basic Aid district, which meant their revenue was no longer tied to student attendance. For Basic Aid school districts, the state gives the school 100% of its share of the property tax collected in the district. As a result, LGUSD would no longer accept Lakeside students unless the Lakeside District paid for their education.

LGUSD is still willing to accept Lakeside students, but not without funding from the Lakeside Joint School District.

Lakeside Joint School District decided to seek another solution. In 2005, the district contracted with the Campbell Union School District for educational services for their 6th through 8th grade students. Campbell Union School District is a revenue-limited or state aid district. This meant that Lakeside Joint School District, which is a Basic Aid district, could continue to collect 100% of its share of the property tax collected in the district

Elise Stassart
21951 Bear Creek Way
Los Gatos, CA 95033
(408) 655-4710 cell

without having to contribute towards the education of the 6th through 8th grade students in their district.

There are three school districts that feed into the Los Gatos-Saratoga Union High School District. These districts are Lakeside, Loma Prieta and LGUSD. The Campbell Union School District does not feed into my home high school district.

Lakeside School District and Campbell School District entered into this contract, which is financially beneficial for both school districts, in violation of Ca. EC 48200, which requires students be educated in their district of residence.

20 USC1714 states that:

> No court, department, or agency of the United States shall, pursuant to section 1713 of this title, order the implementation of a plan that would require the transportation of any student to a school other than the school closest or next closest to his place of **residence** which provides the appropriate grade level and type of education for such student.

The closest school to my residence is Fisher Middle School in the Los Gatos Union School District. The next closest school to my residence is CT English in the Loma Prieta School District. The third closest middle school to my residence is Union Middle School in the Union School District. Rolling Hills Middle School is not even among the three closest middle schools to my home.

My youngest son suffers from PTSD due to early childhood abuse. Attending a school so far from home has resulted in increased anxiety and lower grades. He is under a 504 Plan. However, Rolling Hills Middle School's administration has repeatedly violated the law under IDEA…they have not responded within the specified timelines to complaints, requests for reviews, nor have they provided my child with the accommodations outlined in the 504 Plan.

Lakeside Joint School District refuses to pay for the education of my child -- denying him equal access and equal opportunity for a public education.

Elise Stassart
21951 Bear Creek Way
Los Gatos, CA 95033
(408) 655-4710 cell

It is a financial hardship for my family for my child to attend a school so far from home. Additionally, the stress of being in a school out of the district has caused my child a lot of anxiety, to the point that his psychologist does not consider the situation healthy.

I have applied for an inter-district transfer to Fisher Middle School, which is the closest middle school, but they are Basic Aid and have denied the transfer. They refuse to admit any student who is not fully funded. I have appealed to the Santa Clara County Office of Education and they have denied the appeal. I have filed a lawsuit pro se in district court, but the first hearing won't be held until July.

My questions are as follows:

1) California Education Code 48200 says my child is supposed to be educated in his district of residence but doesn't say what my options are if our district of residence refuses to provide classes. Can you tell me what they are?

2) 20 USC 1714 says no school district can transport a student to school unless it is the closest or next closest to his residence. The school selected by my district of residence is not the closest or the next closest school. Why can they ignore this law?

3) The Santa Clara County Office of Education, which is the LEA, has refused to intervene in any way. They do not seem concerned at all about the failure of Lakeside School District to provide an education to three grades. Are they the wrong agency to be contacting?

4) Since my district of residence refuses to educate my child in my neighborhood and the school they have contracted with is so far away it is creating a burden on my family and none of the closer schools are willing to accept my child under an interdistrict transfer, can I just keep my child home for the next two years? Both my husband & I work, so we wouldn't be able to home school him. In other words, is it acceptable that my child's right to a free and appropriate education is being denied?

Thank you for any answers you can provide.

*Elise Stassart*



**CALIFORNIA
DEPARTMENT OF
EDUCATION**

1430 N STREET
SACRAMENTO, CA
95814-5901

**JACK O'CONNELL**
State Superintendent of
Public Instruction
PHONE: 916-319-0800

April 25, 2008

Elise Stassart, Complainant
21951 Bear Creek Way
Los Gatos, CA 95033

Dear Ms. Stassart:

I recently received a series of e-mails forwarded to me by Tanesha Hembrey, from the
United States Department of Education. Your e-mails appear to address a number of
issues, including, the use of Title I funding, district reorganization, and interdistrict
transfers at the Lakeside Joint School District. While I understand your concerns, and
empathize with your feelings about your experiences, the California Department of
Education (CDE) does not have jurisdiction, at this time, over your complaint regarding
district reorganization and interdistrict transfers.

The *California Code of Regulations*, Title 5, Section 4610, authorizes CDE,
through the Uniform Complaint Procedures (UCP), to process only complaints
regarding categorical programs that are mandated by certain federal and state
statutes and regulations or allegations of discrimination. The local district
governing board has ultimate authority over general education processes such as
district reorganization and interdistrict transfers. If you have not already done so,
please contact your local school district administration to determine what local
processes govern the resolution of district reorganization and interdistrict transfer
complaints. I encourage you to work with district representatives so that both
parties clearly understand the important issues you raised in order to improve the
opportunity for local resolution.

The CDE might have jurisdiction over your complaint regarding the use of Title I
funding. However, complaints must first be considered by the local agency for
resolution. It unclear from your letters dated March 20, 2008, and March 26, 2008,
whether a complaint regarding the use of Title I funding was first filed at the District
level. If you choose to file a complaint regarding the use of Title I funding, and the
District fails to respond within 60 days of your letter, or if you believe that the District
decision is incorrect as a matter of fact or law, you may wish to appeal to the CDE
within 15 days after the District letter was due or upon receipt of the decision of the

Elise Stassart, Complainant
April 25, 2008
Page 2

District. Please include the following in your appeal packet: the reason for the appeal to CDE and why the District findings are incorrect and /or the law is misapplied, a copy of the original complaint to the District, and a copy of the District decision.

I appreciate and value your interest in public education and applaud your advocacy for the proper use of Title I funding, district reorganization, and interdistrict transfers. If you have further questions about the complaint process or this letter, please contact Shanine Abercrombie, Assistant Consultant, Categorical Programs Complaints Management Unit, at 916-319-0929.

Sincerely,

Kathleen Seabourne

Kathleen Seabourne, Manager
Categorical Programs Complaints Management Unit

KS:sa

cc: Tanesha Hembrey, United States Department of Education

21951 Bear Creek Way
Los Gatos, CA 95033


Kathleen Seabourne, Manager
California Department of Education
1430 N Street
Sacramento, CA 95814-5901


April 29, 2008


Dear Ms. Seabourne,

Thank you so much for your letter of April 25, 2008. I can tell from your letter that you are greatly confused as to the exact nature of my complaint against the Lakeside Joint School District.

I do not have anything in writing from either the Lakeside Joint School District or the Santa Clara County Office of Education regarding my complaint. I have made numerous complaints to both offices in writing, in person, and by email, but I have basically been ignored. I have appeared before the Lakeside Joint School District's School Board and been told that they have absolutely no intention of complying with state and federal laws and that there is nothing I can do to prevent them from violating my civil rights and my child's civil rights. I have contacted Larry Shirey at CDE and he has told me that he does not enforce the law and can not help me. I have contacted Don Bolce of SCCOE and he has completely ignored my letters, refused to address the forced transfer of my child to a school out of my neighborhood, and refused to allow my child to enroll in a school in my neighborhood. I have written to Joe Fimiani, the interim superintendent of SCCOE, and he says that he can not enforce the law.

I have filed a lawsuit in federal district court against Lakeside. They are adamant that they do not have to pay for the education of my child or any middle school child, even though their charter is K-8.

I am attaching the MEMORANDUM OF POINTS AND AUTHORITIES from my lawsuit, so you can have a better understanding of exactly what is going on.

I have never heard of a school district refusing to pay for the education for the children of district residents. I am not asking for my child's education in a private school be funded. I want him to be able to attend a public school close to home. Any help or guidance you can provide would be greatly appreciated.

Warmest regards,

Elise Stassart

Elise Stassart
21951 Bear Creek Way
Los Gatos, CA 95033


April 30, 2008


Kathleen Seabourne
California Department of Education
1430 N Street
Sacramento, CA 94814-5901

Dear Ms. Seabourne,

I am sorry to bother you again, but after I sent off yesterday's letter. I remembered that I did have some correspondence from Lakeside School District as well as Los Gatos Union School District and the Santa Clara County Office of Education. For the most part, it is fairly dismissive. It is pretty obvious that the Districts involved and the County would like me to just go away and leave them alone.

I am enclosing copies of my letters to the different parties as well as any response I may have received. If no response was received, I wrote on my letter NO RESPONSE.

Again, any help and guidance you can provide would be greatly appreciated. It shouldn't be this hard to get your child admitted to a school in your own neighborhood.

Regards,

Elise Stassart

EXHIBIT H E

Elise Stassart
21951 Bear Creek Way
Los Gatos, CA 95033

March 11, 2008

Dr. Bob Chrisman
Lakeside Joint Elementary School District
19621 Black Road
Los Gatos, CA 95033

RE:    ISAIAH WINTERS STASSART

Dear Dr. Chrisman,

Following a conversation with the California Office of Education, I have been advised to formally request that Lakeside School District contract with the Los Gatos Union School District for the purposes of supporting Isaiah's 504 Plan.

