

1  ELISE STASSART, PRO SE
2  21951 BEAR CREEK WAY
3  LOS GATOS, CA 95033

FILED

2008 MAY 29 ⌐ 11:48

4
5  IN THE UNITED STATES DISTRICT COURT
6  FOR THE NORTHERN DISTRICT OF CA
7

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST OF CA, S.J.

ISAIAH W. S. , A MINOR CHILD, BY        ) Case No.: C08 01511 (JF)
PHILIPPE & ELISE STASSART, LEGAL        ) PLAINTIFF'S REPLY TO DEFENDANT'S
GUARDIANS                               ) REPLY TO OPPOSITION TO MOTION TO
ET AL                                   ) DISMISS
21951 BEAR CREEK WAY                     ) Date:  August 15, 2008
LOS GATOS, CA 95033                      ) Time:  9:00 am
PLANTIFFS                                ) Place: 3, 5th Floor
Vs.                                      ) District Judge Jeremy Fogel
LAKESIDE JOINT SCHOOL DISTRICT          )
19621 BLACK ROAD                        )
LOS GATOS, CA 95033                     )
DEFENDANT

8

9   Plaintiff Philippe and Elise Stassart, along with their minor child, submit this REPLY in

10  response to Defendant Lakeside Joint School District's REPLY TO OPPOSITION TO

11  MOTION TO DISMISS.

12

13  I.  STUDENT HAS STANDING UNDER IDEA AND SECTION 504

14  The Defendant has made allegations that the IDEA is not applicable in this case.

15

16  The IDEA, as well as Section 504, is applicable in this case.

17

PLAINTIFF'S REPLY TO DEFENDANT'S REPLY TO OPPOSITION TO MOTION

TO DISMISS

1  Isaiah qualifies as a child with a disability under 34 CFR 300.8, because he suffers from a

2  "serious emotional disturbance" which interferes with his ability to receive educational

3  benefit. This has been documented both at Lakeside Elementary and at Rolling Hills

4  Middle Schools. It is further documented in the assessment performed by the Children's

5  Health Council (EXHIBIT V). Princess Tucker Jones, the SELPA representative

6  assigned to plaintiff's school districts, states that Isaiah qualifies under the IDEA. Judy

7  Meyer, Lakeside's district psychologist, stated that Isaiah qualifies under the IDEA at the

8  May 17, 2007 and May 23, 2007 meetings held at Lakeside Elementary School.

9

10  The positive behavior interventions Isaiah requires in order to access an education qualify

11  as "special education" under 34 CFR 300.39. Without these interventions in place, Isaiah

12  is unable to access and receive an adequate education. This has been documented at

13  every 504 Plan Review meeting held at Lakeside and at Rolling Hills Middle Schools.

14

15  "Each state must ensure that FAPE is available to any individual child with a disability

16  who needs special education and related services, even though the child has not failed or

17  been retained in a course or grade, and is advancing from grade to grade." *34 CFR*

18  *300.101.*

19

PLAINTIFF'S REPLY TO DEFENDANT'S REPLY TO OPPOSITION TO MOTION
TO DISMISS

1  "In determining the educational placement of a child with a disability…the child's

2  placement…is as close as possible to the child's home." *34 CFR 300.116*

3

4  "(a) *General.* A recipient that operates a public elementary or secondary education

5  program or activity shall provide a free appropriate public education to each qualified

6  handicapped person who is in the recipient's jurisdiction, regardless of the nature or

7  severity of the person's handicap.

8  (b) *Appropriate education.* (1) For the purpose of this subpart, the provision of an

9  appropriate education is the provision of regular or special education and related aids and

10  services that (i) are designed to meet individual educational needs of handicapped

11  persons as adequately as the needs of nonhandicapped persons are met and (ii) are based

12  upon adherence to procedures that satisfy the requirements of 104.34, 104.35, and

13  104.36" *34 CFR 104.33*

14  Defendant makes the common error that because Isaiah is under a 504 Plan and not an

15  IEP, he does not qualify under the IDEA.  This is not correct.  Because Isaiah would not

16  be successful in school without appropriate interventions, as has been demonstrated this

17  year at Rolling Hills, he most definitely qualifies under the IDEA.

18

---

PLAINTIFF'S REPLY TO DEFENDANT'S REPLY TO OPPOSITION TO MOTION
TO DISMISS

1    To qualify under the IDEA, a child does not have to be placed in a special resource room

2    or be segregated from the general school population.  In fact, the IDEA discourages this,

3    promoting the "least restrictive environment" for the disabled student.

4

5    Section 504 ensures that a child with a disability has equal access to an education.  The

6    child may receive accommodations and modifications.  A child under a 504 Plan does not

7    require an "individualized educational program (IEP)".   Section 504 is a **civil rights law**,

8    and IDEA is an **educational benefit law**.  Section 504 is designed to *level the playing*

9    *field* for individuals with disabilities.  Its purpose is to ensure that individuals with

10   disabilities have the same access to education that individuals without disabilities have. It

11   does this by eliminating barriers that exclude individuals with disabilities from

12   participating in protected activities, including a free and appropriate public education.  As

13   an educational benefit law, IDEA offers additional services and protections for those with

14   disabilities that are not offered to those without disabilities.

15   These laws are also distinguished by their different eligibility requirements and

16   the benefits they provide.  The definition of a disability is much broader under Section

17   504 than it is under IDEA.  All IDEA students are covered by Section 504, where as not

18   all Section 504 students are protected under IDEA.   An IEP, which is provided to

19   students covered by IDEA, must be tailored to the child's unique needs and must result in

PLAINTIFF'S REPLY TO DEFENDANT'S REPLY TO OPPOSITION TO MOTION
TO DISMISS

-4

1  educational benefit.  However, a Section 504 Plan provides accommodations based on the

2  child's disability and resulting weaknesses, but does not require academic improvement.

3  Up until this year, Isaiah has been able to learn in a regular classroom as long as his

4  teacher uses proper behavior modifications.  He was performing at grade level and

5  therefore did not require academic improvement.  However, because his emotional

6  disturbance has worsened as a result of losing his peer support group, attending a school

7  outside of his neighborhood, and attending a school that was unable to provide the

8  required supports, he now requires additional support and an IEP.