As you are aware, Isaiah's grades have gone from B's and C's down to mainly F's since he was transferred out of his home district.

**Grades and Attendance**

| Exp | Last Week | | | | | This Week | | | | | Course | T1 | T2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | M | T | W | H | F | M | T | W | H | F | | | |
| 1(A-B) | | | | X | X | | | | | | Social Studies 6<br>Thompson, Kimberly | B<br>83 | B+<br>88 |
| 2(A-B) | | | X | X | | | | | | | Language Arts 6<br>Thompson, Kimberly | C+<br>78 | B+<br>87 |
| 3(A) | | | X | | | | | | | | Reading / Literature 6<br>Thompson, Kimberly | C+<br>78 | F<br>53 |
| 3(B) | | | | X | | | | | | | Phys. Ed. 6<br>Alber, Stephanie | A-<br>90 | D<br>65 |
| 4(A-B) | | | X | X | | | | | | | Exploratory 6<br>Harrington, Gillian | | F<br>56 |
| 5(A-B) | | | X | X | | | | | | | Math 6<br>Alber, Stephanie | C-<br>71 | F<br>50 |
| 6(A-B) | | | X | X | | | | | | | Science 6<br>Alber, Stephanie | C+<br>78 | F<br>55 |

I have repeatedly complained to the staff at Rolling Hills Middle School, where Lakeside has opted to outsource the education of my child, about their failure to support his 504 Plan. I have been told by different staff members at Rolling Hills that Rolling Hills Middle School does not have the resources or the training to support his plan and provide for him to be successful in school.

As I have told you, the lack of an after-school program at the school, the lack of homework support, the inability to properly work with Isaiah's emotional problems, have all contributed to Isaiah's poor school performance. Additionally, the gang presence at Rolling Hills and the school demographics have heightened Isaiah's anxiety level and fearfulness, further compromising his mental health.

Elise Stassart
21951 Bear Creek Way
Los Gatos, CA 95033

Therefore, I formally request that Lakeside Joint Elementary School District comply with Federal Law and, in support of Isaiah's 504 Plan, provide for his education in a school district which feeds into our home high school district, which is Los Gatos High School; provides appropriate after-school care on-site, provides proper homework support on-site, has demographics closer in line with our home town, and has the resources to support Isaiah's educational needs. I believe you are aware that this would be the Los Gatos Union School District.

I would like a formal response in a letter format, please. If it is a denial, I need to include the letter in an appeal to Sharon Felix-Rochon, the director at the California Office of Education.

Regards,

Elise Stassart

*EXHIBIT A*



**Lakeside Joint School District**

19621 Black Road  Los Gatos, CA  95033    Tel:  (408) 354-2372
Fax:  (408) 354-8819

March 18, 2008

Elise Stassart
21951 Bear Creek Way
Los Gatos, CA 95033

This letter is in response to your letter received at Lakeside on March 12, 2008, in which you requested a "formal response in a letter format".

According to information available to me, your 504 plan is being administered properly in Rolling Hills Middle School.

Rolling Hills Middle School is the program for sixth -- eighth grade students residing in the Lakeside Joint School District.

Sincerely,

Bob Chrisman
Superintendent/ Principal
Lakeside Joint School District
19621 Black Road
Los Gatos, CA 95033

EXHIBIT A G

Elise Stassart
21951 Bear Creek Way
Los Gatos, CA 95033
(408) 655-4710 cell

Joe Fimiani
Asst. Superintendent
Student Services
Santa Clara County Office of Education
1290 Ridder Park Drive
San Jose, CA 95131-2304

April 10, 2008

Dear Mr. Fimiani,

I am writing to you pursuant to the Uniform Complaint Procedure, Board Policy 1213, CR Title 5, 4600-4671. Please consider this a formal complaint against the Lakeside Joint School District for failing to provide an appropriate and free public education for their 6th, 7th, and 8th grade students, in violation of Education Code 48200 and 20 USC 1714.

The Lakeside Joint School District entered into a contract with the Campbell Union School District, which is financially beneficial to both school districts, but which violates both state and federal laws and ignores legislative intent.

"In 1964, major new legislation was passed in the form of a bill introduced by Assemblyman Jesse Unruh, which offered new incentives for school districts that reorganized and new disincentives for districts that chose not to reorganize. This bill; AB 145, provided a mandate for unification but was primarily a financial measure. Unified school districts were to be formed according to plans formulated by the State Board of Education.

This bill made its position clear by providing a statement of intent that the unified school district should be the ultimate form of school district organization in the state. Thus minimum standards for both numbers of students and geographical size were established for school district organization.

Elise Stassart
21951 Bear Creek Way
Los Gatos, CA 95033
(408) 655-4710 cell

In 1999, the Legislature passed Senate Concurrent Resolution 29, which called for the creation of a new Master Plan for Education. This Master Plan, finalized in 2002, contains recommendations that the State take steps to bring all school districts into unified structures and that the Legislature develop fiscal and governance incentives to promote local communities organizing their schools into unified districts."

California Department of Education<br>
District Organization Handbook

"To provide adequate services for students and pursuant to California Education Code 48200, a student is expected to be enrolled in the school that is within the district in which the parent(s) or legal guardian(s) reside(s)."

<em>California Education Code 48200</em>

"No court, department, or agency of the United States shall, pursuant to section 1713 of this title, order the implementation of a plan that would require the transportation of any student to a school other than the school closest or next closest to his place of residence which provides the appropriate grade level and type of education for such student."

<em>20 USC Sec. 1714</em>

The plan developed by Lakeside Joint School District denies students an education within their own neighborhood, fails to provide equal access and opportunity for an education, and requires the transportation of all sixth through eighth grade students to a school that is neither the closest or next closest school providing the appropriate grade level education.

It is an incredible hardship on my child and my family to have him attending a school outside of our district and outside of our neighborhood. I have filed numerous complaints with Bob Chrisman, the superintendent at Lakeside Joint School District, as well as Kathy Gibbs, the principal at Rolling Hills Middle School. I have written letters to Don Bolce and emails to you. I have submitted a petition for territory transfer that is currently under review to place my property in a school district that will allow my child to be educated according to state and federal guidelines. In the meantime, I have received no acknowledgement from the County that you are investigating the contract between Lakeside and Campbell School Districts as an unlawful act. Under your own Uniform Complaint Procedure, you are required to provide me with some response within a thirty day period.

Elise Stassart
21951 Bear Creek Way
Los Gatos, CA 95033
(408) 655-4710 cell

As this school year comes to a close, I am increasingly anxious as to what happens next year?  I can not and will not submit my child to another year at a school out of our neighborhood.  My husband & I both work, so home schooling is not an option.  Private school is out of the question because my child has special needs that a private school would not be able to accommodate.

I would like some assurance from the County Office of Education that you are investigating this issue and will be able to provide my child a public education at a middle school within our home high school district.


Regards,

Elise Stassart

SANTA CLARA COUNTY OFFICE OF EDUCATION

Joe Fimiani
*Interim Superintendent*

April 21, 2008

Elise Stassart
21951 Bear Creek Way
Los Gatos, CA 95033

Dear Ms. Stassart:

I am writing to you in response to your April 10, 2008 letter lodging a complaint against the Lakeside Joint Union School District. The Santa Clara County Office does not have any authority in this matter. The complaint should be filed with the district.

If you do not believe that the district response to your complaint is correct, you have the right to file a written appeal within 15 days to the California Department of Education (CDE). I have enclosed a copy of the complaint procedures and contact information posted on the CDE website.

Sincerely,

Joe Fimiani
Interim Superintendent

Enc

db

Board of Education
Leon F. Beauchman • T. N. Ho • Jane Howard • Grace H. Mah • Craig Mann • Gary Rummelhoff • Anna Song
1290 Ridder Park Drive • San Jose, CA 95131-2304 • 408.453.6500 • www.sccoe.org
*A Champion for Children, Schools, and Community • An Equal Opportunity Employer*

EXHIBIT A I

Elise Stassart
21951 Bear Creek Way
Los Gatos, CA 95033
(408) 655-4710 cell


Joe Fimiani
Asst. Superintendent
Student Services
Santa Clara County Office of Education
1290 Ridder Park Drive
San Jose, CA 95131-2304


May 2, 2008


Dear Mr. Fimiani,


On April 21, you wrote me a letter explaining that the Santa Clara County Office of
Education has no jurisdiction to determine where Lakeside district residents can send
their children for middle school.

Then, I read in the San Jose Mercury News about a case in Los Altos where the Santa
Clara County Superior Court ruled that the SCCOE does have jurisdiction to determine
enrollment between schools.

"The decision ended a legal battle that peaked in January when the Los Altos School District sued the Santa
Clara County Office of Education for approving Bullis enrollment preferences that benefited certain students
in the district.

The county Office of Education helped open the charter school in 2004 when LASD closed down Bullis-
Purissima Elementary School, and Bullis and LASD have been debating school policies and jurisdiction ever
since.