9  If this Court grants Plaintiff's motion for a preliminary injunction and allows Isaiah to

10  enroll in the school closest to his residence, pursuant to *34 CFR 300.116*, then plaintiffs

11  hope to "wean" Isaiah off an IEP by the time he enters high school, but keep any

12  necessary behavior interventions in place.  The goal under the IDEA is to allow the child

13  to access their education with the least amount of restrictions and with minimal financial

14  burdens to the school district.

15

16  In order for Isaiah to receive educational benefit, he requires homework support.

17  Plaintiffs had been told at the May 23, 2007 meeting while Isaiah was attending Lakeside

18  Elementary School that an IEP would not be necessary at Rolling Hills Middle School,

19  because Rolling Hills provides a Homework Club twice a week on Tuesdays and

PLAINTIFF'S REPLY TO DEFENDANT'S REPLY TO OPPOSITION TO MOTION
TO DISMISS

1    Thursdays. As documented in ADDENDUM TO PLAINTIFF'S MEMORANDUM IN

2    OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, the Homework Club was

3    insufficient because it was actually "independent study" and did not provide one to one

4    support for Isaiah. Isaiah's teachers were given permission by Rolling Hills

5    administration to provide homework support after school twice a week beginning in

6    March 2008. That additional homework support constitutes an IEP.

7    Defendant then argues that if Isaiah is eligible under the IDEA, plaintiffs should have

8    notified Lakeside Joint School District.

9    Plaintiffs herewith submit the letter they served Lakeside Joint Elementary School on

10    May 17, 2007 (EXHIBIT BA). In the letter, plaintiffs advise the district that their child

11    qualifies under IDEA. The 504 Plan was signed off at a subsequent meeting on May 23,

12    2007. At this meeting, which Bob Chrisman attended, all attendees agreed that Isaiah

13    qualifies under IDEA. However, because his grades were appropriate and he was able to

14    access educational benefit, the IEP team put a 504 Plan in place instead of an IEP.

15    Plaintiffs were advised by the IEP team that Isaiah could be transitioned to an IEP at any

16    time in the future should it be necessary.

17    Lakeside Joint School District advised plaintiffs at the IEP Review meeting that took

18    place on May 23, 2007 at Lakeside Elementary School that their child did not require an

19    IEP in order to be successful at Rolling Hills Middle School. Plaintiffs expressed

PLAINTIFF'S REPLY TO DEFENDANT'S REPLY TO OPPOSITION TO MOTION
TO DISMISS

1   concern at that time whether Rolling Hills Middle School would be able to support

2   Isaiah's 504 Plan, as written.  No representative from Rolling Hills Middle School was

3   present at this meeting.  Plaintiffs were assured that a meeting would take place in August

4   2007 prior to the start of school at Rolling Hills Middle School to ensure that proper

5   interventions were in place.   In Plaintiffs' addendum, Plaintiff reports that this meeting

6   did not take place.  Bob Chrisman, Lakeside's superintendent, and Randy Cohen,

7   Lakeside's special education instructor, were both notified that this meeting did not take

8   place on August 21, 2007 and were advised on that date that the plaintiffs would attempt

9   to enroll their child at Fisher Middle School.

10

11   At the May 23, 2007 meeting, Lakeside staff was aware that Isaiah suffered from a severe

12   emotional disorder that affected his ability to access an education.   (EXHIBIT BB)

13   Since Lakeside staff, including Bob Chrisman, the superintendent at Lakeside Joint

14   School District, was present during the review of the psychological testing performed by

15   Lakeside, plaintiffs find Defendant's claim that they do not believe IDEA applies less

16   than credible.   Lakeside Joint School District is more than aware that Isaiah requires

17   special education in order to access any educational benefit.  Plaintiffs are operating

18   under the reasonable belief that Lakeside Joint School District was and is fully cognizant

19   of the fact that Isaiah qualifies under the IDEA.

20

PLAINTIFF'S REPLY TO DEFENDANT'S REPLY TO OPPOSITION TO MOTION
TO DISMISS

1  Lakeside Joint School District was notified in a letter dated March 11, 2008 (Exhibit AE)

2  that specifically cites the IDEA.  Lakeside Joint School District purposely ignored the

3  letter, denying plaintiff's due process, and refused to act.  No Lakeside representative has

4  attended any of the 504 meetings or any parent-teacher conference at Rolling Hills

5  Middle School involving plaintiffs.  Plaintiffs still reside in the Lakeside Joint School

6  district, but Lakeside is no longer funding or ensuring their child's education.  Lakeside

7  was again notified in a letter dated on May 7, 2008 (EXHIBIT AY).

8  Plaintiff provides, herewith, the pertinent sections of the IDEA:

9  Section 300.8:

10  (a) General.

11  (1) Child with a disability means a child evaluated in accordance with Sec. 300.304

12  through 300.311 as having mental retardation, a hearing impairment (including deafness),

13  a speech or language impairment, a visual impairment (including blindness), a **serious**

14  **emotional disturbance** (referred to in this part as "emotional disturbance"), an

15  orthopedic impairment, autism, traumatic brain injury, an other health impairment, a

16  specific learning disability, deaf-blindness, or multiple disabilities, and who, by reason

17  thereof, needs special education and related services.

18  (2)

PLAINTIFF'S REPLY TO DEFENDANT'S REPLY TO OPPOSITION TO MOTION
TO DISMISS

1  (i) Subject to paragraph (a)(2)(ii) of this section, if it is determined, through an

2  appropriate evaluation under Sec. Sec. 300.304 through 300.311, that a child has one of

3  the disabilities identified in paragraph (a)(1) of this section, but only needs a related

4  service and not special education, the child is not a child with a disability under this part.

5  (ii) If, consistent with Sec. 300.39(a)(2), the related service required by the child is

6  considered special education rather than a related service under State standards, the child

7  would be determined to be a child with a disability under paragraph (a)(1) of this section.

8  Section 300.39 reads as follows:

9  a) General.

10  (1) Special education means specially designed instruction, at no cost to the parents, to

11  meet the unique needs of a child with a disability, including—

12  (2) Special education includes each of the following, if the services otherwise meet the

13  requirements of paragraph (a)(1) of this section--

14  (i) Speech-language pathology services, or any other related service, if the service is

15  considered special education rather than a related service under State standards;

16  (ii) Travel training; and

17  (iii) Vocational education.