On April 15, Santa Clara County Superior Court Judge Kevin Murphy denied the petition from LASD, ruling
that the county office did not overstep its discretion when approving enrollment priority for students living
within the former Bullis school boundaries."

I am understandably confused.  I live in a school district that has no middle school
classes or facilities, in violation of EC 48200.  It would make sense that the SCCOE
would require LGUSD and Loma Prieta School District, our sister districts, to allow our
children to enroll in their middle schools and require Lakeside Joint School District to
pay for it, in accordance with state regulations.  However, the SCCOE has opted to ignore
their responsibilities and simply allowed Lakeside Joint School District to violate the
civil rights of district residents.

I have, in fact, contacted the California Department of Education and the U.S.
Department of Education and they are investigating the situation.  It would be helpful to
get some clarification from your office as to why district residents of Los Altos are
provided some level of protection while district residents of Los Gatos are not.

Elise Stassart

*EXHIBIT H V*

**NO RESPONSE**

Elise Stassart
21951 Bear Creek Way
Los Gatos, CA 95033

March 29, 2008

Don Bolce
Assistant Director
Center for Educational Planning
Santa Clara County Office of Education
1290 Ridder Park Drive
San Jose, CA 95131

Dear Mr. Bolce,

Thank you for your letter of March 28, 2008. I understand that you will not hear my appeal because I did not mail my letter within the thirty day time limit. I phoned your office and asked if I could file the appeal without the letter from my son's psychologist and was told that all paperwork must be filed at the same time. My son's psychologist was out of the country on vacation for three of the weeks during that thirty day period and then didn't write the letter until after he returned. The person I spoke with at SCCOE said that since the psychologist was out of town, I would be allowed to submit my paperwork past the 30 day deadline.

Given that I needed to get a letter from a third party in order to file the appeal and that person was not available, is there any way an exception can be made?

If not, then what are my options? Should I file for another inter-district transfer for my son with the LGUSD and start the clock over?

Here is my concern...

Each person between the ages of 6 and 18 years, not exempted under provisions of Section 48400, is subject to compulsory full-time education.

Each such student shall attend public full-time school for the full time designated as the length of the school day by the governing board of the school district in which the residency of either the parent or the legal guardian is located.
*California Education Code 48200*

Elise Stassart
21951 Bear Creek Way
Los Gatos, CA 95033

So, where can I send my son to school next year? All of the schools in my area are Basic Aid and will not accept an inter-district transfer. My school district of residence does not have any middle school classes and refuses to pay for his education. Because my child is special needs, he has to be educated close to home.

Regards,

Elise Stassart

*EXHIBIT A K*

## SANTA CLARA COUNTY ⚲ OFFICE OF EDUCATION

Joe Fimiani
*Interim Superintendent*

March 28, 2008

Elise Stassart
21951 Bear Creek Way
Los Gatos, CA 95033

Dear Ms. Stassart:

I am in receipt of your Interdistrict Attendance Appeal Request Form. This request was received March 27, 2008, and postmarked on March 26, 2008. Attached to the form is a letter dated February 20, 2008 from Suzanne Boxer-Gassman, Superintendent, Los Gatos Union School District. The letter states that on February 12, 2008, their Board of Trustees voted to officially deny your appeal for an Interdistrict Attendance Transfer.

According to our Board Policy 5120 – Interdistrict Attendance Appeals (copy enclosed), and Education Code 46601, an appeal to the County Board of Education must be filed within thirty (30) days of the denial by the district. Your appeal was not filed within the thirty day time limit, and therefore cannot be considered by the County Board of Education.

Sincerely,

Don Bolce
Assistant Director
Center for Educational Planning

DB:lla
Attachment

Copy:    Suzanne Boxer-Gassman, Superintendent, Los Gatos Union School District
         Joe Fimiani, Interim Superintendent, Santa Clara County Office of Education

Board of Education
Leon F. Beauchman • T. N. Ho • Jane Howard • Grace H. Mah • Craig Mann • Gary Rummelhoff • Anna Song
1290 Ridder Park Drive • San Jose, CA 95131-2304 • 408.453.6500 • www.sccoe.org
*A Champion for Children, Schools, and Community • An Equal Opportunity Employer*

s90001115

Elise Stassart
21951 Bear Creek Way    **NO RESPONSE**
Los Gatos, CA 95033

*EXHIBIT AL*

Dear Dr. Suzanne Boxer-Gassman,

In a recent article published in the San Jose Mercury News and the Los Gatos Weekly-Times (see attached), Bob Chrisman, the superintendent of Lakeside Joint School District, states that the reason Lakeside Joint School District is unable to enter into a contract with the LGUSD is because the LGUSD refused to admit Lakeside students due to over-enrollment at Fisher Middle School.

I do not believe that assessment is correct. When speaking before the LGUSD board and in conversations with board members, my understanding was that the primary issue was funding. Lakeside Joint School District appears to understand at this time that they have a legal obligation to fund the education of their middle school students. Therefore, I am asking that you formally advise me as to LGUSD's position.

If LGUSD is willing to enter into a contract with the Lakeside Joint School District with the understanding that Lakeside will fund their students, I can dismiss my law suit and withdraw my petition for territory transfer. However, if the issue is, in fact, overcrowding, then I would amend my lawsuit.

Federal law 20 USC 1714 states that a school district can only transport students for the purpose of an education to the nearest or next nearest school. In this case, Fisher Middle School is the nearest school to the Lakeside District. CT English is the next nearest, which is in the Loma Prieta District.

Best regards,

*Elise Stassart*

Elise Stassart

cc: Don Bolce, Assistant Director Educational Services, SCCOE
    Joe Fimiani, Interim Superintendent, SCCOE

Los Gatos Union School District
17010 Roberts Road
Los Gatos, CA 95032-4510
Phone: (408) 335-2000
Fax: (408) 395-6481
www.lgusd.k12.ca.us



Suzanne Boxer-Gassman, Ed.D., Superintendent

**LOS GATOS**
**SCHOOL DISTRICT**

February 20, 2008

Ari & Elise Stassart
21951 Bear Creek Way
Los Gatos, CA 95033

Dear Ari & Elise Stassart:                                    RE:  Isaiah

At its meeting on February 12, 2008, our Board of Trustees voted to officially deny your appeal for an Interdistrict Attendance Transfer, due to the number of district resident students already assigned to our classes.  Class Size Reduction and our Board and community's request that we maintain small class sizes, give us little flexibility to accept out-of-district students.

I am sorry that we were not able to honor your request.

Sincerely,

*Suzanne Boxer-Gassman*

Suzanne Boxer-Gassman, Ed.D.
Superintendent

Enclosure: Parent Notice

BOARD OF TRUSTEES      •Kathleen Bays      •Phil E. Couchee      •Chris Miller      •Karen S. Noé      •Tina Orsi-Hartigan

*EXHIBIT AN*

Los Gatos Union School District
17010 Roberts Road
Los Gatos, CA 95032-4510
Phone: (408) 335-2000
Fax: (408) 395-6481
www.lgusd.k12.ca.us



**LOS GATOS**
**SCHOOL DISTRICT**

**Suzanne Boxer-Gassman, Ed.D., Superintendent**

August 23, 2007

Ari & Elise Stassart
21951 Bear Creek Way
Los Gatos, CA  95033

Dear Ari & Elise Stassart:                                    RE:  Isaiah

We have received and reviewed your Interdistrict Transfer Request application.  Unfortunately, we  are not able to grant your request because we are experiencing a large enrollment at every grade level, including the middle school grades.

Though your address is in the Town of Los Gatos and the high school district,  it is not  within the boundaries of the Los Gatos Union School District.

I have enclosed information on the appeal process.

Sincerely,

Suzanne Boxer-Gassman, Ed.D.
Superintendent

dd

BOARD OF TRUSTEES  •  Kathleen K. Bays  •  Phil E. Couchee  •  Chris Miller  •  Karen Sanders Noé  •  Tina Orsi-Hartigan

Elise Stassart
21951 Bear Creek Way
Los Gatos, CA 95033
(408) 655-4710 cell

Attorney General's Office
California Department of Justice
Attn: Public Inquiry Unit
P.O. Box 944255
Sacramento, CA 94244-2550

April 7, 2008

My school district of residence is the Lakeside Joint School District in Los Gatos. My school district, a Basic Aid district, refuses to fund the education of 6th, 7th and 8th grades. They have entered into a contract with the Campbell Union School District, which is not the closest school district (that would be Fisher Middle School, Los Gatos Union School District) or next closest school district (that would be CT English, Loma Prieta School District). They selected this school district because it is a revenue limited or state aid school district, which means they don't have to pay for the education of the students.

It is a financial hardship for my family for my child to attend a school so far from home. Additionally, the stress of being in a school out of the district has caused my child a lot of anxiety, to the point that his psychologist does not consider the situation healthy.

I have applied for an inter-district transfer to the closest middle school, but they are Basic Aid and have denied the transfer. I have appealed to the Santa Clara County Office of Education and they have denied the appeal. I have filed a lawsuit pro se in district court, but the first hearing won't be held until July.