PLAINTIFF'S REPLY TO DEFENDANT'S REPLY TO OPPOSITION TO MOTION
TO DISMISS

1    (3) Specially designed instruction means adapting, as appropriate to the needs of an

2    eligible child under this part, the content, methodology, or delivery of instruction--

3    (i) To address the unique needs of the child that result from the child's disability; and

4    (ii) To ensure access of the child to the general curriculum, so that the child can meet the

5    educational standards within the jurisdiction of the public agency that apply to all

6    children.

7

8    Plaintiffs ask the Defendant and the Court to review the addendum previously provided

9    and note that Isaiah's 504 Plan requires that Isaiah receive specially designed instruction

10    as described in Section 300.39 of the IDEA. Many of these interventions were designed

11    and put in place when Isaiah was attending Lakeside Elementary School.

12

13    II. PLAINTIFF HAS EXHAUSTED ADMINISTRATIVE REMEDIES

14    Defendant claims that there has been no administrative review of any IDEA claims that

15    plaintiff may have. This is not true. Plaintiff submitted in their addendum letters and

16    responses to and from the California Department of Education indicating such a review

17    has taken place and that plaintiffs have, in fact, exhausted any and all administrative

18    remedies. (EXHIBITS AA, AB, AC, AD, etc.)

---

PLAINTIFF'S REPLY TO DEFENDANT'S REPLY TO OPPOSITION TO MOTION
TO DISMISS

1    Plaintiffs are not asking for any monetary damages. The requirement to exhaust

2    administrative remedies was put in place to protect defendants from paying claims

3    without proper controls in place. Plaintiffs are requiring Defendant District to provide

4    Student with a FAPE, which they are obligated to do under state and federal law.

5    Plaintiffs are asking the Court to enjoin Lakeside Joint School District to pay for their

6    child's education at the closest public school to their residence, which is not unreasonable

7    and does not come under the heading of "monetary damages". Plaintiffs note that school

8    districts all across the United States pay for the education of their students within their

9    own neighborhoods and do not consider the payment of local instructional services as

10    "monetary damages". Plaintiffs have established in their complaint that as taxpayers they

11    provide the money to the school district to be used for the education of their child, as well

12    as other children residing within the district. Defendant has acknowledged in their

13    response plaintiffs' standing as taxpayers within the school district. Plaintiffs are asking

14    that the Court require the school district to use the funds received for the purpose

15    intended. *Kadrmas v. Dickinson Public School Dist. 487 U.S. 450, 108 S. Ct. 2481, 101*

16    *L. Ed.2d 399 (1988).*

17

18    In *Patsy v. Board of Regents* (1982), the Court held that the requirement to exhaust

19    administrative remedies does not apply in federal civil rights actions. Plaintiffs' civil

20    rights have been violated as follows:  1) Plaintiffs have been taxed without receiving

PLAINTIFF'S REPLY TO DEFENDANT'S REPLY TO OPPOSITION TO MOTION
TO DISMISS

1   benefit; 2) Student has been denied a FAPE; 3) plaintiffs have been denied due process;

2   4) plaintiffs' real property has been devalued by defendant's actions - by requiring

3   residents to send their children out of the neighborhood to a lesser school district in order

4   to access an education; 5) Student's rights under Section 504 (a civil rights law) have

5   been violated.

6

7   In determining whether plaintiff has exhausted administrative remedies, the Court must

8   look at the following criteria:  (1) whether plaintiff diligently pursued administrative

9   relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under

10  the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the

11  defendant to comply with its own internal administrative procedures; and (5) testimony of

12  administrators that any administrative appeal was futile." Id. at 250.  All factors need not

13  weigh equally. *Harrow v. Prudential Ins. Co. of America, 279 F.3d 244, 249 (3d*

14  *Cir.2002)*.  Plaintiff has submitted correspondence to the Court demonstrating a more

15  than diligent attempt to seek administrative relief.  Plaintiff has submitted Defendant

16  District's response (EXHIBIT AF).   Plaintiff has appeared repeatedly before the

17  Lakeside School Board and was told by the Board that any actions by Plaintiff to get

18  Lakeside to change their policy would be futile.  Defendant District has established a

19  fixed policy to not fund any education for any middle school students.  (EXHIBITS H

20  and AF, along with the Defendant's responses to this complaint).  Defendant District has

PLAINTIFF'S REPLY TO DEFENDANT'S REPLY TO OPPOSITION TO MOTION
TO DISMISS

1   failed to comply with its own UCP and denied plaintiffs a due process hearing. Plaintiff

2   has supplied letters from Santa Clara County Office of Education, Los Gatos Union

3   School District and other offices indicating that any administrative appeal is futile.

4   (EXHIBITS AH, AK, AM, AN, and AU). Because Isaiah has been denied a FAPE this

5   year and will not have access to an education next year without intervention from this

6   Court, it is reasonable to seek immediate judicial review.

7

8   III.    PLAINTIFF HAS ESTABLISHED NEIGHBORHOOD AS THE BASIS FOR

9           AN EDUCATION

10  Defendant argues that 20 USC 1714 does not apply because it was enacted to be used in

11  situations to promote desegregation. In those instances, Congress limited the

12  transportation of students to the closest or next closest schools. Lakeside School District

13  argues that there is no limitation to how far they should be allowed to transport their

14  students if the reason is to avoid funding the education of their students.   However, the

15  Defendant has failed to cite a single case, law or regulation that supports this ridiculous

16  argument.

17

18  Defendant cites *Helena F. v. Contra Costa Unified School District, 49 Cal. App 4th 1793,*

19  *1800 (1996)* to support the right of Lakeside School District to transport students outside

PLAINTIFF'S REPLY TO DEFENDANT'S REPLY TO OPPOSITION TO MOTION

TO DISMISS

1  their home district.  In this case, late registering students were transported out of district

2  to an adjacent school district in order to relieve overcrowded classrooms.  This clearly

3  does not apply in this case.  The school district selected by Lakeside is not adjacent and

4  there are no overcrowded classrooms involved.  (Refer to Exhibits C, D, E, and F).  In

5  fact, the only school experiencing increased enrollment is the school selected by the

6  defendant for their middle school students.  Contra Costa Unified School District was not

7  transporting students to avoid paying for their education, but to relieve over-crowded

8  classrooms, in order to comply with state and federal mandates.  Contra Costa Unified

9  School District provided funding that was sent along with their students to the admitting

10  school district.  Additionally, students were allowed to return to their neighborhoods the

11  following school year.  Lakeside is effectively exiling all middle school students from

12  their neighborhood for three years in order to avoid paying for their education.