My questions are as follows:

1) What agency would have approved Lakeside's contract with the Campbell Union School District? Joe Fimiani, the superintendent of the Santa Clara County Board of Education, which supposedly oversees all school districts in the county, says they did not approve the contract.

2) California Education Code 48200 says my child is supposed to be educated in his district of residence but doesn't say what my options are if our district of residence refuses to provide classes.

3) 20 USC 1714 says no school district can transport a student to school unless it is the closest or next closest to his residence. The school selected by my district of residence is not the closest or the next closest school. Why can they ignore this law?

4) Since my school district refuses to educate my child in my neighborhood and the school they have contracted with is so far away it is creating a burden on my family and none of the closer schools are willing to accept my child under an interdistrict transfer, can I just keep my child home for the next two years? Both my husband & I work, so we wouldn't be able to home school him.

Thank you for any answers you can provide.

Regards,

Elise Stassart
21951 Bear Creek Way
Los Gatos, CA 95033
(408) 655-4710 cell

**EDMUND G. BROWN JR.**
*Attorney General*

*State of California*
**DEPARTMENT OF JUSTICE**

PUBLIC INQUIRY UNIT
P.O. BOX 944255
SACRAMENTO, CA 94244-2550
(916) 322-3360
TOLL FREE: (800) 952-5225
TTY: CA Relay Service
(800) 735-2922

April 25, 2008

PIU: 213853

Ms. Elise Stassart
21951 Bear Creek Way
Los Gatos, CA 95033

RE:   **Request for Legal Assistance**

Dear Ms. Stassart:

Thank you for your letter to Attorney General Edmund G. Brown Jr. regarding a school or a school district.

As you may know, the Attorney General's Office is funded by the people of the State of California to protect and defend their collective legal interests as prescribed by the California Legislature. We do appreciate hearing from concerned and responsible citizens on possible violations of law, but cannot represent individual complainants or provide legal advice, analysis or research to parties other than state officers and agencies.

If you choose to pursue this matter further, you may wish to research your questions in your local county law library or consider the advice of a private attorney who could directly represent your interests. In addition, California law is available on the Internet at http://www.leginfo.ca.gov/calaw.html.

Further, we have determined that the following agency is in a much better position to render assistance to you in this matter. If you wish to pursue the matter further, we suggest you contact:

California Department of Education
School and District Accountability Division
1430 N Street
Sacramento, CA 95814-5901
Telephone: (916) 319-0929
Internet: http://www.cde.ca.gov/re/cp/uc/index.asp

We hope that our effort to help you to identify the correct government office to address your concern will be beneficial to you.

Again, thank you for contacting the Office of Attorney General Edmund G. Brown Jr.

April 25, 2008
Page 2

Sincerely,

M. Vega
Public Inquiry Unit

For    EDMUND G. BROWN JR.
Attorney General

Elise Stassart
21951 Bear Creek Way
Los Gatos, CA 95033
(408) 655-4710 cell

May 15, 2008

Sharon Felix-Rochon
Director of Education
Dept of Education
1430 N Street Room 6019
Sacramento, CA 95817

Dear Ms. Felix-Rochon,

Thank you for your letter of May 13, 2008. I apologize if this letter is too long, but I want to state as strong a case as possible against my district of residence, Lakeside Joint School District.

Williams, et.al., vs. State of California, et al. established that some California school districts failed to provide public school students with equal access to instructional materials, safe and decent school facilities, and qualified teachers. Interestingly enough, the Campbell Union School District, the outlying school district where Lakeside Joint School District has opted to transport their students, is one of the school districts named in that lawsuit. Please note that not only does our district of residence refuse to fund the education for their students in order to allow them to attend a neighborhood school, but has opted to send their students to a school district that has been named in a past lawsuit for providing a sub-standard educational environment.

This school year, my son, Isaiah Stassart, informed us that one of his classrooms had a leaky roof which was reported to the school administration. The administration at Rolling Hills Middle School advised our child's teacher that there was no budget to repair the roof. The students were required to remain in the classroom with the leaky roof, but moved furniture and supplies so no rain water fell directly on the students. My child has complained about the classroom being moldy. As far as I know, this still has not been addressed.

It is unreasonable to expect a school district that has difficulty repairing leaky roofs to be able to provide the necessary support that Isaiah needs in order to have a successful education. We want to be allowed to enroll our child in a public school closer to our home so our child will be able to receive the support services he needs under his 504 Plan.

1

I left a voice mail for the school psychologist, Barbara Rudnicki, on August 9, 2007 to make arrangements for a 504 Plan review for Isaiah to ensure that proper controls were in place before he started attending Rolling Hills Middle School.

I then visited with Cynthia Dodd, the vice principal, on August 21 at Rolling Hills Middle School because I had not received a return phone call from Ms. Rudnicki and school was commencing the following week. Cynthia Dodd informed me that they did not perform 504 Plan reviews until at least a month after school had started because they wanted to observe the student in the classroom. She also advised me that the after school care at Rolling Hills would not be appropriate for Isaiah.

In Gerstmyer v. Howard County Public Schools et al, the Court found "a structural flaw in the decision-making process, specifically the inability to convene a meeting to develop an IEP when school was out of session, prevented any decision to be made within a reasonable time frame that [the student's] needs required."

I subsequently applied for an interdistrict transfer to Fisher Middle School, which is the closest school to our residence. This is the school that our older two sons attended. The interdistrict transfer was denied, appealed, and denied.

On September 27, 2007, I asked Isaiah's teacher to set up the 504 Plan review as a month had now passed since the start of school.

On October 9, my husband and I finally met with Rolling Hills staff for the 504 Plan review. By this time, Isaiah's behavior had deteriorated to the point that his rages had returned, he was starting to become depressed, his anxiety had increased, and we were noticing a reduction in Isaiah's ability to process information. This was later confirmed by testing done by the Children's Health Council that showed Isaiah's cognitive abilities had actually significantly decreased from the prior year when he was still at Lakeside Elementary School. We were informed that Rolling Hills had no counselor who could meet with Isaiah on a regular basis to act as a "check-in" person, as was recommended in the 504 Plan set up at Lakeside Joint School District and, later in the Children Health Center's evaluation. Campbell Union School District's psychologist had not performed a classroom observation for the 504 Plan review and it appeared to us that the Rolling Hills staff had done little or no "homework" on Isaiah.

Another meeting took place between Isaiah's teachers, Isaiah, and his parents on October 26, 2007 to try and get Isaiah back on track as his grades showed no improvement.

In early November, I posted ads on craigslist trying to find after school care for Isaiah because the stress of riding on the bus back to Lakeside was creating too many problems. He couldn't do his homework at Lakeside's clubhouse because the smaller children were too distracting and by the time we picked him up from Lakeside's after school care and got home he was too stressed to do his homework. My husband, Philippe Stassart, was finding it difficult to take time off work to transport Isaiah to the various after school

2

appointments Isaiah has because he had to drive from work to Lakeside and then back down into town for the appointments.

I was unsuccessful in finding anyone near Rolling Hills Middle School who could watch Isaiah after school. Rolling Hills is not the closest school to our home; it is not the second closest; it is not even the third closest school to our home.



By the end of November, my husband had removed the door to Isaiah's bedroom. During his nightly rages, he would slam the door and the door jamb was beginning to shred from the constant abuse.

Isaiah had been attending the Tuesday and Thursday homework club at Rolling Hills since the start of the school. However, his grades had gone down. On December 5, 2007, the teacher supervising the homework club told my husband that she could not deal with Isaiah in the room. Apparently, the homework club at Rolling Hills does not provide any real homework support. It is actually independent study where the students are expected to work quietly at their desks. Isaiah finally got upset because he wasn't getting any help with his homework and demanded the teacher help him. When she refused to help him with his homework because she was not familiar with the coursework, he threw a tantrum. I emailed Kathy Gibbs, the principal at Rolling Hills, to ask why the teacher who was supervising my child was unaware of the 504 Plan. The 504 Plan specifically states that the teacher is supposed to ask Isaiah if he needs help and provide him with the support he needs.

On December 12, 2007, I appeared before the Santa Clara County Office of Education's board meeting to protest Lakeside's transporting my child to Rolling Hills Middle School and request some relief to allow my son to attend Fisher Middle School. The board suggested I appeal the denial, which I did, and it was denied, and the Santa Clara County Office of Education refused to intervene following the denial.

On December 18, 2007, I emailed Isaiah's PE teacher to ask why his PE grade was an F. Isaiah enjoys athletics and is a reasonably good athlete. The PE teacher responded that Isaiah refused to "suit up" for PE. The teacher knew that Isaiah had RAD, but was unable to use proper behavior modification methods to get him to comply with school rules. Isaiah was not aware that not suiting up would affect his grade. By this time, his anxiety level was so high, he often had difficulty processing what his teachers were saying. Isaiah's 504 Plan specifically states that his teachers are supposed to help him with transitions. I consider having to change for PE a transition.

Just before Christmas break, I emailed Isaiah's teacher asking for another 504 Plan meeting because Isaiah's grades were so poor and it appeared that the school still was not making proper accommodations.