13

14  Congress has established that "the neighborhood is the appropriate basis for determining

15  public school assignments."  *20 USC 1701*

16

17  Defendant argues that Cal Ed Code 48200 does not apply as it is the "compulsory

18  education code".  48200 states that students are to attend a school "in which the residency

19  of either the parent or legal guardian is located".  This indicates to the plaintiff that the

PLAINTIFF'S REPLY TO DEFENDANT'S REPLY TO OPPOSITION TO MOTION
TO DISMISS

1   State supports federal law and has established the neighborhood as the appropriate basis

2   for determining public school assignments.

3

## IV. STUDENT HAS BEEN DENIED GOVERNMENT BENEFIT OF AN EDUCATION

6   Defendant claims in their REPLY TO OPPOSITION TO DISTRICT'S MOTION TO

7   DISMISS that "Student in the case at bar has not been denied any government benefit of

8   an education." (Page 9:6)   Plaintiff has shown that student has, in fact, been denied

9   benefit of an education because 1) the August Rolling Hills 504 Plan Review meeting

10  that Lakeside promised would occur prior to the commencement of school never

11  happened and; 2) Isaiah's emotional disorder and ability to learn has been negatively

12  impacted due to Rolling Hills Middle School inability to support his 504 Plan . (Refer to

13  PLAINTIFF'S ADDENDUM TO MEMORANDUM IN OPPOSITION TO

14  DEFENDANT'S MOTION TO DISMISS, Page 6:21 and Page 18:16); and 3) Lakeside

15  advised plaintiffs that a 504 Plan would be sufficient for Student to be able to access an

16  education, denying him an IEP.  Isaiah clearly qualifies for an IEP, but no IEP was put in

17  place either this year or last year.

18

19  Plaintiffs are at a distinct disadvantage because their child is effectively without a school

20  district to provide a FAPE.  Lakeside School District has unlawfully entered into a

PLAINTIFF'S REPLY TO DEFENDANT'S REPLY TO OPPOSITION TO MOTION
TO DISMISS

1    "Memorandum Of Understanding" with Rolling Hills Middle School, which states that

2    Rolling Hills will allow Lakeside 6th, 7th and 8th grade students to enroll.  However,

3    Rolling Hills Middle School is in the Campbell Union School District.  Plaintiffs have

4    filed a formal complaint with the Campbell Union School District for failing to provide

5    Isaiah with a FAPE, but since they are not district residents, they are not entitled to any

6    administrative relief.  After all, CUSD is under no legal obligation to provide a non-

7    resident with a FAPE.

8

9

10                                                          Dated this  *5/29/2008*

11

12

13

14

15                                                          *Elise Stassart*

16                                                          ELISE STASSART, PRO SE

17                                                          21951 BEAR CREEK WAY

18                                                          LOS GATOS, CA 95033

PLAINTIFF'S REPLY TO DEFENDANT'S REPLY TO OPPOSITION TO MOTION
TO DISMISS

- 16

EXHIBIT

BA

May 17, 2007

To:     Randy Cohen

Cc:     Bob Chrisman, Heather Wingfield, Judy Meyer

RE:     Isaiah Winters IEP

Ari & I reviewed the documents you provided us for today's meeting.

Judy writes in her summary:

*Isaiah clearly has conduct issues, which in and of itself does not qualify him as a student eligible for special education services. The IEP team will need to consider if he also has emotional issues that interfere with his ability to successfully participate in his educational program.*

Isaiah tested as **Clinically Significant** in more than five areas and **At Risk** in more than five areas. He has been diagnosed with Post Traumatic Stress Disorder by a licensed therapist. He is clearly Emotionally Disturbed and qualifies for special education services.

To be eligible for special education as Emotionally Disturbed, the child must meet the following criteria:

  (A) The child's emotional or behavioral problems shall have existed over an extended period of time; and
  (B) The child exhibits one or more of the following:
     (i)    An inability to learn at a rate commensurate with the child's intellectual, sensory-motor, and physical development;
     (ii)   An inability to establish or maintain satisfactory interpersonal relationships with peers, parents, or teachers;
     (iii)  A variety of excessive behaviors ranging from hyperactive and impulsive responses to depression and withdrawal;
     (iv)   Inappropriate types of behavior or feelings under normal circumstances; or
     (v)    A tendency to develop physical symptoms, pains, or fears associated with personal, social, or school problems.

It is evident that Isaiah qualifies under these criteria.

There was nothing in the report Randy provided regarding the number of disciplinary incidents Isaiah has incurred over the past school year. There have been some weeks in the past school year where Isaiah received as many as three detentions in a five-day period. Isaiah has been sent to meet with Bob Chrisman, the school principal, at least twice in the past term. Incidents include problems with other students, fighting/horseplay, disruptive conduct, missing assignments, and disrespect of teachers. In addition to these, Isaiah displays inappropriate classroom behavior compared to his peers. His teacher has had to give him multiple redirections in the same time as a typical peer received one redirection.

A recent court ruling explains that:

> "[A] child does not have to suicidal, homicidal, or suffering in order to fall within the definition of a child with an emotional disturbance. A child does not even need to have a DSM-IV clinical diagnosis such as Major Depression of Schizophrenia in order to fall within the definition. A child needs only to exhibit one or more of the named characteristics over a long period of time to a marked degree, a degree which adversely affects his educational performance."

Therefore, Isaiah qualifies for a special education program. We expect the school team to develop a plan for a Positive Behavioral Intervention Procedure to be provided to the teachers at Rolling Hills Middle School for next year. Additionally, we want to see an IEP with goals for reducing the number of disciplinary incidents, missing assignments, and helping Isaiah focus on tasks and directions during class time.

Additionally, it is my understanding that the district can provide for weekly or bi-weekly counseling sessions with the district psychologist to help Isaiah modify his behavior so that it does not disrupt his educational process. This should be included as part of the IEP.

Judy notes that Isaiah *"is a follower in his peer group and has shown many difficulties in making wise or safe choices when his peers are not doing so."* Given Isaiah's emotional disability, entering middle school Isaiah is at risk for gangs, drug and/or alcohol use, and other "at risk" behaviors. Any of these would have a negative impact on his future academic career. It is imperative that we put Isaiah in a special education program to ensure that he can successfully navigate towards his middle school years.