On January 23, 2008, one of Isaiah's teachers emailed me a complaint that Isaiah was being disruptive in class by clowning around.

On January 29, I had an email exchange once again with Isaiah's teacher due to his poor grades. At this point, he had gotten several successive F's on assignments.

In February, we re-enrolled Isaiah at KnowledgeQuest, a private tutoring center, at our own expense because the teachers at Rolling Hills consistently ignored the accommodations required to address his emotional disability.

On February 7, 2008, we, along with Isaiah, met with his teachers to discuss his poor grades. The poor grades were due in part to missing homework assignments. It was obvious to us at the meeting that the teachers did not understand the nature of Isaiah's

4

disability and were not providing the proper accommodations to help Isaiah be successful in school. These were the same teachers we had met with on October 9 at the 504 Plan Review and at the end of October. At this meeting, Isaiah assured the teachers that he would hand in all homework assignments from that point on.

On February 12, 2008, Isaiah announced to us that he would no longer do homework unless he received a reward. It was clear that that one of Isaiah's teachers had suggested to Isaiah that he should ask us to reward him for doing homework in the hope of getting him to improve his grades. However, reward systems don't work with children with Reactive Attachment Disorder. They do not understand "cause and effect" because the care-taking they have experienced has been so random. It didn't matter if he was hungry, his birth mother may or may not have fed him. In Isaiah's world, events are simply a matter of "luck". This had been explained to the staff at Rolling Hills at the October 504 Plan meeting. Isaiah was receiving conflicting messages at school than the ones the parents were providing at home. As a result, Isaiah's emotional disorder was getting worse.

Dr. Jay Muccelli, Isaiah's psychologist, provided us a referral to Nancy Sullivan, a neuro-psychologist at Children's Health Council. We could no longer deal with Isaiah's rages and the stress of coping with a school that refused to accommodate his emotional problems without some additional guidance.

On March 3, 2008, I emailed the California Department of Education to attempt to get some support for my child. At that time, Isaiah had four F's out of seven classes.

On March 18, 2008, Isaiah's teachers began working with Isaiah on Tuesdays and Thursdays after school so he wouldn't have to go to the independent study hall. At this point, the school year was already two-thirds over and Isaiah had made little or no progress in improving his study skills or his grades. Around this time, his language arts teacher, realizing we were agitating about his grades, began to give him As for assignments he had not handed in. Even if he did the assignment and the work was poor, he would receive an A.

On March 31, Isaiah underwent testing at the Children's Health Council. I am enclosing a copy of the results. Isaiah's scores went down in several areas from the prior year when he was tested at Lakeside.

In mid-April, Isaiah's science teacher caught Isaiah cheating on an assignment. In Isaiah's language arts class, the students were required to do an oral report. The teacher failed to make it clear to Isaiah that if he did not make the report, he would receive an F. Because the teacher did not use proper behavior methods to communicate to Isaiah about the assignment, he did not make the report and received an F.

On April 22, 2008, there was another 504 Plan Review meeting at Rolling Hills Middle School. Isaiah's psychologist attended. Keep in mind that I first requested this meeting back in December. I had repeatedly asked Cynthia Dodd and Kathy Gibbs when the meeting would be scheduled. From my first request to the actual meeting, more than four months had passed.

This meeting was taken up trying to explain to the team the nature of Isaiah's disability and how it impacted his ability to learn. I requested a transition to an IEP because his Children's Health Council test results showed his learning was being impacted by his disability and because his grades had been consistently poor this school year. The Rolling Hills staff denied the request. The meeting was to be continued as the teachers needed to return to class.

I signed Isaiah up for the after school care at Rolling Hills Middle School on May 1, 2008. Isaiah had been taking the bus provided by Lakeside from Rolling Hills to Lakeside's Clubhouse, their after school care program. The bus driver called me to complain that Isaiah had been throwing candy wrappers on the bus at the younger children. The Lakeside administration was aware of the problem, but refused to contact us directly about the complaint. It was clear that Isaiah was too stressed to continue riding the bus and my husband had used up all his vacation time by this time transporting Isaiah from Lakeside to his after school activities and home. Isaiah, hearing that he would be attending the after school care at Rolling Hills Middle School, trashed my home office.

Isaiah did not want to attend an after school care center that looks like this:



If you were 12, would you?
This is the only after school care available near Rolling Hills Middle School.

On May 1, I emailed Isaiah's teachers because his twelfth birthday was coming up and Isaiah wanted to bring cupcakes for his class. His teacher informed me that Isaiah needed to bring thirty-two cupcakes for the class. The class sizes at Fisher Middle School are less than twenty-five students in a class.

On May 5, 2008, Isaiah's PE teacher reported to me that Isaiah had to be reminded to suit up for PE. Isaiah's PTSD was causing him to have flashbacks to when he was at the Children's Shelter and his clothes were stolen when he changed. He did not want to wear PE clothes for fear his street clothes would be stolen while he was at PE. I reminded the teacher again on how to manage Isaiah's behavior in accordance to his 504 Plan.

On May 6, Isaiah flunked another test. Isaiah told me that the reason he flunked was prior to the test, the teacher re-arranged the furniture in the room and reassigned the seating. This was less than a month after the same teacher had been briefed on Isaiah's emotional disorder and the importance of being consistent and not making abrupt changes. I emailed the teacher to ask why she elected to move furniture right before a test and received no response.

On May 7, I mailed letters to the Lakeside School District and California Department of Education advising them that we would not be re-enrolling Isaiah in Rolling Hills Middle School. It was framed as a due process complaint under CFR 300.508. A response was expected no later than May 21, 2008 per CFR 300.508(f).

On May 8, Isaiah was assigned to write a myth about a city he "knew well" by his language arts teacher. Isaiah decided he wanted to write about Tokyo. Isaiah has never been to Tokyo. He interpreted the teacher's instruction to mean a city that his classmates would have heard of, but not visited. Isaiah informed the teacher of his choice. The teacher told me that even though he did not follow the instructions, she would be giving him an A. In fact, an A appeared on his Power School report card before he had even handed in the assignment.

On May 10, Isaiah reported to us that there are two children who attend Campbell Care who have Down's Syndrome. One of these children screams repeatedly, which sets off Isaiah's PTSD. Isaiah had asked the supervising adult if he could go outside to get away from the screaming and was told that he had to remain inside.

On May 12, I picked Isaiah up from the Rolling Hills after school care. There was a young man supervising the students. I asked him if there were any paid adult tutors who visited that afternoon. The man reported that they never have any paid adult tutors at the after school care center at Rolling Hills. I asked what Isaiah was supposed to do if he needed help with his homework. The man said he would help Isaiah if Isaiah asked for help. It states in Isaiah's 504 Plan that Isaiah will not ask for help due to his PTSD and that when he is working on class assignments, whoever is monitoring him is supposed to check with him if he needs help and offer it.

His 504 Plan specifically states that any person who is supervising Isaiah is to be made aware of the 504 Plan and Isaiah's disabilities. It was clear from the conversation that none of the staff at Campbell Care are aware of Isaiah's emotional disorder.

On May 14, almost four weeks after the first 504 Plan meeting, we met with staff at Rolling Hills Middle School to finish up the 504 Plan Review. We were advised that all homework support would be stopped after the end of May. We asked if that meant there would be no homework during the month of June and were told that there would be homework assigned, but Isaiah would not be provided any support for the last two weeks of school. We advised the 504 team that we would not be re-enrolling Isaiah at Rolling Hills for the next two years as we do not feel that he is receiving any educational benefit.

The team reviewed the current 504 interventions in place. It was determined that Rolling Hills Middle School had failed to provide more than half the accommodations that had been put in place while Isaiah was attending Lakeside Elementary School. Kathy Gibbs, the principal, said that there was no funding or support to provide most of those accommodations. These accommodations included: a peer support group to help Isaiah learn how to interact better with his peers, a check-in person to help Isaiah understand how to be more successful in school (this was also a recommendation in the report performed by CHC), and a homework buddy. The teachers needed to return to their classes, so the meeting was continued for another date.

Pursuant to CFR 300.510, Lakeside Joint School District "must convene a meeting with the parent and the relevant member or members of the IEP team who have specific knowledge of the facts identified in the due process complaint" within 15 days of receiving notice of parent's due process complaint. My first complaint letter was sent on March 11. My second complaint letter was sent on May 7. No meeting has been set. Lakeside Joint School District has completely ignored the complaints.

8

**TEST SCORE COMPARISON FROM 2007 TO 2008**

|  | LAKESIDE - 2007 | RHMS -2008 |
|---|---|---|
| VERBAL COMPREHENSION | 119 | 121 |
| PERCEPTUAL REASONING | 117 | 110 |
| WORKING MEMORY | 104 | 86 |
| PROCESSING SPEED | 97 | 97 |
| FULL SCALE IQ | 119 | 108 |
| SIMILARITIES | 13 | 14 |
| VOCABULARY | 12 | 12 |
| COMPREHENSION (INFORMATION) | 15 | 8 |
| BLOCK DESIGN | 11 | 9 |
| PICTURE CONCEPTS | 15 | 15 |
| MATRIX REASONING | 12 | 11 |
| DIGIT SPAN | 10 | 6 |
| LETTER-NUMBER | 12 | 9 |
| CODING | 11 | 11 |
| SYMBOL SEARCH | 8 | 8 |

Isaiah's IQ has dropped eleven points in one year at Rolling Hills Middle School. If he remains at Rolling Hills and his IQ continues to drop, by the time he graduates from Rolling Hills, he will have gone from a child with above-average intelligence down into the range of mentally retarded. We believe that the added stress and anxiety brought on by attending a school out of his neighborhood and without the 504 accommodations has impaired Isaiah's ability to comprehend and process information.