Thank you,


Ari & Elise Stassart

EXHIBIT

tabber BB

**STUDENT**: Isaiah Winters
**BIRTH DATE**: 5/11/1996
**AGE**: 10-11
**GRADE**: 5.9
**SCHOOL**: Lakeside Elementary School
**DATE OF REPORT**: 04/27/2007
**EXAMINER**: Randy Cohen

> *This report shall include, but not be limited to (a) whether the pupil has a disability and the basis for making that determination; (b) relevant behavior during observation and assessment, and its relationship to academic and social functioning; (c) educationally relevant medical findings, if any; (d) means of determining disability i.e. any discrepancy between achievement and ability that cannot be corrected without special education and/or related services; and (e) effects of environmental, cultural, or economic disadvantage, where appropriate (f) that assessment measures selected are appropriate for the pupil based on normative data or other research and are valid for their intended purpose; (g) that the pupil's English language proficiency and primary language is taken into account in the interpretation of the assessment results.*

## REASON FOR REFERRAL
Isaiah was assessed as part of an initial assessment recommended by his caregivers.

## SIGNIFICANT BACKGROUND INFORMATION
Much of his significant background information is not on record. His mother was 41 years old at pregnancy and was an alcoholic. However, there were no complications at birth.

It has been noted that his handedness is inconsistent. He eats with chopsticks or a fork & plays ball with his right hand but writes with his left hand. Isaiah attended pre-school.

There is a family history of Celiac Disease but he has no symptomology of the disorder.

When he was 6 or 7 years old he was in a Juvenile diversion program in the state of Idaho. Isaiah has previously lived with foster parents and is now living with extended family.

Isaiah has attended Lakeside Elementary School since fourth grade. He was first determined eligible for special education on 4-10-2001 under the eligibility of speech and language. He was dismissed from Special Education in 2/2004.

## CURRENT ASSESSMENT RESULTS

**Assessment Procedures:**
Woodcock-Johnson III Tests of Achievement (WJ-III)
Testing Observation
File Review

# Woodcock-Johnson III Tests of Achievement (WJ-III)

*A standardized test designed for the assessment of a child's academic achievement and used as part of a psychometric battery for identifying learning disabilities. Standard Scores ranging from 90-109 represent scores falling into the mean (average) for students of similar age. Percentile scores in one's standing in a group of 100 same age individuals. Percentiles of 50 are exactly average, the average range is considered 25-75.*

## TABLE OF SCORES: *Woodcock-Johnson III Tests of Achievement (WJ-III)*
Norms based on age at date of testing: 10-10

| Cluster Score | Description | Standard Score | Percentile |
|---|---|---|---|
| Oral Language | | | |
| Oral Expression | | 100 | 51 |
| Listening Comp | | 89 | 24 |
| Broad Reading | Overall score for Reading achievement | 109 | 73 |
| Broad Math | Overall score for Math Achievement | 92 | 31 |
| Broad Written Language | Overall score for Written Language achievement | 129 | 97 |
| | | 105 | 63 |

| Subtest Scores | Description | Standard Score | Percentile |
|---|---|---|---|
| Letter-Word Identification | Decoding individual words | 96 | 38 |
| Reading Fluency | Reads sentences & determines if the statement is true or not. Timed. | 87 | 20 |
| Story Recall | Requires subject to recall increasingly complex stories that are presented using an audio recording. | 104 | 61 |
| Understanding Directions | Requires listening to an audio recording and then follow directions by pointing to objects in a picture. | 91 | 28 |
| Calculation | Solving Mathematics problems. | 127 | 96 |
| Math Fluency | Timed math facts. | 120 | 91 |
| Spelling | Spelling dictation. | 93 | 32 |
| Writing Fluency | Write a simple sentence using a given set of words. Timed. | 103 | 57 |
| Passage Comprehension | Read short passages and provide missing words. | 98 | 45 |
| Applied Problems | Oral math problem solving. | 125 | 95 |
| Writing Samples | Assesses writing skill in response to several demands. Scored on expression, not mechanics. | 140 | 99.6 |
| Word Attack | Measures skill in applying phonic and structural analysis to pronunciation. | 97 | 41 |
| Picture Vocabulary | Oral language and word knowledge. Identification of pictured objects. | 87 | 19 |
| Oral Comprehension | Audio recording-based cloze assessment that assesses listening, reasoning, and vocabulary. | 121 | 92 |

| Editing | Discover spelling, capitalization, and other errors in pre-written sentences. | 101 | 52 |
| Reading Vocabulary | Read words and provide synonyms, antonyms, and complete analogies. | 119 | 90 |
| Quantitative Concepts | Measures mathematical concepts, symbols, and vocabulary. | 111 | 77 |
| Academic Knowledge | Tests factual knowledge of Science, Social Studies, and Humanities. | 100 | 50 |
| Spelling of Sounds | Audio recording requires spelling of non-words. | 66 | 1 |
| Sound Awareness | Tests awareness of rhymes, deleted sounds, substituted sounds, and reversals of sounds and words. | 103 | 58 |
| Punctuation & Capitals | A dictated test. | 99 | 46 |

On this instrument, Isaiah scored in the superior range in the areas of Oral Comprehension (121), Applied Problems (125), and Calculation (127). Most of the other tests were in the average range with the exception of Spelling of Sounds (66) which was in the very low range. Isaiah's scores on this instrument show that he is a strong visual learner and has a strong visual memory for patterns that are "right". His spelling could be improved through concentrated phonemic awareness and phonics activities.

## Test Observations:

Isaiah is an energetic boy with slightly long hair and a slim build. He appeared relaxed during the testing sessions and smiled often. His behavior was appropriate and he remained on task as requested. At the beginning of the testing sessions he asked several questions about process and testing details. His inquisitiveness remained consistent throughout the testing process. He appeared focused and seemed to take the process quite seriously. We took a few breaks to laugh and relax.

## SUMMARY AND RECOMMENDATIONS:

During all stages of the assessment, Isaiah was very open, willing to work, jovial, and pleasant. Isaiah is a follower in his peer group and has shown many difficulties in making wise or safe choices when his peers are not doing so. He has many friends and is well-accepted socially but has gotten into trouble with his peers when he is the last of the group acting in an inappropriate manner.