I have complained to Bob Chrisman, Lakeside Joint School District's superintendent, repeatedly about Rolling Hills Middle School apparent inability to support Isaiah's 504. The response from Mr. Chrisman, as written in his letter of March 18, states that "your 504 plan is being administered properly in Rolling Hills Middle School." No representative from Lakeside School District has ever attended any of the meetings between the staff at Rolling Hills Middle School and the parents.

Given that the teachers have refused or been unable to use the proper positive behavior modifications, the school has failed to schedule 504 Plan reviews properly, teachers have actually performed acts to increase Isaiah's anxiety level to his detriment, and Isaiah's grades and performance have gone down during his time at Rolling Hills, we question Mr. Chrisman's assessment. Lakeside Joint School District has ignored all complaints made and denied us due process.

We have met repeatedly with our child's teachers and the administration. We have had our child's psychologist come down to the school to explain his emotional disorder and how it affects his ability to learn and process. We have had Isaiah privately assessed at considerable expense. We have tried to work with the school assigned by our district of residence, but the teachers continue to treat Isaiah as if he does not have a disability.

Their failure to provide proper behavioral modifications has created incredible stress on us. Because Isaiah does not get the proper behavior modifications at school, when he gets home he rages. He is in a classroom with more than thirty students. It is no wonder that his PTSD is constantly triggered. His anxiety level has increased. He has no friends. He is depressed. His cognitive and processing abilities have gone down during his time at Rolling Hills.

Comparing Isaiah's IQ scores from 2007 when he was attending Lakeside Elementary to 2008 when he was attending Rolling Hills Middle School, his IQ dropped more than ten points. In *Kevin T. v. Elmhurst Comm. School District No. 205*, the U.S. District Court determined that the IEPs were not "reasonably calculated to confer [an] educational benefit upon Kevin" and that "the District failed to provide Kevin with a FAPE . . ." and cited the drop in Kevin's IQ as evidence that a free and appropriate education was not provided.

The SELPA representative, Princess Tucker Jones, who has been present at all 504 meetings this year, has stated that there is no question that our child qualifies under the IDEA.

The IDEA's procedural safeguards guarantee that parents are entitled to an "impartial due process hearing" before a local educational agency if they object to the decisions of the local school regarding the education of their disabled child. 20 USC 1415(b)(2). Not only has Lakeside Joint School District failed to provide a hearing, they have completely ignored all complaints and made no effort whatsoever to provide our child with a FAPE.

By sending our child out of district to an outlying school district that does not feed to our high school, Lakeside Joint School District has disrupted all of our child's peer relationships. Without his friends and cohorts to support and guide him, his behavior has regressed. He is so stressed and anxious most of the time that he has difficulty remembering what the teacher has said or process the information he reads.

If he is not placed at Fisher Middle School, which feeds into our local high school, when he goes on to high school, once again his peer relationships will be lost, and he will slide backwards.

Isaiah's 504 Plan must be "reasonably calculated to enable the child to receive educational benefits." Rowley, 458 US at 206. As Isaiah's parents, we have put in a great deal of effort and time to help formulate the interventions and support needed to help Isaiah be successful in school. Rolling Hills Middle School, finding the requirements too onerous (providing a homework buddy, a structured consistent environment, check with Isaiah to see if he needs help, etc.), opted to ignore the 504 Plan. In one case, the teacher opted to simply give him A's in the hope that we would be placated. Another teacher did give him a failing grade, but contributed to the failing grade by adding to his anxiety level.

We do not feel the accommodations we ask for are too much. Most of them just require a little more time and forethought, but no extra funding. We aren't asking for Lakeside to pay for a private school. We are asking that Lakeside fund our child's education so he can attend the public school closest to our residence, which will be the least disruptive to his emotional well-being.

If he can not attend Fisher Middle School next year, we will have no choice but to keep him out of school as we have no other options. All the school districts around us are Basic Aid and we will not go through another two years of Rolling Hills Middle School to our child's detriment. Because of our child's emotional disabilities, his psychologist has advised us that a private school would not be appropriate.

Sincerely,

Elise Stassart

Elise Stassart

11

JACK O'CONNELL
State Superintendent of
Public Instruction
PHONE: (916) 319-0800

CALIFORNIA
DEPARTMENT OF
EDUCATION

May 13, 2008

1430 N STREET
SACRAMENTO, CA
95814-5901

Elise Stassart
21951 Bear Creek Way
Los Gatos, CA 95033

Dear Ms. Stassart:

We have completed our review of your complaint against the Lakeside Joint School District. Before we can continue further with this issue, our office needs to obtain additional information.

While the Uniform Complaint Procedures contains a liberal rule of standing, it still requires that sufficient information be presented to this office to deal with the concrete issues of appeal. We need a letter from you clearly identifying the issues in the District's report of findings with which you disagree. As to each contested issue, you must specify the reasons the conclusion is incorrect and identify evidence that you believe supports your appeal. Merely expressing dissatisfaction with the district's report of findings will not be sufficient to warrant a review by our office. Once we receive this information from you we can continue with our review. Please provide us with this information by close of business on May 23, 2008. Should we not receive a response from you by this date, your appeal will be closed.

In closing, we appreciate and thank you for your patience and cooperation during our review. My staff and I are committed to working with parents and school administrators to ensure that issues are handled appropriately at the local level. Should you have any questions regarding this decision, you may contact my staff at (916) 445-9174

Sincerely,

Sharon Felix-Rochon, Director
Office of Equal Opportunity

SFR: aa

EXHIBIT A3

Elise Stassart
21951 Bear Creek Way          **NO RESPONSE**
Los Gatos, CA 95033
(408) 655-4710 cell

March 20, 2008

Sharon Felix-Rochon
Director of Education
Dept of Education
1430 N Street Room 6019
Sacramento, CA 95817

Dear Ms. Felix-Rochon,

I was advised by a member of your staff to write a letter to my school district demanding
that they provide an appropriate education for my child, Isaiah. I wrote the letter and
they declined. I am enclosing my letter of demand as well as their letter of response.
Additionally, I am enclosing a copy of the complaint I filed this week in federal district
court.

The school district where Isaiah is currently enrolled would like to do an assessment on
my child to determine the level of his emotional disorder and how it interferes with his
ability to learn. I have already arranged for an independent assessment with the
Children's Health Council in Palo Alto at my own expense. I do not object to the school
district performing their own evaluation. I DO object when the evaluation is to be done
by someone who is not a licensed psychologist and is not fully trained in this type of
testing.

This underscores the issues which I am dealing with. My district of residence refuses to
pay for the education of my child. The district where I am being forced to send him does
not have the personnel with the proper training to deal with him.

My child's behavior was improving before he was transferred out of district. Now, every
week we see further and further deterioration. We fear that if this continues, he may need
to go to a residential treatment center.

Please consider this my request for a formal appeal to the Department of Education to
provide a free and appropriate placement for my child within his home high school
district.

Sincerely,

*Elise Stassart*

Elise Stassart

Elise Stassart
21951 Bear Creek Way
Los Gatos, CA 95033
(408) 655-4710 cell

U.S. Department of Education
50 Beale Street, Suite 7200
San Francisco, CA 94105

April 8, 2008

My school district of residence is the Lakeside Joint School District in Los Gatos. My school district, a Basic Aid district, refuses to fund the education of 6th, 7th and 8th grades. They have entered into a contract with the Campbell Union School District, which is not the closest school district (that would be Fisher Middle School, Los Gatos Union School District) or next closest school district (that would be CT English, Loma Prieta School District). They selected this school district because it is a revenue limited or state aid school district, which means they don't have to pay for the education of the students.

My child, Isaiah, suffers from PTSD due to early childhood abuse. The stress of being in a school out of the district has caused my child a lot of anxiety, to the point that his psychologist does not consider the situation healthy. Lakeside provides a bus service from Lakeside School to Rolling Hills Middle School, which requires a 30 minute bus-ride before or after school. My child has lost his peer support, is attending a school that refuses to support his 504 Plan, and his grades have gone from B's and C's down to D's and F's.

I have applied for an inter-district transfer to the closest middle school, but they are Basic Aid and have denied the transfer. They refuse to admit any student without additional funding. They will only accept my child if Lakeside agrees to pay for the education. I have appealed to the Santa Clara County Office of Education and they have denied the appeal.

My questions are as follows:

1) What agency would have approved Lakeside's contract with the Campbell Union School District? Joe Fimiani, the superintendent of the Santa Clara County Board of Education, which supposedly oversees all school districts in the county, says they did not approve the contract. Larry Shirey, of the California Department of Education, says he did not approve the contract.