Isaiah has difficulty staying on task and concentrating in class. He may appear more inattentive than he is due to the fact that he is often trying to gain the attention of his peers.
While Isaiah's encoding and decoding skills test at average, his phonetic skills lag. Isaiah appears to use a whole word approach to read. Targeted phonics skills acquisition and practice could be helpful.

The IEP team will determine whether Isaiah meets eligibility for special education.

**Assessment Tools:**

Behavior Assessment System for Children, Second Edition - BASC II, teacher report
Behavior Assessment System for Children, Second Edition - BASC II, parent report

## Behavior Assessment System for Children, Second Edition - BASC II

*A standardized behavior rating scale, in questionnaire format, designed to aid in the differential classification of a variety of emotional and behavioral disorders in children. T-Scores ranging between 41-59 represent scores falling within the mean (average) for students of similar age.*

*Clinical Scale T-Scores between 60-69 are considered to be in the "at-risk" range and are considered moderate areas of concern. Clinical Scale T-Scores 70 and above are considered in the "clinically significant" range and are considered serious areas of concern.*

*Adaptive Scale T-Scores between 31-40 are considered to be in the "at-risk" range and are considered moderate areas of concern. Adaptive Scale T-Scores 30 and below are considered in the "clinically significant" range and are considered serious areas of concern.*

Isaiah's mother completed the BASC II.  Her results are shown on the chart below:

| Composite | T Score | Comments |
|---|---|---|
| Externalizing Problems | 94 | Clinically Significant |
| Internalizing Problems | 72 | Clinically Significant |
| Behavioral Symptoms Index | 82 | Clinically Significant |
| Adaptive Skills | 24 | Clinically Significant |

She scored Isaiah at the clinically significant range in all composite areas.

| Clinical Scales | T Score | Comments |
|---|---|---|
| Hyperactivity | 80 | Clinically Significant |
| Aggression | 86 | Clinically Significant |
| Conduct Problems | 103 | Clinically Significant |
| Anxiety | 67 | At Risk |
| Depression | 76 | Clinically Significant |
| Somatization | 59 | |
| Atypicality | 81 | Clinically Significant |
| Withdrawal | 67 | At Risk |
| Attention Problems | 61 | At Risk |
| Adaptability | 21 | Clinically Significant |
| Social Skills | 25 | Clinically Significant |
| Leadership | 31 | At Risk |
| Activities of Daily Living | 26 | Clinically Significant |
| Functional Communication | 37 | |

Heather Wingfield, Isaiah's fifth grade teacher, completed the teacher scale.

| Composite | T-Score | Comment |
|---|---|---|
| Externalizing Problems | 83 | Clinically Significant |
| Internalizing Problems | 58 | |
| School Problems | 63 | At Risk |
| Behavioral Symptoms Index | 77 | Clinically Significant |
| Adaptive Skills | 32 | At Risk |

| Clinical Scales | T-Score | Comment |
|---|---|---|
| Hyperactivity | 77 | Clinically Significant |
| Aggression | 83 | Clinically Significant |
| Conduct Problems | 83 | Clinically Significant |
| Anxiety | 45 | |
| Depression | 74 | Clinically Significant |
| Somatization | 50 | |
| Attention Problems | 62 | At Risk |
| Learning Problems | 62 | At Risk |
| Atypicality | 72 | Clinically Significant |
| Withdrawal | 63 | At Risk |
| | | |
| ADAPTIVE SCORES | | |
| Adaptability | 29 | Clinically Significant |
| Social Skills | 31 | At Risk |
| Leadership | 35 | At Risk |
| Study Skills | 38 | At Risk |
| Functional Communication | 37 | At Risk |

The following chart indicates responses (other than "never") on critical items.

| Item | Mother | Teacher |
|---|---|---|
| Eats too much. | Sometimes | |
| Threatens to hurt others. | Often | Sometimes |
| Says, "I want to die" or "I wish I were dead." | Sometimes | Sometimes |
| Bullies others | Often | Sometimes |
| Falls down. | | Sometimes |
| Is easily annoyed by others | Almost always | Sometimes |

| Hits other Children. | Often | Sometimes |
|---|---|---|
| Eats too little | | Almost always |
| Eats things that are not food. | Sometimes | |

## SUMMARY:

Isaiah clearly has conduct issues, which in and of itself does not qualify him as a student eligible for special education services. The IEP team will need to consider if he also has emotional issues that interfere with his ability to successfully participate in his educational program.

Judy Meyer, MS, Program Specialist/Psychologist

# ASSESSMENT REPORT

CONFIDENTIAL

SANTA CLARA COUNTY
OFFICE OF EDUCATION

By: _____ LEON DAVIS

Title: _____ SCHOOL PSYCHOLOGIST

Student: ISAIAH WINTERS          Sex: M  Grade: 5  Birth Date: 5/11/96  Age: 10-11          Date: 4/4/07

School: LAKESIDE SCHOOL          Teacher: HEATHER WINGFIELD

This report shall include but not be limited to (a) whether the pupil has a specific handicap and the basis for making that determination (b) relevant behavior during observation and its relationship to academic and social functioning (c) educationally relevant medical finding if any (d) any discrepancy between achievement and ability that cannot be corrected without special education and/or related services (e) effects of environmental, cultural, or economic disadvantage, where appropriate.

## REASON FOR REFERRAL: Concerns regarding Isaiah's focusing, social skills and academic performance.

## TESTS ADMINISTERED: Wechsler Intelligence Scale for Children-IV, Bender Visual-Motor Gestalt Test-II, Wide Range Assessment of Memory and Learning, Draw-A-Person Test (DAP), Woodcock-Johnson III Tests of Achievement (resource teacher administered), Behavior Assessment System for Children II (BASC II) (program specialist/psychologist administered.

## BACKGROUND INFORMATION: Isaiah's general health and hearing and vision are reported to be good, and there is no history of any chronic physical illnesses. Records indicate that Isaiah's family has a history of Celiac Disease, but he has apparently exhibited no documented symptomology. He attended Lakeside School as a kindergartner and for the first two months of the first grade. Isaiah has previously received speech and communication services but no other services in special education. He has also received private therapeutic counseling services, and his parents are said to be presently seeking another therapist. His parents have expressed concern regarding Isaiah's behavior and weak academic performance.