2) California Education Code 48200 says my child is supposed to be educated in his district of residence but doesn't say what my options are if our district of residence refuses to provide classes.

3) 20 USC 1714 says no school district can transport a student to a school unless it is the closest or next closest to his residence. The school selected by my district of residence is not the closest or the next closest school. Why can they ignore this law?

4) Since my school district refuses to educate my child in my neighborhood and the school they have contracted with is so far away it is creating a burden on my family and none of the closer schools are willing to accept my child under an interdistrict transfer, is my child being denied an equal opportunity for an education?

Thank you for any answers you can provide.

Regards,

*Elise Stassart*

Elise Stassart

*EXHIBIT AV*



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS, REGION IX

**APR 2 3 2008**

Ms Elise Moss
21951 Bear Creek Way
Los Gatos, California 95033

(In reply, please refer to case no. 09-08-1226.)

Dear Ms. Moss:

On April 8, 2008, the U.S. Department of Education, Office for Civil Rights (OCR), received your complaint against Lakeside Joint Unified School District. You allege that the District discriminated against your son (Student) based on disability. Specifically, you state that the District placed the Student in another District for educational services under his 504 Plan.

For the reasons explained below, OCR is not accepting your complaint for resolution.

OCR enforces Section 504 of the Rehabilitation Act of 1973 and its implementing regulation. Section 504 prohibits discrimination on the basis of disability in programs and activities operated by recipients of Federal financial assistance. OCR also has jurisdiction as a designated agency under Title II of the Americans with Disabilities Act of 1990 and its implementing regulation over complaints alleging discrimination on the basis of disability that are filed against certain public entities. The District receives Department funds, is a public education system, and is subject to the requirements of Section 504 and Title II.

Your dispute with the District is a disagreement over the placement of the Student. Except in extraordinary circumstances not applicable in your case, OCR does not make determinations about the appropriateness of a particular educational decision for a specific child if proper evaluation, placement, and due process procedures have been followed. This means that OCR does not make determinations about the results of an evaluation or the appropriateness of the placement or services for individual students, as long as the District complies with the process requirements of the Section 504 regulations. The information provided in your complaint does not describe problems with the procedures the District used, but rather the appropriateness of the placement. Your complaint references Federal law concerning transportation services. However, this statute and its contents do not relate to a District's obligations under Section 504 or Title II.

Therefore OCR is not accepting your complaint for resolution.

Our mission is to ensure equal access to education and to promote educational excellence throughout the nation.

This concludes OCR's consideration of your complaint. We are closing the complaint as of the date of this letter.

Federal regulations prohibit the District from retaliating against you or from intimidating, threatening, coercing, or harassing you or anyone else because you filed a complaint with OCR or because you or anyone else take part in the complaint resolution process. Contact OCR if you believe such actions occur. Please note that OCR has not informed the District that you filed this complaint.

Under the Freedom of Information Act, it may be necessary to release this document and related records upon request. In the event that OCR receives such a request, it will seek to protect, to the extent provided by law, personal information that, if released, could reasonably be expected to constitute an unwarranted invasion of privacy.

If you have any questions about this letter, please call our office at 415-486-5555.

Sincerely,

Charles R. Love
Program Manager

*EXHIBIT AV*

Elise Moss Stassart
21951 Bear Creek Way
Los Gatos, CA 95033

Charles Love
US Department of Education
50 Beale Street
Suite 7200
San Francisco, CA 94105

RE: 09-09-1226

April 25, 2008

Dear Mr. Love,

I am in receipt of your letter of April 23, and it appears that you are confused regarding the basis for my complaint.

I purchased my property in 1989. At the time, I bought my property it was located in Lakeside School District and Los Gatos-Saratoga High School District. Lakeside School District has a charter to educate K-8. However, because it is a rural school with historically low enrollment, it did not provide classes for 6th to 8th grade. Instead, students attended Fisher Middle School, which is part of Los Gatos Union School District, and also is a feeder school to Los Gatos High School.

In 2001, Lakeside became a Basic Aid district. In 2003, Los Gatos Union School District became a Basic Aid district. LGUSD would no longer accept Lakeside students without reimbursement. Lakeside looked for another school that would accept their middle school students and has contracted with the Campbell Union School District, which is a non-adjacent school district.

Lakeside receives funding from property taxes as well as Title I funding, but the money is not used for the purposes of educating their middle school students.

In 2005, my husband & I were appointed legal guardians of a little boy who is a relative. He had been abused and neglected by his mother and now suffers from PTSD and Reactive Attachment Disorder, both DSM-IV mental illnesses. Because these problems interfere with his ability to concentrate and retain information, he is under a 504 Plan.

Because Lakeside refuses to pay for the education of their middle school students, my child is driven past two perfectly acceptable middle schools to get to a school that is located in a revenue-limited school district.

The two middle schools that we pass would be willing to accept my child, as well as all the other Lakeside middle school students, if Lakeside would be willing to pay for them.

Elise Moss Stassart
21951 Bear Creek Way
Los Gatos, CA 95033

In this instance, my child is not being treated any differently from any other Lakeside middle school student. However, since he is on a 504 Plan and has been identified as a student with special needs, some accommodations should be made to allow him to attend a school closer to home.

I have attached some maps to help clarify the situation as well as documents regarding Lakeside's funding, enrollment figures for the schools involved, and documents regarding my child's disorders.

I have applied for an inter-district transfer, been denied, appealed the denial, which was denied, and appealed to the Santa Clara County Office of Education, which refused to hear the appeal.

It may be that you do not have jurisdiction for this type of case and that is fine, if that is the case. Prior to my child being placed at Rolling Hills, Lakeside assured us that his placement at Rolling Hills Middle School would not have an adverse affect. However, in the past six months, his behavior and mental condition have worsened and his grades have gone down. Lakeside has refused to provide any accommodations or support that would make his placement at a school far from his home more palatable.

Thank you for your interest in this matter,

*Elise Moss Stassart*

Elise Moss Stassart

*EXHIBIT AW*

Elise Moss Stassart
21951 Bear Creek Way
Los Gatos, CA 95033


Charles Love
US Department of Education
50 Beale Street
Suite 7200
San Francisco, CA 94105

RE: 09-09-1226

May 7, 2008

Dear Mr. Love,

As I wrote in my previous letters, my child, Isaiah, is under a 504 Plan. I am extremely frustrated with Rolling Hills Middle School, the school where he is currently attending.

My child was under a 504 Plan last year at Lakeside Elementary School, which is located in Lakeside Joint School District, our district of residence. We saw great improvement in his grades, his social interactions, and his ability to cope while he was at Lakeside.

As I wrote to you previously, Lakeside Joint School District is supposed to provide educational services for K-8, but opts to transport their 6-8 students to an outlying school in Campbell Union School District. The Campbell Union School District was a defendant school district in Williams v. State of California. By transporting students to Rolling Hills Middle School, Lakeside can pocket the money they receive for their 6th-8th grade students.

Last August before school started, I asked the administration at Rolling Hills Middle School to meet with me before school started so I could review my child's 504 plan with them so accommodations could be put in place before the start of school. They refused to meet with me and said their policy was to wait until school had started so they could evaluate the child on their own. With much persistence on my part, we finally had a 504 meeting in October. By then, my child's grades were already starting to go down and his stress and anxiety levels were increasing.

As the school year progressed, the teachers and administrators continued to ignore my child's issues. In December, prior to winter break, I asked for another 504 Plan Review as my child's emotional distress was increasing. The administration stalled and we finally had a review meeting in late April. We met for an hour in the middle of the day and I even had my child's psychologist attend the meeting to help explain the seriousness of my child's problems. The teachers needed to go back to class, so the meeting was set to be continued at a later date. Three weeks later and no follow up meeting date has been set.

Elise Moss Stassart
21951 Bear Creek Way
Los Gatos, CA 95033

Yesterday my child had a test in one of his classes. Right before the test, the teacher rearranged all the furniture in the classroom and changed the seating assignments. You don't do this to a child with PTSD and RAD. Of course, he flunked the test. In fact, he has consistently flunked almost every test he has taken this year in every class. The emotional distress my child feels because he is continuously sabotaged by his teachers is immeasurable.

He has made no friends at this school because the school is located so far from our neighborhood. We have him in Little League, but Little League teams are based on residence, so his team mates are all attending Los Gatos schools. All of his extra-curricular activities are in Los Gatos, but he is being forced to attend a school outside of our neighborhood.

There are less than five weeks left in the school year. I am in despair that we will never have the second 504 meeting to wrap up his plan for the year. There is no way I can send him back to Rolling Hills Middle School for two more years. Two more years of no friends, no support from the teachers, and flunking tests...how can that be acceptable?

All the school districts where we live are Basic Aid, which means they won't accept my child on an interdistrict transfer. The Santa Clara County Office of Education refuses to support my child as they say it is out of their jurisdiction. Your most recent letter says this is out of your jurisdiction. I have to wonder whose jurisdiction is it? My district of residence refuses to pay for my child's education and refuses to provide classrooms or teachers. The outlying school where my district of residence requires him to attend refuses to support his 504 Plan.