## OBSERVATIONS: Isaiah is an alert and socially responsive young man, who expresses himself quite well verbally. He has a good sense of humor but is reported to have inconsistent interactions with his peers. His teacher reports that his behavior in the classroom is inconsistent, and that he exhibits poor study habits and easy distractibility. During the testing session, Isaiah was willing to answer questions, but he appeared reluctant to volunteer information about himself or his family. He mentioned having older brothers and a sister, but stated that they do not live with him. Though he was quiet and a bit reserved, the examiner believes that a good and functional rapport was established and maintained throughout the assessment.

## CURRENT PSYCHO-EDUCATIONAL ASSESSMENT INFORMATION:

### Current - Woodcock-Johnson III *Tests of Achievement* (Resource Specialist (RSP) Administered)

| Domain | Standard Score (100 is average) |
|---|---|
| Broad Reading Achievement | 92 |
| Broad Math Achievement | 129 |
| Broad Written Language | 105 |

These tests indicate that Isaiah is performing at a generally acceptable level in all academic areas tested, and that he appears to be stronger in the areas of related to math. His performance on the tests cited, while adequate, appears to be consistent with his test (Wechsler Intelligence Scale for Children) level of ability. *Please see the Resource specialist report for more detailed information in this area.*

# SUPPLEMENTARY REPORT SHEET

Student's Name: _____ WHITE, ISAIAH _____    Page: _____ 2 _____

**Wechsler Intelligence Scale for Children - IV:**

## Wechsler Intelligence Scale for Children - IV

The WECHSLER INTELLIGENCE SCALE FOR CHILDREN-IV (WISC-IV is a formal measure of cognitive functioning designed to provide separate estimates of verbal abilities (Verbal Comprehension Score), memory (Working Memory Score), thinking processing (Processing Speed), and a composite of the four (Full Scale Score). The average range is between scores of 90 to 109. An analysis of the various subtests comprising each portion of the test yields a profile of individual strengths and weakness, with subtest scaled scores of 8 through 12 being considered average. The WISC-IV has demonstrated validity and reliability for the measurement of intelligence in individuals aged 6 years 0 months to 16 years 11 months, as stated in the test manual.

| Verbal Comprehension | Scaled Scores | Perceptual Reasoning | Scaled Scores | Working Memory | Scaled Scores | Processing Speed | Scaled Scores |
|---|---|---|---|---|---|---|---|
| Similarities | 13 | Block Design | 11 | Digit Span | 10 | Coding | 11 |
| Vocabulary | 12 | Picture Concepts | 15 | Letter-Number | 12 | Symbol Search | 8 |
| Comprehension | 15 | Matrix Reasoning | 12 | | | | |

| Scale | Sum of Scaled Scores | Composite Score | Percentile Rank | Confidence Level |
|---|---|---|---|---|
| Verbal Comprehension | 40 | 119 | 90 | 111 - 125 |
| Perceptual Reasoning | 38 | 117 | 87 | 108 - 123 |
| Working Memory | 22 | 104 | 61 | 96-111 |
| Processing Speed | 19 | 97 | 42 | 88 - 106 |
| Full Scale | 119 | 114 | 82 | 109 - 119 |

Isaiah's scores on this administration of the **Wechsler Intelligence Scale for Children-IV (WISC-IV)** indicate that <u>he is generally functioning in the high average range of cognitive ability</u>, with indications of greater ability in some areas of learning. His skills related to verbal and non-verbal reasoning were shown to be generally at the same level. Isaiah's working memory and processing speed were shown to be good, though it appears that it takes him a bit more time to process and integrate information and concepts. There were no areas suggestive of learning or perceptual deficit. While the score he obtained on the *Symbol Search* subtest, a test of abstract and categorical reasoning, was lower than the other scores he obtained, it was not a significantly weak score. Children who are more cognitively capable sometimes have difficulty with this subtest because they sometimes find the exercise a bit boring. Isaiah's scores generally reflect a child with a very good potential for learning. A comparison between his academic skills, as assessed by the RSP administered Woodcock-Johnson, and Isaiah's general ability, as assessed by the Wechsler Intelligence Scale for Children, revealed no significant discrepancies between his overall ability and his academic skills in areas related to reading, math and writing. While Isaiah might be experiencing some difficulties in class, he appears to be somehow compensating for this and is continuing to master relevant academic content.

## Wide Range Assessment of Memory and Learning:

| MEMORY SCREENING INDEX | | |
|---|---|---|
| Subtest | Raw Scores | Verbal Scaled Score |
| Picture Memory | 39 | 11 |
| Design Memory | 21 | 5 |
| Verbal Learning | 33 | 10 |
| Story Memory | 27 | 9 |
| Memory Screening Index | 91 | |

# SUPPLEMENTARY REPORT SHEET

Student's Name: _____ WHITE, ISAIAH _____ Page: _____ 3

The **Wide Range Assessment of Memory and Learning (WRAML)** is a standardized psychometric instrument which allows the user to evaluate a child's ability to actively learn and memorize a variety of information. Children with memory deficiencies often exhibit uneven achievement and problems with motivation as a result of performing well in the conceptual aspects of the curriculum, but being frustrated by school work that makes heavy demands upon memorization. With a scaled score of 10 being average, Isaiah's scores on this instrument suggest that his memory is adequate in most areas, and that it is relatively weak in areas related to quick recall of geometric images. This means that while his reading skills might be adequate, Isaiah might find reading an uncomfortable task, since it involves processing and remembering geometric shapes (letters and words). Visual memory, and memory of verbal information presented in context of a story read to him, do not appear to be a current concern for Isaiah.

## Bender Visual-Motor Gestalt Test: Standard Score 124

On this test of visual-motor perception and coordination, that required Isaiah to copy a series of geometric drawings, his performance indicates that he has good visual-motor-perceptual and coordination skills, suggesting that that drawing and writing would not be especially difficult for him. It should be pointed out that this was not a timed assessment, and Isaiah had models to work with. In more stressful situations, where time is a factor, his performance might be different.

## Draw-A-Person Test: Visual-Motor Age: Standard Score 64

Isaiah's current drawing of a person was somewhat immature, and did not, in the estimation of the examiner, reflect the true level of his visual-motor perceptual coordination skills. The drawing was a very simple rendering with few appendages, depicting a figure with raised arms and a jagged mouth. It suggested an individual with some significant concerns about his feelings and sense of well-being.