If I can't get him enrolled in Fisher Middle School, the closest middle school to our residence, next year, we are seriously considering just keeping him home for the next two years. My understanding is that we may be able to get our district of residence to provide a private tutor for him for a few hours a week, but I am sure that we will need to get a court order to force them to do that. My preference would be for him to go to a public school close to home.

Thank you for your interest in this matter,

Elise Moss Stassart

Cc: Joe Fimiani, SCCOE; Kathleen Seabourne, CDE

*EXHIBIT AX*

Elise Stassart
21951 Bear Creek Way
Los Gatos, CA 95033

May 8, 2008

Senator Joe Simitian
160 Town and Country Village
Palo Alto, CA 94301

Dear Senator Simitian,

I am writing to you because I know you serve on the education committee in the California Senate.

I live in the Lakeside Joint School District, which is in your district.

Lakeside Joint School District consists of a single elementary school. This school district has a charter to service kindergarten through eighth grades. However, for the past twenty years, the school district has only provided instruction and educational services for kindergarten through fifth grades. Up until five years ago, sixth through eighth grade Lakeside students were provided access to Fisher Middle School, which is in the Los Gatos Union School District (LGUSD) and is the closest middle school to plaintiffs' residence. The LGUSD allowed these students to attend at no additional cost to Lakeside because they were a revenue-limited or state aid district. This allowed LGUSD to collect revenue from the state based on student attendance. In 2003, LGUSD became a Basic Aid district, which meant their revenue was no longer tied to student attendance. For Basic Aid school districts, the state gives the school 100% of its share of the property tax collected in the district. As a result, LGUSD would no longer accept Lakeside students unless the Lakeside District paid for their education.

LGUSD is still willing to accept Lakeside students, but not without funding from the Lakeside Joint School District.

Lakeside Joint School District decided to seek another solution. In 2005, the district contracted with the Campbell Union School District for educational services for their 6th through 8th grade students. Campbell Union School District is a revenue-limited or state aid district. This meant that Lakeside Joint School District, which is a Basic Aid district, could continue to collect 100% of its share of the property tax collected in the district without having to contribute towards the education of the 6th through 8th grade students in their district.

Elise Stassart
21951 Bear Creek Way
Los Gatos, CA 95033

There are three school districts that feed into the Los Gatos-Saratoga Union High School District. These districts are Lakeside, Loma Prieta and LGUSD. The Campbell Union School District does not feed into the home high school district of the plaintiffs. The Campbell Union School District's boundaries are not adjacent to the plaintiff's district of residence. The middle school selected by the Lakeside Joint School District is neither the closest nor the next closest school to the plaintiffs' residence. The LGUSD and the Loma Prieta School districts' boundaries are both adjacent to the plaintiff's district of residence. These school districts are the closest and next closest districts, respectively.

I have complained to the Santa Clara County Office of Education and the California Department of Education. They both tell me that they lack jurisdiction to require Lakeside to contract with a Basic Aid school district in our neighborhood. California Education Code does not require a local school district to get approval from the local county superintendent or the state before entering into an interdistrict agreement. Larry Shirey, at the California Department of Education, informs me that while there are other school districts with interdistrict transfers for their students in place, either to relieve overcrowding, due to low enrollment, or because of failure to meet performance standards, Lakeside is the only school district in the entire state sending students to a non-adjacent school district in order to avoid paying for their education.

Lakeside has discovered a loophole in the current law where they can continue collecting money for students they are not educating, effectively having taxpayers pay twice for the same students.

Because my child is under a 504 Plan, the stress of attending a school outside of the neighborhood has resulted in extremely poor performance this year. I have initiated a lawsuit to try and get him into the closest middle school to my residence. Because all the school districts in my area are Basic Aid they won't accept any interdistrict transfers.

I understand why the state legislature set up the current funding system to eliminate disparities between wealthy districts and poorer ones, but if Basic Aid school districts can ship off their students to non-adjacent school districts to avoid paying for their education, legislative intent is completely ignored.

I am asking that you consider legislation to close the loophole, either by requiring that any interdistrict agreements can only happen between adjoining districts and/or requiring the approval of the local County superintendent or some other system of oversight to ensure that the system is not abused.

Thank you for any assistance you can offer,

Elise Stassart

Elise Stassart
21951 Bear Creek Way
Los Gatos, CA 95033

May 7, 2008

Via US Mail

Mark S. Williams
Fagen Friedman & Fulfrost LLP
70 Washington Street, Suite 205
Oakland, CA 94607

Re:    School Year 2007-2008

Dear Mr. Williams,

Please advise your client, Lakeside Joint School District, that we will not be re-enrolling
our child, Isaiah Stassart, in Rolling Hills Middle School for the 2007-2008 school year.

*"To provide adequate services for students and pursuant to California Education Code
48200, a student is expected to be enrolled in the school that is within the district in
which the parent(s) or legal guardian(s) reside(s)." Santa Clara County Office of
Education.*

Rolling Hills Middle School is not located in our district of residence. Additionally,
Williams, et.al., vs. State of California, et al. named the Campbell Union School District
as a defendant school district, indicating that they do not provide an adequate educational
environment for their students. We have found that to be the case.

Last August before school started, I asked the administration at Rolling Hills Middle
School to meet with me before school started so I could review my child's 504 plan with
them so accommodations could be put in place before the start of school. They refused to
meet with me and said their policy was to wait until school had started so they could
evaluate the child on their own. With much persistence on my part, we finally had a 504
meeting in October. By then, my child's grades were already starting to go down and his
stress and anxiety levels were increasing.

The Court found "a structural flaw in the decision-making process, specifically the inability to
convene a meeting to develop an IEP when school was out of session, prevented any decision to
be made within a reasonable time frame that [the student's] needs required."
*GERSTMYER v. HOWARD COUNTY PUBLIC SCHOOLS et al, 850 F.Supp. 361, 20 IDELR
1327, 2 ECLPR 4*

Elise Stassart
21951 Bear Creek Way
Los Gatos, CA 95033

This winter one of my child's classrooms had a leaky roof. As a result, furniture and classroom equipment had to be moved out of the way. The students remained in the room. The room now suffers from mold. This makes it difficult for my child to concentrate in class. This is one of the complaints against the district in the Williams case.

As the school year has progressed, the teachers and administrators continued to ignore my child's issues. In December, prior to winter break, I asked for another 504 Plan Review as my child's emotional distress was increasing. The administration stalled and we finally had a review meeting in late April. We met for an hour in the middle of the day and I even had my child's psychologist attend the meeting to help explain the seriousness of my child's problems. The teachers needed to go back to class, so the meeting was set to be continued at a later date. Three weeks later and no follow up meeting date has been set.

Yesterday my child had a test in one of his classes. Right before the test, the teacher rearranged all the furniture in the classroom and changed the seating assignments. You don't do this to a child with PTSD and RAD. Of course, he flunked the test. In fact, he has consistently flunked almost every test he has taken this year in every class. The emotional distress my child feels because he is continuously sabotaged by his teachers is immeasurable.

He has made no friends at this school because the school is located so far from our neighborhood. We have him in Little League, but Little League teams are based on residence, so his team mates are all attending Los Gatos schools. All of his extra-curricular activities are in Los Gatos, but he is being forced to attend a school outside of our neighborhood.

There are less than five weeks left in the school year. I am in despair that we will ever have the second 504 meeting to wrap up his plan for the year. There is no way I can send him back to Rolling Hills Middle School for two more years. Two more years of no friends, no support from the teachers, and flunking tests...how can that be acceptable?

All the school districts where we live are Basic Aid, which means they won't accept my child on an interdistrict transfer.

If I can't get him enrolled in Fisher Middle School, the closest middle school to our residence, next year, we are seriously considering just keeping him home for the next two years. My understanding is that we may be able to get our district of residence to provide a private tutor for him for a few hours a week, but I am sure that we will need to get a court order to force them to do that. My preference would be for him to go to a public school close to home.

Elise Stassart
21951 Bear Creek Way
Los Gatos, CA 95033

Unfortunately, since Lakeside Joint School District refuses to fund our child's education, we have no public school available in our neighborhood that he can attend.

A child is deprived of a free appropriate public education under either of two sets of circumstances: first, if the school system has violated the IDEA's procedural requirements to such an extent that the violations are serious and detrimentally impact upon the child's right to a free public education or, second, if the IEP that is developed by the school is not reasonably calculated to enable the child to receive educational benefits. See. e.g., *Board of Education v. Rowley*, 458 U.S. 176, 206-07 (1982); *Tice v. Botetourt County School Board*, 908 F.2d 1200 (4th Cir. 1990); *Hudson v. Wilson*, 828 F.2d 1059 (4th Cir. 1987).

Please consider this a formal complaint under 34 CFR 300.151-300.152. My understanding is that we have to provide our district of residence notice that we will not be placing him in public school next year. If he can't attend Fisher Middle School, then we will be filing for a private tutor.

Warmest regards,

*Elise Stassart*

Elise Stassart


cc: Kathleen Seabourne
California Department of Education
1430 N Street
Sacramento, CA 94814-5901