## Behavior Assessment System for Children, Second Edition - BASC II, Parent and Teacher Reports - Administered by the Program Specialist:

The following is presented as a presentation of test information developed by the program specialist:

*A standardized behavior rating scale, in questionnaire format, designed to aid in the differential classification of a variety of emotional and behavioral disorders in children. T-Scores ranging between 41-59 represent scores falling within the mean (average) for students of similar age.*

*Clinical Scale T-Scores between 60-69 are considered to be in the "at-risk" range and are considered moderate areas of concern. Clinical Scale T-Scores 70 and above are considered in the "clinically significant" range and are considered serious areas of concern.*

*Adaptive Scale T-Scores between 31-40 are considered to be in the "at-risk" range and are considered moderate areas of concern. Adaptive Scale T-Scores 30 and below are considered in the "clinically significant" range and are considered serious areas of concern.*

**Isaiah's mother completed the BASC II. Her results are shown on the chart below:**

| Composite | T Score | Comments |
|---|---|---|
| Externalizing Problems | 94 | Clinically Significant |
| Internalizing Problems | 72 | Clinically Significant |
| Behavioral Symptoms Index | 82 | Clinically Significant |
| Adaptive Skills | 24 | Clinically Significant |

**She scored Isaiah at the clinically significant range in all composite areas.**

# SUPPLEMENTARY REPORT SHEET

Student's Name: _____ WHITE, ISAIAH _____    Page: _____ 4 _____

| Clinical Scales | T Score | Comments |
|---|---|---|
| Hyperactivity | 80 | Clinically Significant |
| Aggression | 86 | Clinically Significant |
| Conduct Problems | 103 | Clinically Significant |
| Anxiety | 67 | At Risk |
| Depression | 76 | Clinically Significant |
| Somatization | 59 | |
| Atypicality | 81 | Clinically Significant |
| Withdrawal | 67 | At Risk |
| Attention Problems | 61 | At Risk |
| Adaptability | 21 | Clinically Significant |
| Social Skills | 25 | Clinically Significant |
| Leadership | 31 | At Risk |
| Activities of Daily Living | 26 | Clinically Significant |
| Functional Communication | 37 | |

**Heather Wingfield, Isaiah's fifth grade teacher, completed the teacher scale.**

| Composite | T-Score | Comment |
|---|---|---|
| Externalizing Problems | 83 | Clinically Significant |
| Internalizing Problems | 58 | |
| School Problems | 63 | At Risk |
| Behavioral Symptoms Index | 77 | Clinically Significant |
| Adaptive Skills | 32 | At Risk |

| Clinical Scales | T-Score | Comment |
|---|---|---|
| Hyperactivity | 77 | Clinically Significant |
| Aggression | 83 | Clinically Significant |
| Conduct Problems | 83 | Clinically Significant |
| Anxiety | 45 | |
| Depression | 74 | Clinically Significant |
| Somatization | 50 | |
| Attention Problems | 62 | At Risk |
| Learning Problems | 62 | At Risk |
| Atypicality | 72 | Clinically Significant |
| Withdrawal | 63 | At Risk |
| | | |
| ADAPTIVE SCORES | | |
| Adaptability | 29 | Clinically Significant |
| Social Skills | 31 | At Risk |
| Leadership | 35 | At Risk |
| Study Skills | 38 | At Risk |

# SUPPLEMENTARY REPORT SHEET

Student's Name: _____ WHITE, ISAIAH _____ Page: _____ 5

| Functional Communication | 37 | At Risk |
|---|---|---|

The following chart indicates responses (other than "never") on critical items.

| Item | Mother | Teacher |
|---|---|---|
| Eats too much. | Sometimes | |
| Threatens to hurt others. | Often | Sometimes |
| Says, "I want to die" or "I wish I were dead." | Sometimes | Sometimes |
| Bullies others | Often | Sometimes |
| Falls down. | | Sometimes |
| Is easily annoyed by others | Almost always | Sometimes |
| Hits other Children. | Often | Sometimes |
| Eats too little | | Almost always |
| Eats things that are not food. | Sometimes | |

## SUMMARY:

Isaiah clearly has conduct issues, which in and of itself does not qualify him as a student eligible for special education services. The IEP team will need to consider if he also has emotional issues that interfere with his ability to successfully participate in his educational program.

Judy Meyer, MS, Program Specialist/Psychologist

SUMMARY AND RECOMMENDATIONS: Isaiah's general health, vision and hearing are reported to be good, and there is no history of any chronic illnesses. He is an alert and socially responsive young man, who expresses himself fairly well verbally. He has a good sense of humor but is reported to sometimes negative and dysfunctional interactions with his peers. His teacher reports that he is easily distracted, and that his classroom behavior is inconsistent. Isaiah was very pleasant and generally cooperative during the testing session, but he did have a tendency to be somewhat guarded in giving information about himself and his family.

Isaiah's scores on the Wechsler Intelligence Scale for Children-IV (WISC-IV) indicate that he is generally functioning in the high average range of cognitive ability, with indications of more consistently greater ability. His skills related to verbal and non-verbal reasoning were shown to be generally at the same level. Isaiah's working memory and processing speed were shown to be, while adequate, not as strong as some of his other skills, suggesting that his ability to evaluate problems and find solutions is potentially not as strong as might be expected. There were no areas suggestive of learning or perceptual deficit, and no significant discrepancies between his general level of ability and his academic performance were revealed. Isaiah's perceptual-motor coordination skills appear to be good, but his skills related to the memory for designs was shown to be a bit weak. The information yielded by the program specialists suggested some significant

# SUPPLEMENTARY REPORT SHEET

Student's Name: _____ WHITE, ISAIAH _____ Page: _____ 6 _____

concerns regarding Isaiah's conduct. Responses for both his parents and teacher reflected concerns regarding his hyperactivity, aggression, conduct problems and other behavior symptoms. It was reported that Isaiah's difficulties are more a function of conduct than to significant emotional issues, though this is not to minimize the fact that he appears to be experiencing serious difficulties at home and at school.

Based on the test scores obtained for this assessment, it appears that while Isaiah is experiencing some significant difficulties at school, he is continuing to learn at an acceptable level. Special education intervention does not appear to be indicated at this time, though strategies to assist him to develop more functional communication and behavior skills should be considered. Continued involvement in professional counseling should also be considered.

LEON DAVIS
School Psychologist